# CIVIL SUMMONS

*State of Alabama*
*Unified Judicial System*
*Form C-34   Rev 6/88*

CASE NO:

*CV-06-607*

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY

Plaintiff(s):     N.A. WATER SYSTEMS, LLC, as successor      vs. Defendant(s):     SNYDER INDUSTRIES, INC.
by merger to USFILTER ENGINEERING &
CONSTRUCTION, INC.

NOTICE TO:     SNYDER INDUSTRIES, INC.
c/o The Corporation Company
2000 Interstate Park Drive,  Suite 204
Montgomery, AL 36109

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT.  A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF'S ATTORNEY, E. MABRY ROGERS AND RHONDA CAVIEDES ANDREEN, WHOSE ADDRESS IS BRADLEY ARANT ROSE & WHITE LLP, ONE FEDERAL PLACE, 1819 FIFTH AVENUE NORTH, BIRMINGHAM, AL 35203-2104. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

☐     You are hereby commanded to serve this summons and a copy of the complaint in this action upon defendant.

☒     *Service by certified mail of this summons is initiated upon the written request of plaintiff's attorney pursuant to Rule 4.1(c)*
*of the Alabama Rules of Civil Procedure.*

3|10|06
DATE

CLERK/REGISTER                    By:

☒     Certified Mail is hereby requested.

Plaintiff's/Attorney's Signature

**RETURN ON SERVICE:**

☐     Return receipt of certified mail received in this office on _____ (Date).

☐     I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ County, Alabama, on _____ (Date).

EXHIBIT 2

DATE _____

ADDRESS OF SERVER _____

_____

SERVER SIGNATURE _____

TYPE OF PROCESS SERVER _____

683-058642

0505-1886L

# CIVIL SUMMONS

State of Alabama
Unified Judicial System
Form C-34   Rev 6/88

CASE NO:

CV-2006-1009

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY

Plaintiff(s):   N.A. WATER SYSTEMS, LLC, as successor    vs. Defendant(s):   AUGUSTA FIBERGLASS COATINGS,
by merger to USFILTER ENGINEERING &                                      INC.
CONSTRUCTION, INC.

NOTICE TO:   AUGUSTA FIBERGLASS COATINGS, INC.
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR
WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK
OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR
ATTORNEY TO THE PLAINTIFF'S ATTORNEY, E. MABRY ROGERS AND RHONDA CAVIEDES ANDREEN, WHOSE
ADDRESS IS BRADLEY ARANT ROSE & WHITE LLP, ONE FEDERAL PLACE, 1819 FIFTH AVENUE NORTH,
BIRMINGHAM, AL 35203-2104. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER
THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED
AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐   You are hereby commanded to serve this summons and a copy of the complaint in this action upon defendant.

☒   Service by certified mail of this summons is initiated upon the written request of plaintiff's attorney pursuant to Rule 4.1(c)
of the Alabama Rules of Civil Procedure.

_Melissa Rittenour_
CLERK/REGISTER    By: _LW_

3/10/06
DATE

☒   Certified Mail is hereby requested.

_Mayta Rogers_
Plaintiff's/Attorney's Signature

FILED IN
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 MAR -2 P 2:56

RETURN ON SERVICE:

☐   Return receipt of certified mail received in this office on _____ (Date).

☐   I certify that I personally delivered a copy of the Summons and Complaint to _____
County, Alabama, on _____ (Date).

DATE

ADDRESS OF SERVER _____

_____

SERVER SIGNATURE

TYPE OF PROCESS SERVER

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

N.A. WATER SYSTEMS, LLC, as          )
successor by merger to               )
USFILTER ENGINEERING &               )
CONSTRUCTION, INC.,                  )
                                     )        Civil Action No.: 2006-607
        Plaintiff,                   )
                                     )
v.                                   )
                                     )
AUGUSTA FIBERGLASS COATINGS, INC.;   )
and SNYDER INDUSTRIES, INC.          )
                                     )
        Defendant.                   )

## COMPLAINT

COMES NOW N.A. Water Systems, LLC and for its Complaint in this matter, alleges as follows:

## THE PARTIES

1.    On January 21, 2004, USFilter Engineering & Construction, Inc. ("USFilter"), a Pennsylvania corporation changed its name to Veolia Water North America Engineering & Construction, Inc. ("Veolia"). On July 16, 2004, N.A. Water Systems, LLC ("NAWS") was formed as a Pennsylvania limited liability company, and, pursuant to an Agreement and Plan of Merger filed with the Pennsylvania Department of State, Veolia was merged into NAWS. Thus, for purposes of this action, NAWS is a successor in interest to USFilter and Veolia.

2.    The plaintiff, NAWS, is a Pennsylvania limited liability company, which at all times pertinent was engaged in work at the Hyundai Plant in Montgomery County, Alabama (the "Plant").

3.    Upon information and belief, defendant Augusta Fiberglass Coatings, Inc. (hereinafter "Augusta") is a corporation organized under the laws of the State of South Carolina.

4.    Upon information and belief, Snyder Industries, Inc. (hereinafter "Snyder") is a corporation organized under the laws of the State of Nebraska.

## GENERAL AVERMENTS

5.    USFilter, the predecessor of NAWS, was in the business of designing and constructing wastewater treatment systems.  USFilter, now known as NAWS, was hired by Hyundai Motor Manufacturing Alabama, LLC ("HMMA") to engineer, design and construct a wastewater treatment system at the Plant.

6.    Snyder is in the business of designing and manufacturing plastic bulk storage, processing and transportation tank systems.  Snyder manufactured the tank that is at issue in this lawsuit.

7.    Augusta is in the business of selling large diameter tanks, including those designed and manufactured by Snyder.

1/1425088.3

2

8.    On or about July 1, 2003, USFilter, now known as NAWS, submitted Request for Project Quotation Number 7041-01-008/012 ("RFQ") to Augusta for a 5,000 gallon capacity polyethylene tank ("the tank"). The RFQ is attached as **Exhibit A**.

9.    On or about July 29, 2003, Augusta submitted a quotation to USFilter in response to USFilter's RFQ.

10.    On August 21, 2003, USFilter issued Purchase Order Number 7041-01-009 to Augusta. The Purchase Order incorporated Specification 7041-01-012, as contained in the RFQ, which included the Terms and Conditions, and is attached as **Exhibit B**.

11.    Augusta thereafter delivered the tank, or had the tank delivered, to the Plant, and the tank and piping were commissioned on April 20, 2004. Shortly thereafter, 2,896 gallons of 93% sulfuric acid was introduced into the tank. This sulfuric acid was subsequently used for start up and commissioning of the treatment system.

12.    On Friday, September 10, 2004, the tank was filled with 93% sulfuric acid to its 4,650-gallon straight shell capacity.

13.    On Saturday, September 11, 2004, NAWS's Water Start-Up Manager, Rey Six ("Six"), was called to the plant and informed that a small leak had developed at the CPVC flange adaptor of the 3" base fitting for the tank's level transmitter.

14.    Six attempted to contact several carriers to arrange to have a tanker remove the acid such that repairs could be made to the tank. The earliest that a carrier could arrive was Wednesday, September 15, 2004.

15.    HMMA was apprised of the problem and offered the use of empty acid totes to lower the acid level and to reduce the head pressure at the site of the leak.

16.    Six arranged to have the acid transferred to the totes. At approximately 1:00 PM on Tuesday, September 14, 2004, during the process of removing the tank level transmitter, the leaking flange on the flange adaptor was blown off the tank, causing approximately 4,500 gallons of 93% sulfuric acid to flow out of the tank and into the containment area.

17.    A spill responder arrived at the site at approximately 3:30 AM on September 15, 2004 and pumped a substantial amount of the sulfuric acid out of the containment area. Later that same day, the containment area was hosed out and approximately 200 gallons of the resulting diluted sulfuric acid solution was transferred to wastewater tanks.

18.    NAWS, to date, has incurred costs of no less than $153,172.20, as a result of the tank's failure. These costs continue to accrue.

1/1425088.3

4

## COUNT I – BREACH OF CONTRACT

19.    Plaintiff incorporates herein by reference the averments contained in paragraphs 1 through 18 as if set out here in full.

20.    Plaintiff has performed each and every promise, covenant, and condition required of it under its contract with Augusta, except for those promises, covenants, and conditions, the performance of which have been excused by the breaches of Augusta alleged herein.

21.    Augusta breached the terms and conditions of the Purchase Order by delivering a faulty and defective tank to Plaintiff.

22.    Plaintiff has suffered substantial damages as a direct and proximate result of said breach.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Augusta in an amount to be determined by the jury, plus interest, costs, attorneys' fees, and such further an additional relief as the Court deems just and appropriate.

## COUNT II – BREACH OF EXPRESS WARRANTY

23.    Plaintiff incorporates herein by reference the averments contained in paragraphs 1 through 22 as if set out here in full.

24.     Augusta and Snyder expressly represented and warranted to Plaintiff that the tank would function properly and efficiently.  Plaintiff relied upon these representations and warranties in deciding to purchase the tank.  However, the tank supplied does not conform to such representation and warranty.

25.     Augusta and Snyder have each breached an express warranty of performance with respect to the defective tank.

26.     Plaintiff has suffered substantial damages as a direct and proximate result of said breaches.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Augusta and Snyder in an amount to be determined by a jury, plus interest, costs, attorneys' fees, and such further and appropriate relief as the Court deems just and appropriate.

## COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

27.     Plaintiff incorporates herein by reference the averments contained in paragraphs 1 through 26 as if set out here in full.

28.     Augusta was, at all times relevant to this Complaint, in the business of selling, among other things, polyethylene tanks.  The tank actually sold and delivered to the Plant by Augusta was not fit for the ordinary purposes for which such equipment is used.

1/1425088.3                                      6

29.    Augusta's delivery of the faulty tank to Plaintiff constitutes a breach of the implied warranty of merchantability under the laws of the State of Alabama.

30.    Plaintiff has suffered substantial damages as a direct and proximate result of said breach in an amount well in excess of the minimum amount required for this Court to have subject matter jurisdiction.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Augusta in an amount to be determined by a jury, plus interest, costs, attorneys' fees, and such additional relief as the Court deems just and appropriate.

