# EXHIBIT H

IN THE U. S. DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

CASE NUMBER: 2:06-CV-325-MEF

N.A. WATER SYSTEMS, L.L.C., as successor

by merger to USFILTER ENGINEERING &

CONSTRUCTION, INC.

    Plaintiff,

    Vs.

AUGUSTA FIBERGLASS COATINGS, INC.,

SYNDER INDUSTRIES, INC.,

    Defendants.

DEPOSITION OF DARRELL ALAN OLTMAN

S T I P U L A T I O N S

IT IS STIPULATED AND AGREED by and between the parties through their respective counsel, that the deposition of DARRELL ALAN OLTMAN may be taken before MICKEY TURNER, Commissioner and Notary Public at the law offices of Bradley, Arant, Rose & White, One

 1  Federal Place, 1819 Fifth Avenue North,

 2  Birmingham, Alabama, on the 31st day of

 3  August, 2006.

 4      IT IS FURTHER STIPULATED AND AGREED

 5  that the signature to and the reading of the

 6  deposition by the witness is waived, the

 7  deposition to have the same force and effect

 8  as if full compliance had been had with all

 9  laws and rules of Court relating to the taking

10  of depositions.

11      IT IS FURTHER STIPULATED AND AGREED

12  that it shall not be necessary for any

13  objections to be made by counsel to any

14  questions except as to form or leading

15  questions, and that counsel for the parties

16  may make objections and assign grounds at the

17  time of the trial, or at the time said

18  deposition is offered in evidence, or prior

19  thereto.

20      IT IS FURTHER STIPULATED AND AGREED

21  that the notice of filing of the deposition by

22  the Commissioner is waived.

23

Page 64

```
10:17:16   1  system, to produce?
10:17:16   2  A.    Yes, he did.
10:17:17   3  Q.    And those were produced in hard copy or
10:17:20   4  paper form?
10:17:21   5  A.    Yes, they were.
10:17:22   6  Q.    Okay.  Let's go back to Exhibit 23, if
10:17:28   7  you will, please.  If you will look at the
10:17:32   8  middle of the page, the far right-hand -- the
10:17:34   9  far left-hand, can you read to me -- it
10:17:39  10  appears, and I'll just start it where I'm
10:17:42  11  talking, as SII position.
10:17:45  12  A.    Down on the fourth line, it appears to
10:17:48  13  say SII position.
10:17:53  14  Q.    Correct.  Can you read for me that line?
10:17:55  15  A.    Tank fine.  Fitting did leak.
10:18:03  16  Q.    Okay.  Thank you.  Tank fine.  So, there
10:18:08  17  was not any damage to the tank at the site, is
10:18:10  18  that correct?
10:18:11  19  A.    Not that we're aware of directly to the
10:18:13  20  tank.
10:18:13  21  Q.    You did have someone from Snyder
10:18:17  22  Industries go to the site to look at the tank,
10:18:18  23  did you not?
```

Page 65

| Time | Line | Speaker | Text |
|---|---|---|---|
| 10:18:19 | 1 | A. | They could not do anything more than put |
| 10:18:22 | 2 | | their head in the doorway, basically. They |
| 10:18:24 | 3 | | were not allowed access to the tank or allowed |
| 10:18:28 | 4 | | access to the failed component or allowed to |
| 10:18:31 | 5 | | take any pictures. |
| 10:18:32 | 6 | Q. | And who was this individual? |
| 10:18:33 | 7 | A. | Cullen Estes. |
| 10:18:34 | 8 | Q. | Is that C-U-L-L-E-N? |
| 10:18:42 | 9 | A. | C-U-L-L-E-N, yes. |
| 10:18:42 | 10 | Q. | So, when Mr. Estes went to the site -- |
| 10:18:45 | 11 | | when did he go to the site? |
| 10:18:48 | 12 | A. | I've got a document that probably says |
| 10:18:54 | 13 | | here for you. |
| 10:18:56 | 14 | | MS. POWELL: Just answer. |
| 10:18:59 | 15 | | MR. LEE: Just answer the |
| 10:19:00 | 16 | | question. |
| 10:19:00 | 17 | A. | I don't know the exact date. |
| 10:19:02 | 18 | | MR. ROGERS: Does he have a |
| 10:19:03 | 19 | | document? |
| 10:19:03 | 20 | Q. | Do you have a document with you that |
| 10:19:05 | 21 | | would help you determine that date? |
| 10:19:07 | 22 | A. | I think there's a document that has been |
| 10:19:09 | 23 | | produced to you that would show that date. |

