**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISIONS**

| | | |
|---|---|---|
| **N.A. WATER SYSTEMS, LLC, as** | ) | |
| **successor by merger to USFILTER** | ) | |
| **ENGINEERING & CONSTRUCTION,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:  2:06-CV-335-MEF** |
| | ) | |
| **AUGUSTA FIBERGLASS COATINGS,** | ) | |
| **INC., SNYDER INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S SEPTEMBER 11, 2006,**
**MOTION TO COMPEL SNYDER TO PRODUCE DOCUMENTS**

Plaintiff filed suit in Montgomery County (AL) Circuit Court on March 2, 2006.  The Defendants timely removed the case to this Court.  Jurisdiction and venue are proper.

Plaintiff seeks damages for the catastrophic failure of a sulfuric acid tank on or about September 14, 2004.  The tank was fabricated by Snyder Industries, Inc. ("Snyder"), under a purchase order issued by Augusta Fiberglass Coatings, Inc. ("AFC"), and the tank's nameplate shows AFC as the fabricator.  AFC had agreed to fabricate, test, and deliver five (5) tanks to plaintiff for plaintiff's installation at the Hyundai facility near Montgomery.  The tank at issue was designed to contain 93% sulfuric acid.  It was put in service in April 2004, and it leaked catastrophically on or about September 14, 2004 (just as Hurricane Ivan was approaching the United States), but the acid was contained in the containment dike constructed around the tank.

Snyder's Responses (August 9, 2006, Exhibit C to plaintiff's Motion) to plaintiff's RFP make no specific objection as to any item or category in the RFP.  No privilege log was produced with the August 9 response.

Discovery of fact witnesses is to conclude on October 15, 2006, and depositions have commenced. On August 22, 2006, just before it was to put a 30(b)(6) witness up for deposition, Snyder sent a letter (Exhibit D to the Motion) describing documents it had withheld, despite their relevance. After an unsuccessful meeting (by telephone) to confer about the lack of any applicable privilege, and about the waiver, Snyder amended its privilege log (Exhibit F to Motion), but did not produce any documents, leaving ten (10) documents described on the August 22 log, but not produced. Two additional redacted documents have not been on any log. (Factual statements are based on the Affidavit attached to the Motion as Exhibit J.)

Below we show that no privilege attaches and, even if it did, any privilege has been waived.

A.    NO ATTORNEYCLIENT PRIVILEGE IS CLAIMED AS TO THE LISTED DOCUMENTS.

Snyder does not claim the attorney client privilege for any of the documents on Exhibit E. It likely[1] would not be applicable, because communications with an insurance company are not subject to the attorney-client privilege in Alabama. See Rule 502 (b)(4), Ala. Rules of Evidence Advisory Committee Notes on Section (b).

B.    SNYDER'S FAILURE TO COMPLY WITH RULE 34(b) WAIVED ANY PRIVILEGE OR DOCTRINE THAT MIGHT ALLOW THE SUPRESSION OF RELEVANT EVIDENCE.

If the work product doctrine applies -- which is not conceded here -- it is not an absolute bar, and it can be waived. *United States v. Nobles*, 422 U.S. 225, 239 (1975).

Rule 34(b) requires that a Response to an RFP "state, with respect to *each item* or *category*, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated." (emphasis supplied) Snyder made general objections and incorporated them, without distinction, into each Response

---

[1] "Likely" is all that can be said, because the descriptions in Exhibits C and E are inadequate to determine whether any privilege applies.

to each "item" of the RFP.  Snyder made no effort to state objections tailored to each item.  *See* Snyder's Response, Exhibit C to Motion.

General or "blanket" objections do not satisfy Rule 34(b) and its mandate that "each item" be addressed.  *Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 n.4 (N.D. Ill. 2001).  They have been called "patently improper."  *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 1998 WL 231135, at *1 (D. Kan. May 1, 1998) (Westlaw citations only are attached in the "Caselaw" after Table 1).

Snyder has therefore waived any privilege as to any withheld document or portion.

C.    SNYDER WAIVED ANY PRIVILEGE BECAUSE IT FAILED TO TIMELY FILE A PRIVILEGE LOG.

As a general rule, failure to comply with discovery requests is a waiver of objections.  *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989).

Federal Rule Civil Procedure 26(b)(5) requires a log at the time "*when* a party withholds information otherwise discoverable under these rules." (emphasis supplied)  Snyder did not serve a privilege log until well after it produced its documents on August 9.  *When* it produced the documents it neither provided the required log (26(b)(5)), nor did it state the reasons for its withholding the specific documents (Rule 34(b)).  This constitutes a waiver: "To withhold materials without [the notice required in Rule 26(b)(5)] is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protections." Fed. R. Civ. P. 26(b)(5), Advisory Committee Note (1993).