## COUNT IV – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

31.    Plaintiff incorporates herein by reference the averments contained in paragraphs 1 through 30 as if set out here in full.

32.    When Augusta sold the tank to Plaintiff, Augusta knew that Plaintiff required the tank for the particular purpose of containing sulfuric acid, and that Plaintiff was relying on Augusta's skill, judgment, and representations in providing a suitable tank for such purpose.

33.    Augusta's delivery of a faulty tank constitutes a breach of the implied warranty of fitness for a particular purpose under the laws of the State of Alabama.

1/1425088.3                                7

34.     Plaintiff has suffered substantial damages as a direct and proximate result of these breaches.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Augusta in an amount to be determined by a jury, plus interest, costs, attorneys' fees, and such further and additional relief as the Court deems just and appropriate.

## COUNT V – MISREPRESENTATION

35.     Plaintiff incorporates herein by reference the averments contained in paragraphs 1 through 34 as if set out here in full.

36.     Augusta affirmatively misrepresented to Plaintiff, upon requests for information about the tank, that the tank was manufactured and designed to function as an integral part of the Plant.

37.     Augusta made the above-described representations while knowing that the said representations were false, or made said representations recklessly, or made said representations with no knowledge as to their truth or falsity.   Said representations were misrepresentations of material fact.

38.     Plaintiff reasonably relied on Augusta's misrepresentations and incurred damage proximately caused by such reliance as described above.

1/1425088.3                                      8

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Augusta in an amount to be determined by a jury, plus interest, costs, attorneys' fees, and such further and additional relief as the Court deems just and appropriate.

## COUNT VI – NEGLIGENCE and WANTONNESS

39. Plaintiff incorporates herein by reference the averments contained in paragraphs 1 through 38 as if set out here in full.

40. Snyder had a duty to design and manufacture, and Snyder had the duty to supply, the tank in a manner such that the tank was free of defects that prevent the tank from performing adequately when put to its intended, reasonable and foreseeable use.

41. Augusta and Snyder had a duty to ensure that the tank provided to the Plaintiff was free of defects that would prevent the tank from performing adequately when put to its intended, reasonable and foreseeable use.

42. Both Snyder and Augusta breached their respective duties with regard to the tank supplied to the Plaintiff and used at the Plant.

43. Both Snyder's breach of duty and Augusta's breach of duty were negligent, reckless or wanton. As a direct and proximate result of Snyder's designing and manufacturing of a defective tank, and Augusta's provision of a defective tank to the Plaintiff, the above-named Plaintiff suffered damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Snyder in an amount to be determined by a jury, plus interest, costs, attorneys' fees, and such further and additional relief as the Court deems just and appropriate.

## COUNT VII – ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE (AEMLD) – Manufacturing Defect

44.    Plaintiff incorporates herein by reference the averments contained in paragraphs 1 through 43 as if set out here in full.

45.    Augusta is in the business of selling tanks like the tank at issue in this lawsuit. Snyder is in the business of manufacturing and selling such tanks.

46.    Snyder manufactured the tank and sold the tank in a defective condition, and placed the defective tank in the stream of commerce, where Plaintiff ultimately purchased the tank. Augusta sold the defective tank to Plaintiff.

47.    The tank reached Plaintiff, the ultimate user or consumer of the tank, without any substantial change in its condition from the time it was initially sold by Snyder and placed into the stream of commerce. The tank also reached Plaintiff without any substantial change in its condition from the time it was sold to Plaintiff by Augusta.

48.    When it reached Plaintiff, the tank was in a defective condition and/or in a condition that was unreasonably dangerous to Plaintiff as the ultimate user or consumer, as those

1/1425088.3

10

terms are defined by the Alabama Extended Manufacturer's Liability Doctrine as enunciated by the Alabama Supreme Court.

49.    In using the tank as it was intended to be used, namely in storing 93% sulfuric acid, the Plaintiff suffered damages as a proximate result of the product's defective and or unreasonably dangerous condition, including without limitation, damages associated with damage to property caused by the sulfuric acid that leaked from the tank, and damages associated with clean-up costs that resulted from the leak and resulting acid spill.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Snyder in an amount to be determined by a jury, plus interest, costs, attorneys' fees, and such further and additional relief as the Court deems just and appropriate.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.

_____
One of the Attorneys for
N.A. Water Systems, LLC

OF COUNSEL:

BRADLEY ARANT ROSE & WHITE LLP
E. Mabry Rogers, Esq. (ROG005)
Rhonda Caviedes Andreen (CAV008)
Angela R. Rogers (RAI 017)
One Federal Place
1819 Fifth Ave. N
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800


**SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

AUGUSTA FIBERGLASS COATINGS, INC.
The Corporation Company, Registered Agent
2000 Interstate Park Drive
Suite 204
Montgomery, AL 36109

SYNDER INDUSTRIES, INC.
The Corporation Company, Registered Agent
2000 Interstate Park Drive
Suite 204
Montgomery, AL 36109

1/1425088.3                           12

# Exhibit A



USFilter Engineering & Construction
250 Airside Drive
Moon Township, PA 15108

# Request for Project Quotation

**USFilter Engineering & Construction RFQ No: 7041-01-008/012**

| | |
|---|---|
| **TO:** Augusta Fiberglass<br>Core-B Products<br>c/o P and R Products | **Date:** July 1, 2003      **Bid Due Date:** July 8, 2003<br>**Project Name:** Hyundai Motors<br>**Project Location:** Montgomery, AL<br>**Install. Schedule:** Quote best delivery |
| **Phone:**<br>**Fax:**<br>**Email:** | **Return Bid Form to:** Paul J. Roth<br>Phone: 412-809-6182 Fax: 412-809-6188<br>Email: rothp@usfilter.com |

**Equipment Description for:  PE and FRP Tanks**

                                    **Project Procurement**
**Transaction:**

Please find the following attachments incorporated into this Project Bid which would constitute a part of any order awarded to the successful bidder:

- ☒ USFilter Engineering & Construction Request for Quotation/Bidder Acknowledgment
- ☒ Bidder Request for Information
- ☒ Firm Price Bidder Response Checklist
- ☒ Required Project Terms and Conditions Summary
- ☒ Project P.O. Terms and Conditions
- ☒ Pricing Summary
- ☐ Life Cycle Data and Cost Worksheet
- ☒ Project Equipment Technical Requirement/Specification  ☒ Data Sheets ☒ Drawings

**Project Pricing Requirements:** Terms ( 45  Days )

                    Conditions: 90% payment upon accepted delivery at job site
                                    10% pmt upon start-up of equip., NTE 120 days from delivery

**Anticipated P.O. Date:**                              **Anticipated Delivery Date:**

1. All requests for clarification must be communicated on the attached Request for Information (RFI) Form.
2. Quotations Must Be Firm- Not Subject to Escalation. We reserve the right to accept or reject all or any part of your quotation.

**ACKNOWLEDGMENT   (PLEASE ACKNOWLEDGE BY FACSIMILE WITHIN 24 HOURS)**

Please fill in the following information and fax this document to Paul J. Roth as shown above:

1. Bidder (will) or (will not) be submitting a Quotation by **July 8, 2003.**

2. If Bidder is declining to Bid, please explain: _____

This package may include certain confidential or proprietary information concerning designs, plan of execution, products or intended treatment processes. By signing and returning this acknowledgement, the recipient agrees to use this information only for the purpose of evaluating its possible participation in a particular project, and developing a proposal for a certain scope of work. The information may not be copied, transposed, transmitted to third parties, or used for any other purpose than that intended by USFilter. Upon the request of USFilter, the information and any copies thereof will be promptly returned. Should you not be willing to make this commitment of confidentiality, please return the entire package to USFilter immediately.

Signature: _____          Dated: _____



USFilter Engineering & Construction
250 Airside Drive
Moon Township, PA 15108

# Bidder's Request for Information

Bidder's Initials: ____

**USFilter Engineering & Construction RFQ No: 7041-01-008/012**

**Return Form by fax or email to:  Paul J. Roth  Fax: 412-809-6188  Email: rothp@usfilter.com**

Please use this form for submitting any request for information or clarification so that we can process your request more efficiently and likewise document the response.  Request for clarification of the Bid Response documents will be received and clarifications/interpretations will be issued by written agenda.  No unattached clarification/interpretation will alter or effect the Bid Response documents confirmed by written addendum.  Exceptions or qualifications to the Bid Response are discouraged and may result in disqualifying your company from consideration.

| | |
|---|---|
| **Project Name:** | Hyundai Motors |
| **Facility Location:** | Montgomery, AL |
| **Date Submitted in Writing:** | |
| **Bidder's Company:** | |
| **Bidder's Name:** | |
| **Bidder's Phone:** | |
| **Bidder's Facsimile:** | |
| **Bidder's Email:** | |
| **Referenced Documents:** | |
| **Resolution needed by:** | |

Description of Issue:

Recommended Approach:

Signature: _____    Dated: _____

**REMINDER: It is important to include, in this RFQ, all inclusions, exceptions, and clarifications of the required type equipment and/or systems for this project. Thank You.**



USFilter Engineering & Construction
250 Airside Drive
Moon Township, PA  15108

# Firm Price Bid Response Checklist

### USFilter Engineering & Construction RFQ No: 7041-01-008/012

## PROPOSAL RESPONSE CHECKLIST

**Seller is responsible to provide a complete technical equipment or systems proposal with clarifications, inclusions, and exclusions including but not limited tot he following marked requirements.**

| | |
|---|---|
| ☒ | Equipment or system scope |
| ☒ | Technical/commercial details according to the marked boxes in the Firm Price Summary of Equipment and Commercial Pricing |
| ☒ | Furnish one set of either footprint or general arrangement drawing for installation showing arrangement/principal details of the proposed equipment or system |
| ☒ | Installation requirements and details |
| ☒ | Equipment weight: empty, operating, and flooded |
| ☒ | Equipment physical dimensions and nozzle location, size, type along with LxWxH dimensions include lay down/maintenance area needed (e.g. area needed to pull tube bundle, filter cartridges, etc.) |
| ☒ | Life Cycle Costs |
| ☒ | Mechanical Warranty Provisions |
| ☒ | Schedule to meet Job Site Delivery Date Indicated |
| ☒ | Performance Guarantees |
| ☐ | Process Guarantees |
| ☒ | Complete Summary of Equipment and Commercial Pricing |
| ☐ | Job Site Storage Provisions/Requirements |

Bidder's Company: _____

Street Address: _____

_____

_____

_____

Telephone: _____

Facsimile: _____

Email: _____

Bidders Name: _____

Title: _____

**REMINDER: It is important to include, in this RFQ, all inclusions, exceptions, and clarifications of the required type equipment and/or systems for this project. Thank You.**

Signature: _____     Dated: _____



USFilter Engineering & Construction
250 Airside Drive
Moon Township, PA  15108

# Bidder's Response

**USFilter Engineering & Construction RFQ No: 7041-01-008/012**

In the event an order results from the Bidder's proposal, it will be placed with the manufacturer, manufacturer's agent or manufacturer's agent c/o manufacturer as agreed to between the parties.  However, service at the job site will be expected and required from the Bidder's nearest services and/or sales office and all operating difficulties that may arise will be handled locally by the Bidder and all required design, repair and performance data shall be available to accomplish prompt field service.  Bidder is to state the name of its agent local to the job site in the Bidder's proposal.