Page 66

| | | |
|---|---|---|
| 10:19:12 | 1 Q. | Would that be in the production from |
| 10:19:17 | 2 | Snyder Industries to us? |
| 10:19:18 | 3 A. | That would be correct. |
| 10:19:18 | 4 Q. | Now, you started to reach for a document |
| 10:19:21 | 5 | that you brought into the deposition with you, |
| 10:19:24 | 6 | is that correct? |
| 10:19:24 | 7 A. | I started to reach for something that |
| 10:19:26 | 8 | was produced to you. |
| 10:19:27 | 9 Q. | So, if it has been produced in this |
| 10:19:30 | 10 | litigation, I don't see any reason why you |
| 10:19:32 | 11 | can't look at it and tell me what it was, the |
| 10:19:35 | 12 | answer to my question. |
| 10:19:36 | 13 | MS. POWELL: Then, give us -- if |
| 10:19:37 | 14 | you have the documents that have been |
| 10:19:39 | 15 | produced, we will look through them and give |
| 10:19:42 | 16 | it to you. |
| 10:19:44 | 17 | THE WITNESS: Right. |
| 10:19:44 | 18 | MS. ANDREEN: He brought the |
| 10:19:45 | 19 | documents with him to the deposition. |
| 10:19:47 | 20 | MR. ROGERS: This is so absurd. |
| 10:19:49 | 21 | That man had a file folder in his hand. The |
| 10:19:52 | 22 | lawyer reached over and told him not to look |
| 10:19:53 | 23 | at it. |

```
10:19:54   1                    MR. LEE:  That's exactly right.
10:19:57   2                    MR. ROGERS:  Well, the document
10:19:57   3   is in the room.  Let's go ahead and have him
10:19:59   4   look at it.  We're not going to have him paw
10:20:01   5   through the document production.  You've
10:20:03   6   already done that with him this morning
10:20:05   7   outside of our presence.
10:20:07   8                    MR. LEE:  If you've got a
10:20:08   9   document you want to show him, that's fine.
10:20:10  10                    MR. ROGERS:  We want everything
10:20:11  11   in his briefcase, then.
10:20:13  12                    MR. LEE:  Well, you're not going
10:20:15  13   to get it.  You're not going to get it.
10:20:16  14                    MS. ANDREEN:  He bought it to
10:20:18  15   the deposition.  This is a 30(b)(6) and a
10:20:22  16   30(b)(5) to bring documents in his possession
10:20:25  17   to this deposition.
10:20:25  18                    MR. LEE:  You've already
10:20:26  19   questioned him about whether he had any
10:20:26  20   documents to be produced and they've already
10:20:30  21   been produced.
10:20:31  22   Q.   Can you answer the question, my original
10:20:33  23   question, when was Cullen Estes at the site?
```

| | | | |
|---|---|---|---|
| 10:20:39 | 1 | A. | I do not know the exact date. |
| 10:20:41 | 2 | Q. | Do you know the approximate date? |
| 10:20:43 | 3 | A. | I know it was in late 2003. |
| 10:20:45 | 4 | Q. | Late 2003? |
| 10:20:48 | 5 | | MR. ROGERS: Before the spill? |
| 10:20:50 | 6 | A. | No, after the spill. |
| 10:20:51 | 7 | Q. | What was the date of the spill? |
| 10:20:53 | 8 | A. | It was in 2003. |
| 10:20:55 | 9 | Q. | The tank was manufactured when? |
| 10:20:56 | 10 | A. | Maybe I'm confused. |
| 10:21:01 | 11 | Q. | Take your time. |
| 10:21:05 | 12 | A. | I would suggest looking back on your |
| 10:21:08 | 13 | | documents that have been produced. |
| 10:21:10 | 14 | Q. | You have been designated as the 30(b)(6) |
| 10:21:19 | 15 | | representative with knowledge to answer the |
| 10:21:21 | 16 | | questions related to the topics set forth in |
| 10:21:26 | 17 | | the notice that we looked at, which was marked |
| 10:21:29 | 18 | | as, I believe, Exhibit 21 -- |
| 10:21:29 | 19 | | MR. ROGERS: 22. |
| 10:21:32 | 20 | Q. | -- 22, excuse me. |
| 10:21:33 | 21 | A. | And I do not recall the exact dates. |
| 10:21:36 | 22 | Q. | Okay. We'll come back to this. |
| 10:21:45 | 23 | | This document is dated what, the |

```
10:21:45   1  document Exhibit 23?
10:21:47   2  A.    Exhibit 23 is dated 10-15-04.
10:21:52   3  Q.    I want to go back to your statement that
10:22:07   4  you made.
10:22:07   5              MS. ANDREEN:  And, Mickey, could
10:22:08   6  you read back his response regarding the
10:22:12   7  investigation at the site?  He was discussing
10:22:17   8  what Mr. Cullen Estes was able to do at the
10:22:21   9  site.  Would you please read that back?
10:22:53  10
10:22:53  11        (Whereupon, the desired portion of
10:22:53  12           the proceeding was read back.)
10:22:54  13
10:22:54  14  Q.    Okay.  Stick his head in the door.
10:22:58  15  A.    To the room.
10:23:00  16  Q.    To the room.  So, it is Snyder
10:23:06  17  Industries' position that they sent a
10:23:07  18  representative to the spill site and he was
10:23:08  19  not allowed to walk in the building where the
10:23:11  20  tanks were?
10:23:12  21  A.    There was still sulfuric acid in the
10:23:15  22  building.
10:23:16  23  Q.    Approximately, then, how close to the
```