A proper privilege log would not have been particularly burdensome, if it were correct in its assertions of privilege.  Snyder listed 30 documents, a listing that is short in number but, as a percent of production, extremely large.

Because of the waiver, the Court should order all the documents (on both Exhibits D and F) produced pursuant to Rule 37(d).

D.    SNYDER WAIVED THE WORK PRODUCT DOCTRINE BECAUSE ITS LOG
DOES NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE.

Rule 26(b)(5) requires that the privilege claim be made expressly and describe the nature of the documents, communications, or things not produced or disclosed in a manner that will enable other parties to assess the applicability of the protection.  Neither of Snyder's logs allows the determination to be made.  The burden of demonstrating that documents were prepared in anticipation of litigation falls on Snyder to protect the documents from discovery.  *Freiermuth v. PPG Industries, Inc.*, 218 F.R.D. 694, 700 (N.D. Ala 2003).  "The absence of evidence inures to [Water System's] benefit, as the burden is on [Snyder] to show the material is work product." *Id.*, at 700-701.

Work product should be sparingly invoked, because it masks discoverable information.  Indeed, it is often highly relevant, distilled evidence.  As the Middle District Judges have stated, it is a "rare situation" where the doctrine may be invoked.  *"Guidelines to Civil Discovery Practice"* ("Guidelines"), ¶ 1.I.  In this case, for example, there is a report by a Snyder employee sent to view the tank and the failed component.  He interviewed employees of Water Systems, and there is a "report" about the trip.  (Exhibit J, ¶ 11)  Snyder at first stated the report had been produced.  (Exhibit J, ¶ 11)  That report not only has not been produced, but plaintiff cannot even determine if it is listed as a withheld document, by examining either of the two privilege "logs" (Exhibits D and F).  Likewise, when plaintiff attempted to broach the subject of insurance at Snyder's 30(b)(6) deposition, the witness was unable to answer, and Snyder objected to questions on the topic, even asking plaintiff's counsel for a reference where the Federal Rules of Civil Procedure call for the disclosure of insurance.  (Exhibit H)[2]

At a minimum, work product should be supported by a log that reveals what the document is and its date, the name and employer of the author (or the person filling it out), its subject, persons to whom it is addressed or to whom it was shown to be copied, persons (and employers) of others who saw the document, the purpose for its creation and transmittal, its treatment as a confidential document by all recipients at the time and since, and any other facts that might support withholding the document.  The caveat, of course, is that the log need not be

---

[2] In a letter dated September 8, 2006, Snyder promised to supplement disclosures, in reply to plaintiff's letter of September 1, 2006, Exhibit I to Motion.  It has not done so.

so detailed as to reveal protected information, but mere factual recitations are not protected. *See Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 160 (S.D.N.Y. 2004).

Notably, no attorney is listed on Exhibits D or F, so attorney mental impressions are not "any other facts" that might support Snyder's massive suppression of evidence.

Neither of Snyder's logs complies with this requirement. Moreover, Snyder has been exceedingly liberal in refusing to produce documents. It only produced 274 pages on August 9, 2006, and it withheld 26 documents (which each may have many pages), or at least 20%. (Exhibit J, ¶ 7)

Furthermore, Snyder produced two "redacted" documents, neither of which appears on either of the privilege logs. *See* Exhibit J, ¶ 5.

Despite the effort to confer and reach agreement about these documents, Snyder has not produced them. It should be ordered to produce them all, under Rule 37.

E.    SNYDER DISCLOSED AT LEAST SOME OF THE DOCUMENTS TO THIRD PARTIES.

Snyder has produced two privilege "logs" (Exhibits D and F to plaintiff's Motion), which do not completely duplicate each other. Documents 11, 12, 13, 15, 16, 17, 24, 25, 26, and 30, from the first "log" (Exhibit D) are not listed in the second "log" (Exhibit F).[3]

Of the ten (10) omitted documents, numbers 12, 13, 15, 16, 17, 24, 25, and 26 are letters to or from one or more third parties. (Items from Exhibit D only).

Of the items that appear on both logs, items 3, 4, 14, and 17 on Exhibit F (corresponding respectively to items 3, 4, 5, and 14 to Exhibit D) are to or from one or more third parties.

One item is indeterminate. Item 13 on Exhibit F (item 20 on Exhibit D) involves distribution to the "Complaint Team," and there is no description of the members of that "team." Hence, we are treating it as distributed to a third party.