Company Name: _____

Address: _____

_____

_____

Contact: _____

Telephone: _____ Fax: _____ E-mail: _____

**Agent Local Representative's Information**

Company Name: _____

Telephone: _____ Fax: _____ E-mail: _____

**SHIPPING INFORMATION**

Country of Manufacture: _____

Shipping Point (please specify): _____

CITY                                    STATE                    ZIP CODE

☒ **BIDDER to provide ESTIMATE SHIPPING DIMENSIONS and WEIGHTS, for each shipping piece of the proposed  equipment, with your written BID RESPONSE**

## MISCELLANEOUS INFORMATION

Please estimated the number of man hours to install or erect one unit: _____ Hours

## ALTERNATE PROPOSAL FOR COST SAVING CONSIDERATIONS

Bidder is encouraged to submit alternatives that will provide better results lower cost and/or improve schedule.  However, in order to assure consideration, alternatives must be accomplished by a proposal that is fully responsive to the requirements of this Request for Quotation.

In the event Bidder elects to submit alternatives and/or exceptions, Bidder shall submit separate commercial and technical alternative proposals in accordance with the Technical Proposal and Commercial Proposal requirements already stated.

If the Bidder has reservations as to the successful operation of the equipment and/or various parts by following the specifications, an alternate bid may be submitted together with the requested bid stating such changes and the reasons therefor and providing such explanations as may be necessary to satisfy Buyer that successful operation will result from such changes.  The general arrangement shall be maintained substantially as described by the specifications.  In the absence of the specifications, it shall be assumed that by submission of a bid the Bidder shall accept the responsibility for the successful operation of the equipment and its various components as proposed by the Bidder.

## BIDDER'S STATEMENT

Is this Quotation in strict accordance with our detail process or specifications?    ☐ Yes ☐ No

Can this Quotation's required delivery/completion date be met?    ☐ Yes ☐ No

If answer above is "No", the Delivery/Completion date that can be met is: _____

MONTH        DAY        YEAR

Augusta Fiberglass Tank RFQ PnR.doc

**USFilter Engineering & Construction**
**Project Purchase Order Terms & Conditions**

**01-01-2000**

ACCEPTANCE - Commencement of performance of this Order shall constitute acceptance hereof by Seller. This order may be unilaterally canceled at no cost to Buyer until the receipt of an unqualified, unconditional acceptance by the Seller. Acceptance of this purchase order shall be unqualified, unconditional and subject to and expressly limited to the terms and conditions hereof. Buyer shall not be bound by any provisions additional to or at variance with the terms hereof that may appear in Seller's quotation, acknowledgment, confirmation, invoice or in any other communication from Seller to Buyer unless such provision is expressly agreed to in a writing signed by an authorized agent of Buyer. Buyer's acceptance of or agreement for the goods described on the reverse side of this document (the "Goods") shall constitute acceptance of such material subject to the provisions hereof only, and shall not constitute acceptance of any counterproposal submitted by Seller not otherwise accepted in a writing signed by an authorized agent of Buyer. Upon acceptance, this order shall constitute the entire agreement between Buyer and Seller, supersede all prior negotiations, discussions and dealings and may not be modified or rescinded excepts by a writing signed by both Seller and Buyer.

ATTORNEY FEES - If either party commences or is made a party to an action or proceeding to enforce or interpret this order, the prevailing party in such action or proceeding shall be entitled to recover from the other party all attorneys fees, costs and expenses incurred in connection with such action or proceeding or any appeal or enforcement of any judgment obtained in any such action or proceeding.

CANCELLATION - Buyer may cancel this Order at any time upon written notice and, if Seller is not in breach of its obligations hereunder, shall thereafter pay reasonable and proper cancellation charges which may include a reasonable and customary profit only on Goods and services accepted to date of receipt of the notice of cancellation. In addition, in the event that (i) any materials, work or Goods fail to conform to any applicable warranties, (ii) Seller fails to make any required deliveries, (iii) Seller breaches any terms or conditions of this order, (iv) Seller becomes insolvent, (v) a voluntary petition in bankruptcy is filed by Seller, (vi) an involuntary petition to have Seller declared bankrupt is filed, (vii) a receiver or trustee for Seller is appointed, or (viii) an assignment for the benefit of creditors is executed by Seller, Buyer shall have the right to immediately cancel this purchase order without any liability whatsoever to Seller or any other person or entity. In the event of such cancellation, Buyer, without prejudice to any other rights available to Buyer for breach of contract, shall have the right to: (a) refuse to accept delivery of the Goods or performance of work, (b) return to Seller any materials already accepted and recover from Seller all payments made therefor and for freight, storage, handling and other expenses incurred by Buyer and be relieved from liability for any future payments to Seller, (c) recover any advance payments to Seller for undelivered or returned Goods or work to be performed, and (d) purchase Goods elsewhere and require Seller to immediately reimburse Buyer for any resulting losses.

COMPLIANCE WITH LAWS - Seller warrants that Goods manufactured or Services performed pursuant to this Order are performed or manufactured and shipped in compliance with all applicable federal, state, local laws, rules and regulations, including but not limited to the Toxic Substance Control Act, the Occupational Safety and Health Act, the Clean Air Act, the Federal Water Pollution Control Act, the Solid Waste Disposal Act, the Resource Conservation and Recovery Act, Fair Labor Standards Act of 1938 and the Hazardous Goods and Services Transportation Act.

CONFIDENTIAL - Seller shall neither disclose, advertise, nor publish the fact that Seller has contracted to furnish Buyer the items described herein, nor disclose any details connected with the purchase order to a third party.

COUNTERPARTS - This order may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument.

DELAYS IN DELIVERY - Time is of the essence, but Seller will not be liable for damages for delays in delivery due to causes beyond its reasonable control and without its fault or negligence. If Seller does not comply with Buyer's delivery schedule, Buyer in addition to remedies provided by law, at its option, may either approve a revised delivery schedule or may terminate this order and hold Seller accountable for all losses and damages arising therefrom. Buyer has the right, at any time, to change the place and/or time of delivery. Any claim by Seller for adjustment because of a change in place and/or time of delivery will be deemed waived unless asserted in writing within 10 days after receipt by Seller of the request for change.

**USFilter Engineering & Construction**
**Project Purchase Order Terms & Conditions**                    **01-01-2000**

**DELIVERY SCHEDULE** - Seller understands and agrees that if Seller makes any commitments or production arrangements in excess of the amounts set forth herein or in advance of the time necessary to meet Buyer's delivery schedule, it does so at its own risk, and Buyer shall have no liability to Seller or any other party relating to same. Goods shipped in advance of the time required in the Order may, at Buyer's option, be returned to Seller at Seller's expense. Buyer reserves the right to delay shipment of the Goods for up to 30 days at no additional costs.

**DRAWINGS** - Buyer's review and approval of drawings submitted by Seller will be for and cover only general conformity to the specifications. Such approval will not constitute approval of any dimensions, quantities or details of the Goods shown by such drawings, and shall not relieve the Seller of its responsibility for meeting all specifications of this Order. Buyer retains rights of final approval for all finished products.

**FAIR LABOR STANDARDS ACT** - In accepting this order, Seller warrants that the goods or services to be furnished hereunder were or will be produced in compliance with the requirements (on date of shipment or performing) of the Fair Labor Standards Act of 1938 as amended and unless otherwise agreed in writing Seller shall insert a certificate on all invoices submitted in connection with this purchase order stating that the goods or services covered by the invoice were produced in compliance with the requirements of such Act, including without limitation, Sections 12(a) and (15a) thereof.

**GOVERNING LAW** - The contract resulting from acceptance of this order by Seller shall be governed by and construed under the laws of the State of California, and shall not be governed by or construed under the U.N. Convention On Contracts For International Sale Of Goods ("CIGS"), the parties agreeing that CIGS shall not apply to this Purchase Order or the enforcement or interpretation hereof.

**INDEMNIFICATION** - Seller shall indemnify Buyer and its customers and hold them harmless from and against any and all claims, actions, proceedings, costs, expenses, losses and liability, including all attorneys' fees and costs, arising out of or in connection with or relating to any Goods or services performed by Seller pursuant to this order, including without limitation all product liability claims and any claims involving personal injury, death or property damage. The obligations set forth in this Section shall survive the termination or fulfillment of this purchase order.

**INFRINGEMENT OF PATENTS, TRADEMARKS OR COPYRIGHTS** - The following terms apply to any infringement, or claim of infringement, on any patent, trademark or copyright based on the manufacture, normal use or sale of any material or equipment furnished to Buyer hereunder or in contemplation hereof. Seller shall indemnify Buyer and its customers for any loss, damage, expense or liability that may result by reason of such infringement or claim (including without limitation attorney's fees and expenses), except where such infringement or claim arises solely from Seller's adherence to Buyer's written instructions or directions which relate to material or equipment other than (1) commercial material or equipment, or (2) items of Seller's origin, design or selection, and Buyer shall indemnify Seller in such excepted cases. Each party shall defend or settle, at its own expense, any action or suit against the other for which it is responsible hereunder. Each party shall notify the other promptly of any claim of infringement for which the other is or may be responsible hereunder, and shall cooperate with the other in every reasonable way to facilitate the defense of any such claim.