Page 70

```
10:23:18   1  tank could he get?
10:23:20   2  A.     I do not know.
10:23:21   3  Q.     Is it your testimony you cannot identify
10:23:29   4  the handwriting on Exhibit 23?
10:23:31   5  A.     Not conclusively.
10:23:34   6  Q.     Whose handwriting do you think it is?
10:23:41   7  A.     It would be speculation for me to say.
10:23:45   8  Q.     Whose handwriting do you believe, in
10:23:47   9  your best judgment, that this is?
10:23:49  10  A.     It is possible that this handwriting is
10:24:02  11  Steve Hansen's.
10:24:03  12  Q.     And Steve Hansen was the individual you
10:24:09  13  mentioned earlier?
10:24:10  14  A.     Correct.
10:24:11  15  Q.     And his title again?
10:24:12  16  A.     Director of Human Resources.
10:24:15  17  Q.     The fifth line states, as you read
10:24:23  18  previously, "Fitting did leak". And this is
10:24:27  19  under SII's position. So, is it the position
10:24:31  20  of Snyder Industries that their fitting did
10:24:36  21  leak?
10:24:37  22  A.     That's what was recorded by N.A. Water.
10:24:41  23  Q.     Is that the position of Snyder
```

```
10:24:45   1  Industries?
10:24:45   2  A.     After information was provided, the
10:24:48   3  actual fitting on the tank that was installed
10:24:51   4  on the tank, did not leak.  What leaked was
10:24:55   5  the accessory that was installed to that
10:24:59   6  fitting.
10:25:00   7  Q.     Was that a Snyder Industries accessory?
10:25:03   8  A.     Yes, that is a Snyder Industries
10:25:06   9  accessory.
10:25:07  10  Q.     And did that Snyder Industries accessory
10:25:11  11  leak?
10:25:11  12  A.     The flange on that particular accessory
10:25:16  13  came off.
10:25:17  14  Q.     And that flange was installed by who?
10:25:24  15  A.     By Snyder Industries.
10:25:27  16  Q.     Back to your comment regarding Cullen
10:25:47  17  Estes' visit to the site where he was only --
10:25:53  18  and I'm paraphrasing -- allowed to stick his
10:25:57  19  head in the door, how do you know that?
10:26:00  20  A.     That is what was communicated.
10:26:02  21  Q.     Communicated to who?
10:26:04  22  A.     By Cullen Estes.
10:26:06  23  Q.     To who?
```