---

[3] Snyder offered no reason that it omitted certain documents from its second log, nor did it explain why its order of documents in the second log is different from the order it its first log. The result is considerable confusion, which we assume is inadvertent. It has been asked to produce the 10 omitted documents, but has not done so.

Snyder has the burden of producing an adequate log. 26(b)(5), Fed. R. Civ. P.; *Mold-Masters Limited v. Husky Injection Molding Systems Ltd.*, 2001 WL 1558303 at *2 (N.D. Ill. December 6, 2001).

It is well settled that disclosure to a third party can waive any applicable privilege, because no showing as to the requisite confidentiality can be made. While "work product" "prepared in anticipation of litigation or for trial" is protected (Rule 26(b)(3)), there must be a showing by the entity claiming the privilege that it has taken steps to protect the confidentiality of the allegedly protected information. Communication to a third party, including an insurer, constitutes a waiver because it "substantially increases the opportunity for potential adversaries to obtain the information." *Behnia v. Shapiro*, 176 F.R.D. 277, 279 (N.D. Ill. 1997), absent the requisite showing of steps by all recipients to maintain confidentiality.

Here, there has been no effort by Snyder to show who the third parties are, what relationship they may have to the insured or insurer, or how each kept the documents confidential. Indeed, Snyder has yet to disclose the existence of who its insurer is, or why its insurance agent (Fridholm and Struyk) or "a third party administrator for Axis" (Rodgers) have or has any need to know about claims made to an unnamed insurance company.

Based upon the disclosure to third parties, Items A-3, -4, -5, -12, -13, -14, -15, -16, -17, -20, -24, -25, and -26 should be ordered produced immediately.

     F.     SNYDER'S LOG OMITS TWELVE (12) WITHHELD DOCUMENTS WHICH WAIVES ANY APPLICABLE PRIVILEGE AS TO THOSE TWELVE.

Snyder omitted ten (10) documents from its second log (see Section E), and has never listed two redactions on any log. (Exhibit J, Exhs. 1 and 2). These have not been produced, despite the waiver.

Snyder has waived, on yet further grounds, any privilege as to those twelve (12) documents.

G.    ALL 32 DOCUMENTS SHOULD BE PRODUCED.

The documents are not subject to the work product doctrine.  Plaintiff produces a table below of the 32 withheld documents to show the reasons each must be produced.  (**Table 1,** attached)

The numbered reasons at the right of Table 1 correspond to these reasons for production:

1.    Waiver for failure to comply with 34(b) in Response to RFP (Section B above);

2.    Waiver for failure to comply with timeliness requirement of 26(b)(5) (Section C above);

3.    No description on current log (Section F above)

4.    Third party distribution or no showing as to why the third party is entitled to review evidence withheld from plaintiff.  (Section E above)

5.    No statement as to confidentiality, steps taken to protect it, or about distribution by third parties or others since creation of the document. (Section E above)

6.    No statement of purposes for creation of document or its transmission to others; no showing litigation was anticipated.  (Section D above)

7.    No description of name, address, job title, and employer of one or more recipients or of why a person was included on distribution.  (Section D above)

8.    No subject of document or no description of document.  (Section D above)

9.    Factual statements are not subject to withholding; no attorney mental impression.  (Section D above)

H.    <u>SNYDER IDENTIFIED NUMEROUS DOCUMENTS DURING ITS 30(b)(6)
DEPOSITION THAT IT HAS NOT PRODUCED.</u>

During its 30(b)(6) deposition, Snyder identified numerous relevant documents as
existing, which it has not yet produced.  *See*, Exhibit J, ¶ 9.

Each document was requested in the plaintiff's RFP.

On September 1, 2006, plaintiff wrote Snyder's counsel to complete Snyder's document
production.  (Exhibit I)  The items are as follows, followed by a list of Requests from plaintiff's
RFP (Exhibit A) which apply:

(1)    **ITEM NOT PRODUCED:**  The report or notes made by Snyder's
employee (his name is Cullen Estes) on or about September 20, 2004, about his investigation of
the incident and the tank that leaked;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 2, 3, 6, 7, and 8.

(2)    **ITEM NOT PRODUCED:**  The transmittal sheet (or email) by Snyder
sending the results of the shop test by Snyder of the tank at issue to Augusta Fiberglass, Core-B
or any other entity or individual;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 4, 5, 6, 7, 11, 15,
and 17.

(3)    **ITEM NOT PRODUCED:**  Mr. Oltman's copy of the document marked
as Exhibit 33 to his deposition;

**REQUEST FOR PRODUCTION (Exhibit A):**  *passim*, including the
definition, which indicates that "documents" includes all copies of a document.