**INSIGNIA** - Goods rejected or not purchased by Buyer which utilizes or carries any Buyer names, trade names, trademarks, insignia, symbols, decorative designs or evidences of Buyer's inspection (all hereinafter designated ("Insignia") shall have all such insignia removed prior to any sale, use or disposition thereof. Seller agrees to indemnify and hold Buyer harmless from any claim, loss or damage arising out of Seller's failure so to do. This clause shall in no way modify the provisions hereof relating to the use of information.

**INSPECTION** - Buyer and its Client reserves the right to expedite, inspect or witness the test of the Goods at any time and place including the Seller's and its sub-contractor's facilities with prior notice.

**USFilter Engineering & Construction**
**Project Purchase Order Terms & Conditions**                                    **01-01-2000**

INSURANCE - Seller shall maintain, and cause its subcontractors to maintain, the following minimum insurance coverage during the term of this order with insurance companies acceptable to Buyer and shall submit insurance certificates, as requested by Buyer, to Buyer in writing prior to commencement any work relating to the Goods: Comprehensive General Liability Insurance for bodily injury, property damage and personal injury, including contractual liability insurance, with combined limits of not less than $5,000,000 per occurrence; and Automobile Liability Insurance for bodily injury and property damage, with combined limits of not less than $1,000,000 per occurrence. Seller shall further maintain and require its subcontractors to maintain Worker's Compensation Insurance in amounts required by applicable law and Employers Liability Insurance with limits of not less than $1,000,000 per occurrence covering all employees engaged in the performance of work relating to the Goods or services performed hereunder. Seller shall cause all insurance companies providing such insurance to waive all rights of subrogation against Buyer and its customers; all insurance policies shall provide that no expiration, termination or modification of such coverage shall take place without the insurance company giving 30 days' prior written notice thereof to Buyer. Buyer shall be named as an additional insured on all policies described herein, except Worker's Compensation and Employers Liability.

Non-Discrimination in Employment - The Seller in performing the work required by this order, shall not discriminate against any person in the employment process because of race, creed, color, sex, age, religion, national origin or veteran or handicapped status. The employment process includes but is not limited to, employment advertising, job posting, interviews, testing, recruiting, pay, promotion, transfer, demotion, hiring, educational opportunities, lay-off and recall. Seller agrees to make every good faith effort to provide equal opportunity to all individuals.

NONWAIVER - The failure by Buyer to enforce at any time, or for any period of time, any of the provisions hereof shall not be a waiver of such provisions nor the right of Buyer thereafter to enforce each and every such provision.

PAYMENT TERMS - The payment terms are net forty-five (45) days after receipt of the Goods including all documents required in the Order, verification that the quality of Goods received meet Buyer's specifications and the receipt of a correct invoice. If the Seller fails to ship the Goods in accordance with the times stipulated in the Order, Buyer may delay payment equal to the number of days the Goods were delayed by the Seller as an equitable adjustment. Buyer shall be entitled at all times to set off any amount owing at any time from Seller or any of its affiliates to Buyer or any of its affiliated companies.

PRICES - All prices are firm, fixed and not subject to escalation. The price includes all applicable federal, state and local taxes or charges (for which Seller shall be solely responsible) except State Sales tax may be invoiced if applicable. All costs and expenses relating to boxing, packing, loading, bracing, cartage or extra insurance are included in the price, and no charges of any kind will be allowed relating to same.

REMEDIES - Remedies herein reserved to Buyer shall be cumulative, and in addition to any other or further remedies provided in law or equity.

REJECTIONS - If any of the goods are found by Buyer within a reasonable time after delivery to Buyer's destination to be defective in material or workmanship, or otherwise not in conformity with the requirements of this purchase order. Buyer, in addition to any other rights which it may have under warranties or otherwise, shall have the right to reject and return such goods at Seller's expense, which goods shall not be replaced by Seller, without written authorization from an authorized agent of Buyer.

SEVERABILITY - Nothing contained herein shall be construed so as to require the commission of any acts contrary to law, and wherever there is a conflict between any provisions of this order and any present or future statute, law, ordinance or regulation, the former shall be curtailed and limited only to the extent necessary to make it comply with such statute, law, ordinance or regulation.

SPECIFICATIONS - Seller expressly warrants that all Goods and services covered by this Order will conform to the specifications, drawings, samples or other description(s) furnished or adopted by Buyer and will be of good quality and workmanship and free from defects. Goods furnished to Buyer's patterns, specifications, drawings, or fabricated with its tools shall not be furnished or quoted to any other person or concern.

Augusta Fiberglass Tank RFQ PnR.doc

## USFilter Engineering & Construction
## Project Purchase Order Terms & Conditions                    01-01-2000

SUBCONTRACTING & ASSIGNMENT - Except as to raw material purchases or standard commercial articles or parts, the Seller may not subcontract any portion of the work without written consent of Buyer. Assignment of this order or any interest herein or any payment due or to become due thereunder without the written consent of Buyer shall be void and of no effect and may, at the option of Buyer, render this order void.

BUYER'S PROPERTY - Unless otherwise agreed in writing, all tools, equipment or goods and services of every description furnished to Seller by Buyer or specifically paid for by Buyer and any replacement thereof or modification thereto, or any goods affixed or attached thereto, shall be and remain the sole property of Buyer. Such property (a) shall be clearly marked "Property of Buyer", (b) shall not be used except in filling Buyer's orders; (c) shall be held at Seller's risk; and (d) shall be delivered without costs to Buyer promptly at its written request. Seller shall supply Buyer with an inventory of such property quarterly. Any specifications, drawings, sketches, models, samples, tools, technical information or data, and any other confidential or proprietary information, written, oral or otherwise (all hereinafter designated "information") furnished to Seller thereunder or in contemplation hereof shall remain Buyer's property. All copies of such information in written, graphic or other tangible form shall be immediately returned to Buyer without cost upon its request. The information shall be kept confidential by Seller, shall be used only in the filling of Buyer orders, or in performing obligations thereunder and may be disclosed or used for other purposes only upon such terms as may be agreed upon between Buyer and Seller in writing. No information furnished by Seller to Buyer or in contemplation hereof shall be considered by Seller to be confidential or proprietary except as specifically agreed to in writing by an authorized agent of Buyer.

WORK ON PREMISES - If Seller's performance under this order involves operations by Seller on the premises of Buyer or one of its Customers, Seller shall comply with all applicable provisions of federal, state and local laws and regulations including rules, safety requirements and regulations established for such plant site. Seller shall take all necessary precautions to prevent the occurrence of any injury to persons or property during the progress of such performance. Seller shall indemnify Buyer and its Customers against all loss which may result from any act or omission of Seller, its agents, employees, or subcontractors.



USFilter Engineering & Construction
250 Airside Drive
Moon Township, PA 15108

# Bidder's Response

**USFilter Engineering & Construction RFQ No: 7041-01-008/012**

Duplicate the form below as needed for each distinct equipment price quote.
Do not group equipment that needs separate pricing.

## SUMMARY OF EQUIPMENT & COMMERCIAL PRICING FOR: _____

Please attach this Price Form with written Bid Response. *Form must be completely filled in according to requirements.*

| MODEL NUMBER:<br>Please response only to checked items: | Qty/Unit | Unit Cost | Extended Cost |
|---|---|---|---|
| ☒ Equipment Supply | | | |
| ☐ Shop Drawings (2 sets) | | | |
| ☐ Shop Inspection | | | |
| ☐ Shop Test | | | |
| ☐ IO&M Manuals (5 sets) | | | |
| ☐ Start-Up (est. of time and trips) | | | |
| ☐ Training (est. of time and trips) | | | |
| ☐ Extended Warranty | | | |
| ☐ Performance Guarantee | | | |
| ☐ Process Guarantee | | | |
| ☐ Spare Parts | | | |
| ☐ Freight | | | |
| ☐ Special Packaging | | | |
| ☐ State Sales Tax | | | |
| ☐ State Usage Tax | | | |

**TOTAL  $**

**DELIVERY INFORMATION**
_____ weeks after receipt of an order that  Submittal Drawings can be submitted
_____ weeks after Drawing Approval that Equipment can be delivered
_____ weeks after equipment delivery that Final  O&M Manuals can be delivered

**PROJECT SCHEDULE**
According to current manufacturing schedules, PLEASE ADVISE OF THE FOLLOWING ESTIMATED DATES if the equipment is required at Project Jobsite for installation by Quote best delivery.
- Place Equipment P.O. _____
- Submittal Drawing Approval _____
- Release Equipment for Delivery to Jobsite

Augusta Fiberglass Tank RFQ PnR.doc



USFilter Engineering & Construction
250 Airside Drive
Moon Township, PA 15108

# Bidder's Response

**USFilter Engineering & Construction RFQ No: 7041-01-008/012**

## TERMS AND CONDITIONS

The Bidder hereby agrees to accept and comply with the Buyer's Project Equipment Pricing and Commercial Requirements.

The undersigned certifies that the bid prices contained herein are firm and have been carefully checked, are submitted as correct and final, and are firm for acceptance for a period of ninety (90) days from the bid due date.