Page 72

| | | | |
|---|---|---|---|
| 10:26:07 | 1 | A. | To me. |
| 10:26:08 | 2 | Q. | He told you that? |
| 10:26:08 | 3 | A. | Yes. |
| 10:26:09 | 4 | Q. | Did he tell you this in an e-mail? |
| 10:26:11 | 5 | A. | No. It's, I believe, in a document that |
| 10:26:13 | 6 | | was produced to you. |
| 10:26:14 | 7 | Q. | You believe the document was produced to |
| 10:26:19 | 8 | | me that Cullen was only allowed to stick his |
| 10:26:22 | 9 | | head in the door? |
| 10:26:23 | 10 | A. | That he was given limited access. |
| 10:26:26 | 11 | Q. | Well, now that's a little bit different. |
| 10:26:30 | 12 | | Limited access versus sticking one's head in |
| 10:26:34 | 13 | | the door, which was it? Was he given limited |
| 10:26:37 | 14 | | access or was he only allowed to stick his |
| 10:26:39 | 15 | | head in the door? |
| 10:26:41 | 16 | A. | I think they're the same. |
| 10:26:43 | 17 | Q. | You got this report from Cullen. Did |
| 10:26:47 | 18 | | you speak to him directly, verbally? |
| 10:26:56 | 19 | A. | I have had direct conversations with |
| 10:26:58 | 20 | | Cullen. |
| 10:26:59 | 21 | Q. | At the time that Cullen was at the site? |
| 10:27:01 | 22 | A. | After he came back from the site. |
| 10:27:03 | 23 | Q. | Were these in-person conversations? |

```
10:33:40   1                    MR. ROGERS:  He said he doesn't
10:33:41   2   know.
10:33:42   3                    MR. LEE:  Mabry, let's don't
10:33:44   4   play games.  Move on.
10:33:46   5                    MR. ROGERS:  The game is being
10:33:49   6   played by a lawyer.  The man has got the
10:33:52   7   document eighteen inches from his left hand at
10:33:54   8   this moment.
10:33:55   9                    MR. LEE:  You do to.  You do to.
10:33:56  10                    MR. ROGERS:  I don't.
10:33:56  11                    MR. LEE:  You do.
10:33:57  12                    MR. ROGERS:  We didn't bring any
10:33:57  13   documents.
10:33:57  14                    MR. LEE:  They've been produced
10:33:58  15   to you.
10:33:58  16                    MS. POWELL:  There are documents
10:33:59  17   in there that say when Cullen went to the
10:34:02  18   plant.
10:34:03  19                    MR. LEE:  There's no mystery.
10:34:05  20                    MR. ROGERS:  Excuse me.  I'm
10:34:06  21   just going to make this one statement.
10:34:08  22   Eighteen inches from his hand, is the
10:34:10  23   document.  He had it up on the table, your
```

```
10:34:13   1  lawyer reached and pushed his hand away and
10:34:16   2  made him put it back.  That's the game being
10:34:19   3  played here.  There's not any other game.  We
10:34:22   4  simply would like to have a date so we can
10:34:23   5  move on.
10:34:25   6              MR. LEE:  Do you know the date?
10:34:27   7              MR. ROGERS:  I don't know the
10:34:28   8  date.
10:34:29   9              MR. LEE:  Well, then, you
10:34:29  10  haven't reviewed your file.
10:34:32  11              MR. ROGERS:  Excuse me.  Don't
10:34:33  12  make one conclusion about me ever again in my
10:34:36  13  presence.  That is unprofessional.  It
10:34:37  14  actually is a professional insult that
10:34:39  15  violates the rules of professional
10:34:42  16  responsibility to state that in front of a lay
10:34:44  17  person.  I have reviewed this file.
10:34:44  18              MR. LEE:  Then, you should know.
10:34:46  19  You just don't remember, like Mr. Oltman.
10:34:49  20              MR. ROGERS:  Mr. Lee, you make
10:34:51  21  one more statement about me and I will take
10:34:53  22  you to the bar over your insults to my
10:34:56  23  professional integrity.  You do not make one
```

Page 292

```
16:14:53   1  the defense costs in this matter?
16:14:56   2  A.     I do not know that, either.
16:14:58   3  Q.     Does Snyder Industries know if there is
16:15:02   4  any dispute over coverage with the insurance
16:15:07   5  carrier on this matter?
16:15:08   6             MS. POWELL:  I object.  I don't
16:15:10   7  understand the relevance.  What is the
16:15:11   8  relevance of any of this?
16:15:13   9             MS. ANDREEN:  The relevance is,
16:15:14  10  under the Federal Rules of Civil Procedure,
16:15:17  11  Snyder Industries is obligated to let the
16:15:19  12  parties know if there is any insurance
16:15:22  13  available in this litigation and they have not
16:15:25  14  done so, yet there is correspondence with
16:15:28  15  insurance carriers.  And, furthermore, we just
16:15:31  16  received a letter from counsel saying they are
16:15:35  17  withholding privileged documents with an
16:15:37  18  insurance carrier.
16:15:39  19             MS. POWELL:  Show me the portion
16:15:40  20  of the federal rules that you're talking
16:15:42  21  about.
16:15:44  22             MS. ANDREEN:  Ma'am, I don't
16:15:46  23  have a copy of the federal rules in here.
```

```
16:19:29   1              MS. ANDREEN:  Back on the
16:19:31   2  record.
16:19:31   3  Q.    Mr. Oltman, you stated that you do not
16:19:33   4  have any knowledge, other than there may be an
16:19:36   5  insurance policy for Snyder Industries.  Who
16:19:38   6  in your organization would better be -- would
16:19:41   7  have more knowledge as to the insurance
16:19:44   8  maintained by Snyder Industries?
16:19:46   9  A.    That would be Steve Hansen.
16:19:50  10  Q.    So, Steve Hansen would be able to
16:20:11  11  discuss, as requested in the 30(b)(5) and
16:20:15  12  30(b)(6) notice, documents which were
16:20:18  13  requested below, which happen to say Item
16:20:22  14  Number 3 -- this is Exhibit Number 22 -- all
16:20:25  15  documents by and between Snyder and its
16:20:31  16  insurance carrier related to the incident made
16:20:32  17  the basis of this litigation?
16:20:33  18  A.    Yes.
16:20:33  19  Q.    You are here today as the 30(b)(6)
16:20:36  20  representative, but you are not prepared to
16:20:38  21  testify as to that topic?
16:20:40  22  A.    No.
16:20:40  23             MS. POWELL:  And we asserted
```