(4)    **ITEM NOT PRODUCED:**  The MRP information related to the failed
tank and any of its component parts;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 6, 11, 15, 16, and
17.

(5)    **ITEM NOT PRODUCED:**  All other electronic information stored in Snyder's tracking system regarding the failed tank and any of its component parts;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 6, 11, 15, 16, and 17.

(6)    **ITEM NOT PRODUCED:**  Mr. Oltman's copy of the CED report;

**REQUEST FOR PRODUCTION (Exhibit 4):**  Request Items 3 and 8.

(7)    **ITEM NOT PRODUCED:**  The Snyder-AFC distributorship agreement in effect in 2003 and in 2004 (while it was not directly described by name, any other parts or amendments to the agreement, such as, for example only, the agreement, if any, for Snyder to affix AFC's nameplate to tanks fabricated by Snyder);

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 10 and 14.

(8)    **ITEM NOT PRODUCED:**  Mr. Oltman's written (electronic or paper) documents regarding his study and determinations regarding the glue used on the Snyder-fabricated flange adapter;

**REQUEST FOR PRODUCTION (Exhibit 4):**  Request Items 3, 7, 11, and 17,

(9)    **ITEM NOT PRODUCED:**  All Snyder drawings regarding the failed tank or any of its components, including but not limited to prior versions of any and all final drawings;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 6 and 11.

(10)    **ITEM NOT PRODUCED:**  All Snyder insurance policies applicable or possibly applicable to the incident;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 1 and 6; Fed R. Civ. P. 26(a)(1)(D).

(11)    **ITEM NOT PRODUCED:**  Snyder's internal hydrotest procedure;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Item 14.

(12)    **ITEM NOT PRODUCED:**  Snyder's Inspection Guidelines as referenced by Mr. Russ McDonald;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Item 15.

(13)    **ITEM NOT PRODUCED:**  Shop Packet for the failed tank and any of its component parts;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 15 and 17.

(14)    **ITEM NOT PRODUCED:**  Bill of Material for the failed tank, listed as Item 8210-45 on Exhibit 25 to Mr. Oltman's deposition;

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 11, 15, 16, 17 and 18.

(15)    **ITEM NOT PRODUCED:**  Final Inspection Criteria for the failed tank, and any of its component parts.

**REQUEST FOR PRODUCTION (Exhibit A):**  Request Items 11, 15, 16, 17 and 18.

Snyder should be ordered immediately to produce the documents.

I.    <u>CONCLUSION.</u>

The Middle District requires that the existence of protected documents be pointed out. *Guidelines,* Section III. B. 3:  "Simple honesty requires that the existence of a requested but protected document be pointed out, not simply ignored."  Rule 26(b)(5) establishes the latest timing for and the details of compliance with this duty as the time of production of the documents, with a detailed log.[4]  Rule 34(b) requires specific objections in the Response to a

---

[4] Rule 34(b) may require the log within the time allowed for making objections to an RFP (30 days or 33 for service by mail).  We believe the 11th Circuit has not ruled as to whether the log must be produced within the time required for the Rule 34(b) Response.  *See Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.,* 230 F.R.D. 688, 695 (M.D. FL 2005).  We reserve that argument, but Snyder did not produce a log upon either

Request for Production. Having failed to comply with these rules, Snyder has waived any protection the documents might otherwise have had.

Moreover, the documents are not subject to the work product doctrine.

Snyder should be ordered to produce all 32 of the documents withheld, along with its insurance policy (policies).

It should also be ordered to produce the documents it disclosed during its 30(b)(6) deposition, and required to bring a deponent to Birmingham to complete that deposition, once all documents are disclosed.

The matter is of considerable urgency: factual discovery ends on October 15.

Respectfully submitted,

_____
Attorney for N.A. Water Systems, LLC

OF COUNSEL:
BRADLEY ARANT ROSE & WHITE LLP
E. Mabry Rogers, Esq. (ROG005)
Rhonda Caviedes Andreen (CAV008)
Angela R. Rogers (RAI 017)
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

---

milestone, with its first Response (Exhibit B) or its second (Exhibit C). Hence, the Court need not reach this question of first impression in this Circuit.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL SNYDER TO PRODUCE DOCUMENTS on:

Jack Owen
Ball, Ball, Matthews & Novak, P.A.
Post Office Box 2148
Montgomery, Alabama 36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: ccowen@ball-ball.com

Dorothy A. Powell, Esq.
Parsons, Lee & Juliano, P. C.
300 Protective Center
2801 Highway 280 South
Birmingham, AL 35223-2480
Email: dpowell@pljpc.com

by electronic filing and by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing addresses, on this ____ day of September, 2006.

_____
OF COUNSEL