Bidder: _____
         (Please Type or Print)

By: _____   Title: _____
       (Signature)                          (Please Type or Print)

**Please Type or Print:**

Name: _____

Address: _____

Dated: _____

Phone: _____   Fax: _____

Email: _____

Note: In order for your Bidder's Response to receive full consideration *it must include all attachments, answers to all questions, and it must be received on time.*



## SUMMARY
## REQUIRED PROJECT TECHNICAL/COMMERCIAL TERMS AND CONDITIONS SUMMARY

| PROJECT TECHNICAL/COMMERCIAL TERMS& CONDITIONS REQUIREMENTS | INCLUDED (Y or N) | COPIES | DURATION | REFERENCES |
|---|---|---|---|---|
| Technical-Commercial Equipment Requirements | Y | 3 | | Technical Specs. |
| Shop Drawing /Submittals for Approval | Y | | | 1.0 |
| Buyer Approval Process for Shop Drawing Submittals | | | | 1.0 |
| Seller Re-Submittal from Date of Buyer's Request | | | | 1.0 |
| Buyer Approval Process for Re-Submittal Drawings | | | | 1.0 |
| Final Certified Drawings for Manufacture | Y | 3 Hard 1 Elec | | 1.0 |
| Final Certified Drawings for Construction | Y | 3 Hard 1 Elec | | 1.0 |
| Witness Shop Test/Inspection @ Manufacturers Facility | | | | 2.0 |
| Non-Witness Shop Test/Inspection @ Manufacturers Facility | | | | 2.0 |
| Seller to Furnish QA/QC Plan | | | | 2.0 |
| Equipment Nameplate Requirements | Y | 3 | | 3.0 |
| Equipment Preparation and Tagging Equipment | Y | 3 | | 3.0 |
| Shipping Preparation of Equipment | Y | 3 | | 3.0 |
| Hazardous Material Safety Data Sheets | Y | 3 | | 3.0 |
| Equipment Packaging Requirements | Y | 3 | | 3.0 |
| Operations & Maintenance Manuals | Y | 3 Hard 1 Elec | | 4.0 |
| Preventive & Predictive Maintenance Schedule | Y | 3 | | 4.0 |
| Pre-Start-up w/Installation | | | | 5.0 |
| Physical Start-Up | | | | 5.0 |
| Training on the Equipment and its Operations | | | | 5.0 |
| Standard Warranty on Equipment & Parts | Y | 3 | | 6.0 |
| Extended Warranty on Equipment & Parts | Y | 3 | | 6.0 |
| Equipment Performance Guarantee | Y | 3 | | 6.0 |
| Start-Up Expendables Spare Parts List | Y | 3 | | 7.0 |
| Critical Operations Spare Parts List | Y | 3 | | 7.0 |
| Long Term Operations Spare Parts List | Y | 3 | | 7.0 |
| Inland Freight to Job Site and Shipping Instructions | Y | 3 | | 8.0 |
| Field Storage Requirements | Y | 3 | | 9.0 |
| Buyer Payment Conditions-Invoice/ Remittance Instructions | Y | 3 | | 10.0 |
| Equipment Payment Terms | Y | 3 | | RFQ |
| Sellers Project Schedule Requirements | Y | 3 | | 11.0 |
| Buyers Deliverable Schedule | Y | 3 | | 12.0 |
| | | | | |
| | | | | |

In the event of a conflict between the BUYER'S Terms and Conditions presented, the Order of Precedence is as follows:

- Equipment Technical Specifications, supersedes,
- Required Project Technical/Commercial Terms and Conditions, supersedes,
- Purchase Order Terms and Conditions



## 1.0 SHOP DRAWINGS/SUBMITTALS

SELLER shall furnish and submit general arrangement, details and/or equipment outline drawings for review.

Provide review drawings in complete sets for each specific machine or facility, including applicable arrangements, details, and bills of material. SELLER may submit arrangement drawings and equipment outline drawings without details for review of design concept or for use in establishing a general arrangement. As a minimum such drawings shall include pertinent dimensional, clearance and elevation data and weights for each piece of equipment as well as the combined total weight – empty and full of all operating materials and/or fluids.

Provide engineering calculations for reference and review when requested.

For standard commercial items, such as air and hydraulic cylinder and operating valves, gear reducers, motors, and the like, provide certified sheets showing mounting dimensions, overall dimensions, cross-sectional arrangement, parts nomenclature, and material designation for each piece of equipment. Furnish details of parts when requested and available.

BUYER will review drawings and advise SELLER in writing of requested changes after receipt of drawings.

Drawings approved as submitted will be so noted in writing and will be returned to SELLER.

Drawings requiring changes will be returned to SELLER marked "Approved as Noted". If SELLER does not agree to make changes noted by BUYER, they shall immediately advise BUYER in writing of its reasons for not doing so.

Do not start fabrication or manufacture until BUYER reviews and approves drawings and data for particular item of work, unless so specified when Purchase Order is placed.

BUYER'S review of drawings does not relieve SELLER of responsibility for furnishing satisfactory equipment nor of any responsibility in regard to correctness or adequacy of details, nor shall review procedures specified herein be cause for delay of equipment deliveries.

Notations made in review of drawings are understood to be covered in contract and do not constitute authorization for contractual changes in price or delivery.

Submit review drawings according to quantity and schedule advised in Equipment RFQ.

SELLER shall prepare a "Letter of Transmittal" for all submissions to BUYER. SELLER shall state the BUYER'S referenced project name and number on the transmittal document. SELLER shall specify the documents, shop drawings, submittals, catalog cuts and/or samples are being submitted for:

* For Approval
* Revised Documents Re-Submitted for Approval
* Final Certified Drawing
* Final Certified Drawings for Construction

All documents, shop drawings, submittals, catalog cuts and/or samples being submitted shall be stamped as listed below. For documents prepared electronically, these same stamps shall be placed onto the document electronically. In lieu of electronic stamps, ink stamping is acceptable. All documents shall contain the BUYER'S project name and project number:

* For Approval
* Revised Documents Re-Submitted for Approval
* Final Certified Drawing
* Final Certified Drawings for Construction

Revisions:

* Clearly designate revisions made to drawings by encircling all revisions, after the initial review and resubmit for review. Make designated revisions by appropriate letter or number identification, including description in revision block area and similar identification markings at appropriate parts of drawing.
* Revisions to drawings do not constitute authorization for any change in contract price. Should SELLER take exception and request change in contract price, provide written request through appropriate BUYER'S Purchasing Department Agent before proceeding with work.

## General Drawing Data and Standards

Drawings shall show the following, as applicable:

* Plan and elevation general arrangements of each individual piece of equipment include the measurements of the location, centerline and elevation of the related equipment and weights, locations of field piping, anchor points, electrical connections, as well as any other related field connections.
* Assemblies and subassemblies, details of parts and adequate shop drawings for manufacture along with Bills of Material. Outline drawings of foundations showing anchor bolt locations, static and dynamic loading.
* Drawings shall be made to a standard scale with appropriate dimensioning.
* BUYER and/or its customer's drawing borders, title blocks, and numbers maybe required to be placed on SELLER'S Shop Drawings. These requirements will be stated on the BUYER'S Purchase Order

Prepare drawings and bills of material as follows, including the following information as applicable:

* Drawings shall have sharp lines and lettering at least 3.2 mm high to permit microfilming.
* Indication of inapplicable parts on drawings containing details of parts not applying to specific facility.
* Complete material specifications such as grade and form (cast, forged, rolled, and the like), heat treatment (annealed, quenched and tempered, flame hardened, and the like), and hardness. Machine finished parts shall have all final finishes shown on drawings. Adequate cross-referencing of drawings and complete bills of material. Include the SELLER'S shop order number, BUYER'S order number and equipment tag number.
* Separate Customer's bills of material for ordering purposes, listing erection material and the like shown on SELLER'S drawings but to be furnished by BUYER.
* Finish symbols on finished surfaces. Required allowances and tolerances for critical dimensions.
* AWS symbols on welding drawings.
* Pertinent information such as speed, travel, load, maintenance clearances and the like on arrangement drawings.



**Final Drawings and Data**

- After manufacture of equipment and before final payment is made for the work, send the following to the BUYER:

- One set of permanent Mylar reproducible and one set of electronic files in AutoCAD format, minimum Release 14, which shall contain each reviewed and corrected drawing. Drawing size should be 24" x 36". Assemble odd size or individual drawings 8½x11, 11x17, etc., onto a full size drawing 24" x 36" prior to preparing permanent mylar reproducible and Electronic AutoCAD drawing files.

- Operating and maintenance manuals, spare parts lists, SELLER'S specifications, and bills of material covering SELLER-furnished work, including the requested number of hard copies and one electronic file version of each.

Drawing Index and Schedule

- When required by BUYER for projects with a large number of submittals, SELLER shall prepare a drawing index for all drawings furnished including subcontractor and vendor drawings. The drawing index shall be computerized and printed on standard 8 ½" x 11" paper. The index and schedule shall be prepared in a format specified by BUYER and include all information requested by BUYER.

- Prepare drawing index and schedule at start of project, as soon as possible after order placement. Keep current and submit updates to BUYER on a mutually agreed upon schedule. BUYER will use the drawing index to monitor SELLER'S progress.

Use of SELLER'S Drawings

- Drawings and specifications shall become BUYER'S property and may be used in any way BUYER desires for repair and maintenance of work furnished, as well as obtaining spare and repair parts as required. No notations restricting BUYER from such uses shall appear on drawings or specifications.

## 2.0 SHOP TEST AND INSPECTION REQUIREMENTS

SELLER shall be responsible for the performance of all activities affecting quality and schedule including those of its suppliers. BUYER reserves the right to review SELLER'S Quality Assurance and Quality Control Plan submittal requirements, if applicable.

The goods provided by SELLER under the Purchase Order are subject to inspection, expediting, audit of the Quality Plan implementation and witnessing of SELLER testing by the BUYER'S representatives and/or the Owner, who shall be granted access to all parts of the SELLER'S Facilities or SELLER'S sub-suppliers engaged in the manufacturing process of the Purchase Order. The representative's inspection and witnessing of testing, or lack of inspection, witnessing of testing or response, shall in no way release the SELLER from any obligations related to the Purchase Order. SELLER shall further ensure that these terms and conditions become a part of its purchase orders to its sub-suppliers for all goods and services which are used in the products purchased under the Purchase Order. Also, the SELLER is further responsible for obtaining and submitting quality Plans as required from its sub-suppliers.

SELLER and/or SELLER'S sub-suppliers shall notify BUYER  with in 2 weeks after arrival of Purchase Order in advance of the date inspection or test can be made. If for any reason the date should be set back, SELLER shall either telephone, facsimile, or e-mail BUYER immediately.

Any waiver of tests and/or witnessing will be notified to SELLER in writing.

It shall be the BUYER'S right to ask SELLER for a "Pre-Inspection Meeting" in order to discuss the fabrication and/or test plans.

SELLER shall carry out, inspections and tests required by the Purchase Order and/or attached specifications even if BUYER does not witness them; inspection and tests reports shall be delivered to the BUYER'S Procurement Department.

All costs for checks, inspections, tests, and the likes, preparation of relevant documentation, approvals, issuance of analysis and inspection certificates by approved laboratories, including inspectors fees, shall be on the SELLER'S account including any repairs, etc. that result from inspection will be borne by the Supplier.

The presence of BUYER'S inspectors and/or those appointed by them does not relieve the SELLER of any of the responsibilities specified in the Purchase Order, including delivery.

Inspections and tests of all material, including its sub-suppliers and lower tier subcontractors are SELLER'S obligation and responsibility; however BUYER reserves the right to carry out its own inspection at sub-suppliers facilities and to witness tests of its sub-suppliers. In order to allow the performance of these inspections and the witnessing of tests, SELLER shall send the BUYER'S Procurement Department an unpriced copy of the Purchase Order complete with the relevant technical documentation approved for construction at least 30 days in advance of the date agreed for the test.

It is the SELLER'S responsibility to carry out all the formalities relating to the approvals, inspections, and tests specified by the Purchase Order.

Any delays attributable to the official institutions will not be considered as force majeure.

The reports and results of tests performed by official institutions shall be sent to the BUYER'S Procurement Department.

SELLER shall not ship the Goods covered under the Purchase Order without either the BUYER'S final inspection or a written waiver of inspection from the BUYER. Non-compliance of this requirement shall constitute rejection of the Goods with subsequent return or other action at SELLER'S cost.

All welded assemblies shall be thoroughly cleaned of all weld drippings and/or slag prior to testing or shipment of equipment

At a minimum, all SELLER'S equipment to be furnished shall be completely assembled and tested at the factory before shipping. Cost to repair and/or replace equipment after shipment will be to the SELLER'S account.

As stated in the BUYER'S Purchase Order, Factory Acceptance Tests for all SELLER'S software will be required. BUYER  reserves the right to request tests for any and all software furnished by SELLER. These tests include fully testing all Application (Operational) and Developmental software for all computer hardware, sound and graphic systems, programmable logic controllers (PLC), automation SCADA control system equipment, instrumentation, and computers. SELLER shall submit a Test Plan for BUYER'S approval before conducting any tests.

Prior to any shop tests, SELLER shall verify that all instruments and/or equipment have been factory calibrated.

## 3.0 EQUIPMENT PREPARATION

**Nameplate Requirements:**

SELLER shall provide stainless steel nameplates on each piece of supplied equipment, permanently attached in a prominent location on the equipment.

Permanently stamp information on nameplate.

Painted or stenciled information is not acceptable.

Nameplates shall be no less than 0.040" thickness.

Lettering on the nameplates shall be no less than 3/16" in size.

# USFilter

All Nameplate information must also be supplied in electronic media format (Word or Excel) in Shop Drawing submission and with or as part of the final version of the O&M manual. This separate file must clearly be indicated as Nameplate Information.

Nameplates shall be affixed to equipment with screws – Adhesives are not permitted.  In the event a nameplate cannot be permanently affixed to the equipment, a stainless steel tag, containing the specified information, shall be a suitable alternative.

Nameplate information shall include at a minimum the following:

* Manufacturer's address or a contact location
* Manufacturer's telephone number and e-mail address
* Model number and size
* Equipment serial number
* Shop Order Number
* Date of Manufacture

## General Instructions

Mark parts of work to be erected or field-assembled by BUYER durably and legibly, giving BUYER order number, detail identification, and match marking to enable BUYER to identify the various parts and install work without delay.

Tag and place separate parts too small to mark in containers plainly marked on outside as to contents and BUYER's order number.  In shipping bolts, keep different kinds and sizes separate, either by separate containers or partitions in same container.

Before shipment, coat finished surfaces of machinery and equipment thoroughly with a protective material that prevents rust, but can be readily removed when erected.

Provide written details of the requirements for outside job site storage.

Factory test all equipment at a minimum

All welded assemblies shall be cleaned of all weld splatter and/or slag prior to shipment of equipment.

Prior to any shipment, SELLER shall verify that all instruments and/or equipment have been factory calibrated.  Factory calibration certification sheets shall be forwarded to BUYER'S Procurement Department at time of shipment.

SELLER to provide written description of the process by which the equipment and systems are prepared for shipment including quality control measures, packaging materials, shipping dimensions and gross weights for each piece of the equipment or system supplied and method of shipment to job site.

## Equipment Tagging Requirements

Tagging is mandatory for Field Acceptance and Field Inventory/Staging.

The following is the minimum standard equipment marking requirements:

* BUYER'S Purchase Order Number.
* BUYER'S P&ID Equipment Item Number Identification.
* Description of the equipment being supplied.
* BUYER'S project number.
* Package ___ of ___

## Estimated Dimensions & Weights

SELLER to include in their Bid Response, a listing of all the equipment covered under the Purchase Order stating the following for each piece to be supplied:

* Description of equipment
* Quantity of packages
* Gross Weight: ___ lbs
* Dimensions: ___ inches (centimeters) L x ___ W x ___ H

SELLER is required to furnish above for Delivery, Receiving, Unloading, and Construction Installation requirements.

## Hazardous Information (when applicable)

SELLER shall notify the BUYER'S Procurement Department in writing if goods furnished are subject to laws or regulations relating to hazardous or toxic substances, or when disposed of, to regulations governing hazardous wastes, or to any other environmental or safety and health regulation.  SELLER shall furnish the following:

* All appropriate shipping certifications.
* Labeling in compliance with the Occupational Safety and Health Administration, Department of Labor, General Industry Standards 29 CFR 1910.1200 Hazard Communication Regulations.
* Material Safety Data Sheets in compliance with the Occupational Safety and Health Administration, Department of Labor, General Industry Standards 29 CFR 1910.1200 Hazard Communication Regulations.
* Instructions for shipping, safety, handling, exposure and disposal in a form sufficiently clear for use by BUYER'S non-technical personnel and sufficiently specific to identify all action which the user must take concerning the materials.

The following certification must be made on the inland bill of lading "This is to certify that the above named materials are properly classified, described, packaged, marked, labeled, and are in proper condition for transportation according to any applicable Department of Transportation Regulations."



**Equipment Packaging Requirements**

SELLER to provide a detailed explanation of how equipment or system is properly prepared for transportation, receiving and unloading, and proper storage at job site

Packaging must be suitable for Job Site Unloading, Handling, and Storage.

**Unloading and Handling**

- When a crane is required for unloading, the SELLER is responsible for providing drawings to BUYER that reflect locations for 'center of gravity' and 'lifting eyes/lugs' and the size and type of the spreader beam including the requirements for using the beam, if required, with appropriate shipping dimensions and shipping gross weights.

- Job Site does not have unloading dock areas.

- Job Site handling equipment usually is a crane and/or forklift.

**Storage**

- Packaging to be adequately protective for normal industry standard Job Site storage conditions. SELLER must provide written details for outside storage requirements.

**Drop Ship Instructions**

**Identification**

SELLER'S must insist of their sub-suppliers that any drop shipment purchases are clearly identified with the BUYER'S name, project number, and purchase order number, on the packing list.

**Packing List**

SELLER'S must insist of their sub-suppliers that any drop shipment purchases have a clear Packing List identifying all parts in the shipment, there should be no Packing List with "1 Lot Machine Parts", as this means nothing to the BUYER'S receiving party. The Packing List description needs to be descriptive

**Labeling Boxes**

SELLER'S must insist of their sub-suppliers that any drop shipment purchases have a Packing List attached to any box, equipment, skid, etc. that is delivered to the BUYER'S job site.

**Labeling Equipment**

SELLER'S must insist of their sub-suppliers that every piece of equipment, valve, instrument, etc. must have a tag attached to it identifying it as shown on the overall BUYER'S project P&ID's.

## 4.0  INSTALLATION, OPERATION & MAINTENANCE MANUALS

SELLER to furnish for each piece of equipment supplied, prior to initial testing, an indexed installation, operation and maintenance manual. Text shall include a written detailed description of the following:

- Process summary and key components.

- Process function, purpose of the key components and normal operation. A functional description of operation must be provided.

- Design criteria for the process, system or equipment item.

- Names, addresses, phone numbers, fax numbers and e-mail addresses of the manufacturer and local SELLER'S representative and SELLER'S local technical support.

- Normal operating parameters and requirements including necessary monitoring and typical adjustments.

- Detailed Sequential Procedures for start-up and shutdown of the process, system or equipment item.

- Procedures for optimizing the performance of the process, system or equipment item.

- Printed and electronic copies of microprocessor operational (application) and developmental program and ladder logic drawings, Control and Wiring Diagrams, Process and Instrumentation Diagrams, Process Flow Diagrams and Schematic Diagrams, as appropriate. Drawings shall identify the location, name, tag number and function of all system components, valves and controls.

- Identify serial number, size, make, model, figure number, etc., highlighted to identify the specific unit furnished.

- Show the BUYER'S Project Name, Project Number, and P&ID equipment tag number on the cover and on the design criteria page.

- List required special equipment or instruments or tools.

- Identify special parts, subsystems or internal parts.

- Document fully Recommended Maintenance both Preventive & Predictive explaining specific procedures and including frequency and duration.

- Manufacturer's recommended spare parts list for start-up expendables, critical operations, and long term operations must be included in the manual.

- All instrumentation shall be factory calibrated. Therefore, SELLER to furnish all factory calibration certification sheets.

- All software training documentation including copies of all graphic screens shall be included in this manual

- Copies of all software licenses, where appropriate, shall be furnished herein.

- Document fully all and required lubricants, cleaning materials and grease material. Include all MSDS Sheets for these materials.

Installation, Operation & Maintenance Manuals are to be of a hardback, loose-leaf type of a durable quality, suitable for removal of obsolete pages and insertion of replacements. SELLER shall furnish BUYER with published O&M manual updates for a minimum of one (1) year after acceptance of the equipment by BUYER.

- Furnish both Preliminary and Final submittals in both written and electronic format in the number of sets and types quantified.

- "Master Copies" of the equipment O&M manuals must be supplied. These master copies must be readable and reproducible. Required highlighting and marking must not block necessary and important text.

- All copies submitted of the O&M manuals that describe multiple units must clearly indicate and show the tag number for all the information that pertains to the unit supplied in every section of the document. Special attention and marking must be given to tables and charts. Duplication and copies of all or part of manufacturers O&M manual is not acceptable.



SELLER is required to furnish all manuals in English language(s).

O&M Manuals from sub suppliers shall also be included in the final O&M Manuals.

O&M Manuals to include 1 set of final certified drawings for all equipment furnished and spare parts required for start-up, critical operations, and long -term operations.

## 5.0 SELLER'S REPRESENTATIVE FOR START-UP AND TRAINING

### Start-Up and Training

The SELLER'S representative shall be fully familiar with the Merchandise supplied pursuant to the Purchase Order and shall have practical working experience with said merchandise in the specific industry in which the merchandise is being used and the area of start-up service / training required hereunder, and shall provide proper installation supervision/inspection to ensure proper alignment, mechanical and electrical operation.

The SELLER'S or manufacturer's representative performing this service shall be a direct employee of the SELLER or equipment manufacturer, or a licensed representative of same, normally engaged in this type of service work for SELLER and shall have the authority to act on behalf of SELLER to authorize work to be done at SELLER'S expense.

• The SELLER shall identify the proposed field representative and provide credentials detailing the technical competence and qualifications of the start-up and training representative(s) at least two weeks prior to the suppliers' start-up representative arriving at the project site or sooner if requested by BUYER.

The services of the SELLER'S or manufacturer's field representative shall be provided to train the Owner's personnel in the proper operation of the equipment. These services shall consist of classroom and/or hands-on training. These services shall also include but not be limited to maintenance, lubrication, and trouble-shooting. The guideline for training shall be the approved O& M manual. These services shall be incorporated into the startup service trip and shall be provided as requested by BUYER' or BUYER'S field representative, commencing at the end of the equipment start-up.

• A signed copy of the field report detailing the names of the staff trained and the procedures and instruction provided must be provided each day and must contain a signed, witnessed acceptance of the BUYER'S representative.

Quote hourly rates for services of a qualified representative. Such hourly rates shall exclude travel and living expenses, which SELLER or manufacturer shall invoice separately at cost.

Straight time rate shall apply to all time worked by such SELLER'S or manufacturer's representative during a normal 8-hour day, herein defined as any consecutive 8-hour day shift period on Mondays through Fridays (holidays excepted), with an allowance for lunch time without pay. Overtime rates (one and a half times the straight time rate) shall apply to all hours worked in excess of 8 hours on weekdays and all time worked on Saturdays, Sundays, or holidays.

Quoted rates shall include all small expendable tools normally carried by such a representative.

When SELLER is requested to furnish services of a SELLER'S representative, SELLER is responsible for any and all damage to SELLER'S supplied equipment caused, directly or indirectly, by the actions of the Seller's representative for start-up services.

### Travel and Living Expenses

BUYER will reimburse SELLER for the reasonable cost of lodging and meals of the SELLER'S representative while he remains available for work at the Site and any such expenses incurred while traveling between Seller's headquarters and the Site. Air or rail travel expenses will only be reimbursable at the coach, tourist or economy class rates. Rental automobiles shall be compacts.

## 6.0 GUARANTEES

### Warranty

SELLER warrants that Goods and Services supplied will conform with the specifications, drawings, and other description supplied or adopted by BUYER and the representations of the SELLER and will be fit and sufficient for the purpose for which they were intended, of new and not used material, design, and workmanship and free from any other defects whatsoever. In addition, SELLER shall be responsible for and make good any defects in the workmanship or goods which are discovered for a period of twelve (12) months from the date of successful start-up and acceptance or placement of the goods into full commercial operation. Warranties and guarantees by the suppliers of various components in lieu of a single source responsibility by the equipment manufacturer shall not be accepted. The equipment manufacturer shall be solely responsible for equipment warranty and related components.

SELLER agrees that in the event any nonconformity with this warranty is discovered, not withstanding industry or business practices and in addition to other remedies, BUYER has the option, at it's discretion to: A) reject the materials and return, at SELLER'S expense, the materials to be replaced by SELLER on demand; B) correct or modify the materials as required, the cost of such corrections or modifications being for SELLER'S account and not impacting any remaining warranty in any way; or C) allow SELLER to enter onto the property of BUYER or of another to correct or modify the material as required at SELLER'S expense. If the materials are rejected, the cost of transportation, shipping, unpacking, examining, repacking, reshipping and the like expenses will be charged to SELLER.

Any part of the "Work" so repaired or replaced shall be further warranted for twelve (12) months from the date of repair or replacement, regardless of the expiration of the original warranty period. All warranties shall succeed to BUYER, its successors, assigns, and all persons and entities, including affiliates of BUYER, to whom the Goods may be resold or leased. SELLER agrees that this warranty shall ensure to the benefit of the BUYER and that the BUYER shall have the right to enforce the terms of this warranty.

### Performance

SELLER will be required to guarantee that all goods and services will be in full compliance with the performance, physical, and other requirements of the BUYER'S and Owner's Specifications, that they will be new, free of liens or encumbrances of any sort, fully merchantable, and fit for the purpose intended from BUYER/Owner Acceptance. NOTE: Should BUYER at any time during an applicable performance guarantee period determine that any equipment furnished by SELLER fails to meet specified performance requirements, SELLER shall be responsible, at its sole cost and expense, for replacing or modifying it to meet said requirements as directed by BUYER.

## 7.0 SPARE PARTS

SELLER to provide recommended Spare Parts Lists that must be itemized unit prices, full description, and catalog or item numbers supplied in electronic media format (Microsoft Word or Excel) and according to the three (3) categories listed:

• Consumable spare parts list for items required or recommended change out during or immediately after start-up.

• Spare parts list recommended for replacement under normal wear and tear during the warranty period that are considered to be critical to the operation of the equipment.

• Spare parts list that is annualized for normal wear and tear beyond the warranty period.

The Spare Parts Lists must be developed in conjunction with the listed preventive and predictive maintenance procedures.

Each Spare Parts List must directly reference the specific maintenance procedure step.

Include, if any, special tools required or recommended for executing specific maintenance procedures.

Each Spare Parts List must be submitted, with SELLER's response, to the BUYER as one copy "priced" and one copy "non-priced".

Each spare part shall be identified with the required manufacture delivery time. Please indicate if spare part must be fabricated or is in stock.

Augusta Fiberglass Tank RFQ PnR.doc



## 8.0  SHIPPING INSTRUCTIONS

### Freight to Job Site

BUYER'S Transportation Policy is FOB designated BUYER'S job site location when SELLER is responsible for the selection and payment of the transporting carrier. During the period that the Goods are in possession of SELLER all risk of loss or damage to the Goods shall be in the SELLER.

Actual freight charges must be within 10% of the estimated freight at time of RFQ or revised RFQ.

Transportation conveyance must be suitable to unload by either crane (flatbed or open top) or forklift (if van, equipment must be within range at rear of van, for normal forklift blade penetration). Job sites do not have access to a unloading dock area.

### Insurance

SELLER shall make no provision for transportation insurance. Insurance charges will not be allowed or accepted unless authorized in writing by BUYER.

### Instructions

SELLER is instructed to do the following:

- Communicate with BUYER throughout drawing approval and certification, manufacture, delivery, start-up, and warranty opportunities.
- Provide shipment details at least five business days from ready-to-ship date.
- Provide BUYER'S P.O. Number on all invoices, packages, and inland Bill of Lading.
- Provide a detailed packing list on shipment that is readily accessible for JOB SITE inspection.
- BUYER to provide release authorization for equipment at SELLER'S shipping location. BUYER has the right to hold equipment at SELLER'S facility for up to 30 days without any storage-related charges or liability consequences.
- Immediately upon the day of the shipment of the equipment or system to designated job site, the SELLER shall fax a legible copy of the:
    - Signed Inland Bill of Lading with respective Pro or Tracking Number;
    - Detailed packing list of equipment shipped to the job site which identifies, shipping weight and dimensions of each specific package Packing Slip; and
    - Storage procedures

    to the BUYER'S Procurement Department (Fax 412-809-6188) as well as a copy of all 3 above items to accompany the shipment. BUYER will contact BUYER'S Construction Manager to verify what was ordered, has been delivered, and has been received with acceptance. Any non-compliance of the BUYER'S Purchase Order will be addressed and resolved with the SELLER. SELLER shall remit invoice as instructed.

**Failure to comply with instructions noted above will result in refusal at job site and delay in processing SELLER'S remittance invoice for payment.**

## 9.0  FIELD STORAGE REQUIREMENTS

SELLER to furnish and describe written storage requirements for supplied equipment to BUYER'S Procurement Department in event that equipment is stored on site prior to installation

## 10.0  BUYER'S PAYMENT AND INVOICING CONDITIONS

### Payment Conditions

Payment Terms and conditions are set forth in the Supplier RFQ Bid Documents.

Accepted delivery is defined as:

- Receipt of SELLER'S Final Certified Shop Drawings
- Receipt of SELLER'S Instrument Factory Calibration Sheets
- Receipt of SELLER'S Equipment factory Calibration Sheets
- Free of shortage, loss or damage
- Complete, unless BUYER authorizes partial shipment
- Receipt of required O&M Manuals
- Proper marking and tagging, as defined herein under Equipment Preparation Section
- Equipment or System specified in BUYER'S P.O. was delivered according to Project Schedule

All payment and discount periods will be calculated from the time of

- Job site accepted delivery
- Complete and accurate invoices
- All required documentation received
- If new, SELLER, invoices must include the completed W-9 Form Request for Taxpayer Identification Number and certificate, when submitting remittance invoice.

### Invoicing Condition

Invoices must reflect the following:

- BUYER'S Full Name and Address
- BUYER'S Purchase Order (P.O.) Number
- Reflect brief description of what was covered with associated line item entry of the Purchase Order and priced separately
- Must show freight, taxes, and if applicable duties as separate line items
- Invoices must be sent in triplicate to BUYER'S Accounts Payable Department



## 11.0 SELLER'S PROJECT SCHEDULE REQUIREMENTS

SELLER shall furnish to BUYER no later than 5 business days from Purchase Order acknowledged date, a complete schedule forecasting the following:

• Engineering schedules (i.e. drawing submittal, data, O&M manuals, Space Parts)

• Manufacturing schedules (i.e. material acquisition, manufacturing/fabrication detailing dates to start machining, assembly, testing, cleaning, and/or painting)

• Shop test and shop inspection schedules (include time for quality verification by BUYER or their agent if BUYER elects to source inspect)

• Final preparation and delivery to designated project job site

If requested after placing your order for major components, SELLER shall provide 2 non-priced copies of purchase orders showing sub-supplier name, shipping point, order number and promised shipping dates to BUYER'S Procurement department.

All of the above paragraphs of this Section shall be incorporated into SELLER'S Purchase Orders to their sub-suppliers in order to ensure compliance with these requirements by their sub-suppliers.

## 12.0 BUYER'S DELIVERABLES SCHEDULE

SELLER to provide to BUYER'S Procurement Department's assigned purchasing agent the following deliverables as scheduled per line item entry on Buyer's issued and accepted Purchase Order:

| DELIVERABLES | SECTION APPLICABLE |
|---|---|
| Purchase Order, signed Acknowledgment Copy | |
| Certified Shop Drawing Submittals | 1 |
| Seller's Quality Assurance & Quality Control Plan | 2 |
| Shop Test and Inspection Schedules and Reports | 2 |
| Equipment Preparation for Shipment | 3 |
| Written Packaging Specifications | 3 |
| Hazardous Materials Information | 3 |
| Equipment/Instrument Factory Calibration Certification Sheets | 3 |
| Estimated Shipping Dimensions and Weights | 3 |
| Seller's Instructions for unloading Supplied Equipment | 3 |
| Preliminary Installation, Operation, and Maintenance Manuals | 4 |
| Spare Parts List | 7 |
| Material and Equipment Delivery Documentation to include the following: | 8 |
|    - Inland Bill of Lading | |
|    - Pro Number | |
|    - Packing List | |
| Seller's Written Job Site Storage Instructions | 9 |
| Final Certified Drawings for Construction | 1 |
| Warranty Information | 6 |
| Final Installation, Operation, and Maintenance Manuals including: | 4 |
|    - Preventative/Predictive Maintenance Requirements and Schedules | |
| Start-Up Scheduling | 5 |
| Training Scheduling | 5 |
| Field Acceptance Report | 5 |
| Seller's Project Schedule | 11 |
| Remittance Invoice | 10 |



# EQUIPMENT TECHNICAL SPECIFICATION
# ISSUED FOR BID

## Month Day, Year

**SPECIFICATION NUMBER:**

**CLIENT NAME:**

**PROJECT LOCATION:**

**PROJECT TITLE:**

**EQUIPMENT NAME:**

**EQUIPMENT TAG:**



## EQUIPMENT TECHNICAL SPECIFICATION

**SPECIFICATION NUMBER:**    7041-01-008/012
**CLIENT NAME:**
**PROJECT LOCATION:**    Montgomery, AL

**PROJECT TITLE:**
**EQUIPMENT NAME:**
**EQUIPMENT TAG:**


**1.0  SCOPE OF WORK:**

**2.0  PERFORMANCE CRITERIA:**

**3.0  EQUIPMENT SPECIFICATION:**

**4.0  DATASHEET:**

# Exhibit B



Airside Business Park
260 Airside Drive
Moon Township, PA 15108-2793
Phone 412-809-6000
FAX 412-809-6188

| PURCHASE ORDER NUMBER | REVISION | PAGE |
|---|---|---|
| 7041-01-013 | 0 | 1 |

This Purchase Order Number must appear on all order acknowledgements, packing lists, cartons, and correspondence.

VENDOR:

AUGUSTA FIBERGLASS
HIGHWAY 3 SOUTH
RTE 2 BOX 138
BLACKVILLE, SC 29817
United States

SHIP TO: PLEASE CALL USFILTER FOR
SHIPPING INSTRUCTIONS
412-809-6000
United States

BILL TO: Accounts Payable Dept.
USF Enginering and Construction
Airside Business Park
260 Airside Drive
Moon Township, PA. 15108

| CUSTOMER ACCT NO | VENDOR NO | DATE OF ORDER/BUYER | | REVISED DATE/BUYER |
|---|---|---|---|---|
| 1000081 | 1000081 | 29-AUG-03    ROTH, P. | | |
| PAYMENT TERMS | | SHIP VIA | | F.O.B. |
| NET 90 | | | | SHIPPING POINT |
| FREIGHT TERMS | | REQUESTOR/DELIVERY | | CONFIRM TO/TELEPHONE |
| Prepaid | | Many | | QUEBE, C.   (803) 284-2246 |

Gerald Meggs 803-284-2246 phone, 803-284-2309 fax
Bob Wittebort 724-927-9381 phone, 724-927-2646 fax

Please acknowledge receipt of this order by signing and returning one
copy within seven days.

This order is in accordance with USFilter Specification 7041-01-008 and
all documents included in our RFQ and August Fiberglass Proposal
#7790(307-036)GM.

Please contact Karen Kubera at 412-809-6184 for delivery instructions 72
hours prior to shipment. Packing lists and bills of lading including
weights and dimensions must be faxed to 412-809-6188 prior to shipment.
Unscheduled deliveries may be refused at shipper's expense. All
correspondence including order acknowledgements, document transmittals,
shipping papers and invoices must reference USFilter PO 7041-01-013.

Please prepay freight charges and add to your material invoice including
copies of all freight bills. Freight has been estimated at $1,300.00 for
this order. USFilter will reimburse up to 110% of that estimate with
proper supporting documentation.

Payment Terms:
  90% upon delivery at job site
  10% upon start-up not to exceed 180 days from shipment.
Payable Net 45 days from receipt of invoice.

The equipment purchased on this order is exempt from Alabama State Sales
Tax as it will be resold to a third party. The Alabama Department of
Revenue will accept USFilter's Pennsylvania Resale Certificate as this is

a drop ship arrangement.

ACKNOWLEDGEMENT


**USFilter**

Airside Business Park
250 Airside Drive
Moon Township, PA 15108-2793
Phone 412-809-6000
FAX  412-809-8188

| PURCHASE ORDER NUMBER | REVISION | PAGE |
|---|---|---|
| 7041-01-013 | 0 | 2 |

The Purchase Order Number must appear on all invoices, acknowledgements, packing lists, cartons, and correspondence.

SHIP TO: PLEASE CALL USFILTER FOR
SHIPPING INSTRUCTIONS
412-809-6000
United States

VENDOR:

AUGUSTA FIBERGLASS
HIGHWAY 3 SOUTH
RTE 2 BOX 138
BLACKVILLE, SC 29817
United States

BILL TO: Accounts Payable Dept.
USF Enginering and Construction
Airside Business Park
250 Airside Drive
Moon Township, PA. 15108

| CUSTOMER ACCT NO: 100X003 | VENDOR NO 100001 | DATE OF ORDER/BUYER 26-AUG-03     ROTH, P | REVISED DATE/BUYER |
|---|---|---|---|
| PAYMENT TERMS NET 30 | | SHIP VIA | F.O.B SHIPPING POINT |
| FREIGHT TERMS Prepaid | | REQUESTED DELIVERY MDNY | CONFIRM TO/TELEPHONE QUESS, C    (809) 284-2145 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | HDPE 5100 GAL 102" OD x 144' STRAIGHT SHELL HEIGHT (160.5" OVERALL) FLAT BOTTOM DOME TOP W/ FLANGES AND NOZZLES TAG T-711 SODIUM HYDROXIDE TANK | 07-OCT-03 4-5wk ARAD am | 1.00 | EACH | 5100 | 5,100.00 | |
| | SHIP TO: Address at top of page | | | | | | |
| 2 | 5100 GAL HDPE TANK 102" OD X 144' STRAIGHT SHELL HEIGHT (160.5" OVERALL) FLAT BOTTOM, DOME TOP TAG T-713 SULFURIC ACID TANK | 07-OCT-03 4-5wk ARAD am | 1.00 | EACH | 7125 | 7,125.00 | N |
| | SHIP TO: Address at top of page | | | | | | |
| 3 | FREIGHT TO DELIVER TO MONTGOMERY, AL | 07-OCT-03 4-5wk ARAD am | 1.00 | EACH | 1300 | 1,300.00 | N |
| | SHIP TO: Address at top of page | | | | | | |
| 4 | LOT OF SUBMITTAL DOCUMENTATION AS REQUIRED IN THE ATTACHED VENDOR DATA REQUIREMENTS DOCUMENT | 04-SEP-03 12 am | 1.00 | EACH | 0 | 0.00 | N |
| | SHIP TO: AIRSIDE BUSINESS PARK 250 AIRSIDE DR MOON TOWNSHIP, PA 15108 United States DELIVER TO: ROTH, Mr. PAUL  J (1.00) | | | | | | |

| | TOTAL | 13,525.00 |
|---|---|---|

NOTES: NO ORDER IS TO BE SHIPPED UNLESS AUTHORIZED FOR RELEASE BY BUYER
1. Material Safety Data Sheets: One copy with delivery of order and one copy submitted with remittance invoice
2. This Purchase Order, along with all documents attached and incorporated herein by reference, constitutes the entire agreement between Supplier/Subcontractor and USFilter with respect to the subject matter hereof. No attempt to change the terms of this purchase order, whether by conflicting acknowledgement or otherwise, shall be binding upon USFilter unless accepted by an authorized official USFilter in writing. Completion by the date stipulated above is imperative.

Purchasing Authorized Signature

ROTH, P   Agent
Procurement/Equipment Buyer

Date Signed  8/25/03

Sellers Acceptance Signed by:

Authorized Signature/Title

Date Signed  9/5/03

ACKNOWLEDGEMENT