CASELAW

1. *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 1998 WL 231135 (D. Kan. May 1, 1998)

2. *Mold-Masters Limited v. Husky Injection Molding Systems, Ltd.*, 2001 WL 1558303 (N.D. Ill. December 6, 2001)

**1**

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Kansas.
COTRACOM COMMODITY TRADING CO.,
Bendel Feed and Flour Mill, Ltd., Plaintiffs,
v.
SEABOARD CORPORATION, Seaboard Trading & Shipping, Ltd., Sasco Engineering Co., Defendants.
**No. CIV. A. 97-2391-GTV.**

May 6, 1998.

Stephen M Sacks, John C Massaro, Arnold & Porter, Washington, DC, Patrick J. Stueve, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas City, MO, Roger D. Stanton, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, for Cotracom Commodity Trading AG, Bendel Feed and Flour Mill, Ltd., plaintiffs.
J. Eugene Balloun, William R. Sampson, Paul W. Rebein, Shook, Hardy & Bacon L.L.P., Overland Park, for Seaboard Corporation, Seaboard Trading & Shipping, Ltd., Sasco Engineering Co, Seaboard Sales Corp., a foreign Corporation, defendants.

MEMORANDUM AND ORDER

RUSHFELT, Magistrate J.
*1 The court has before it Defendants' Motion to Compel Discovery from Plaintiffs (doc. 27) and Plaintiffs' Motion to Compel Discovery (doc. 31). They address alleged failures to respond adequately with interrogatories and requests for production. The motion of plaintiffs asks for sanctions and expenses, as well as further responses to discovery.

The motion of defendants asks the court to compel plaintiffs to respond further to ten interrogatories and twenty-six requests for production. The court sustains the motion as to Interrogatory No. 1. For reasons stated in this order the court does not find that the reference by plaintiffs to their "General Objections" preserves any objection against the interrogatory. The court cannot find that plaintiffs have otherwise responded with any of the information it requests.

Plaintiffs objected to Interrogatories Nos. 2 through 5. In response to No. 2 they asserted, "See Plaintiffs' General Statement and General Objections." In response to Nos. 3, 4, and 5, they further directed, "See Response to Interrogatory 2." After conceding they would produce "all non-privileged documents which refer or relate to the transactions/contracts involved in this litigation," plaintiffs then unfolded twelve paragraphs of "General Objections." These twelve paragraphs purport to state separate objections "to the extent" the interrogatories seek various things: anything protected by any "applicable privilege, protection, or immunity;" "a motion for more definite statement;" "an itemized listing of documents;" something "unnecessarily duplicative and therefore unduly burdensome and expensive to the extent they seek information contained in documents already provided or to be provided;" anything requiring "Plaintiffs to analyze documents in the files of Defendants and/or to be produced by Defendants;" "information as easily ascertainable by Defendants as by Plaintiffs from the documents produced and to be produced;" "information unrelated to the litigation;" whatever may "impose requirements in addition to or in conflict with...Federal Rules of Civil Procedure;" "trade secret or proprietary information;" whatever may " impose obligations on plaintiffs' beyond those required" in the rules; "financial worth discovery prior to having obtained any judgment or verdict."

The court finds these General Objections worthless for anything beyond delay of the discovery. Plaintiffs might just as well have said they object upon every possible ground which the law may provide, so long as it may conceivably apply to an interrogatory. These ostensible objections say nothing of consequence. They do not constitute objections. Plaintiffs have made no meaningful effort to show the application of any such theoretical objection to any interrogatory. They have simply stated them as hypothetical or contingent possibilities. Neither the court nor anyone else could reasonably determine beyond speculation what objection, if any, plaintiffs intend to assert against any specific interrogatory. They hedge each objection with noncommittal language "to the extent" it may apply. This says nothing more than plaintiffs possibly may or may not want to object to an interrogatory on any one or more of twelve different, broadly stated grounds. They have not justified the application of any "privilege, protection, or immunity." They have demonstrated nothing to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

"unduly burdensome and expensive," either by affidavit or anything else of record. They have not shown how any interrogatory may exceed or conflict with the Federal Rule of Civil Procedure. They have shown nothing to be a trade secret or proprietary information. They have failed to show any supposed irrelevancy. They have done nothing of consequence to support any objection. The court finds plaintiffs have waived whatever objections they might have asserted. It thus overrules their ostensible objections and sustains the motion to compel plaintiffs to respond to Interrogatories Nos. 2 through 5.

*2 The court does not suggest that general objections may never be used. Under whatever label and however asserted, an objection must serve as a meaningful response, nevertheless, if a party intends to avoid the duty otherwise to answer an interrogatory or produce requested items. He may not reserve objections and thereby postpone to a later date the duty to inform opposing parties and the court promptly what is wrong with the discovery and why requested information is not forthcoming.
General objections may occasionally serve as an efficient response. The court may consider and rule upon general objections raised against sets of interrogatories or requests for production. (Cited cases omitted.) *It generally treats merely reserved objections, however, as untimely.* (Cited case omitted.) *When parties fail to "make specific legitimate objections to particular interrogatories within the time allowed," the court may appropriately deem objections to those interrogatories waived.* See Casson Constr. Co. v. Armco Steel Corp., 91 F.R.D. 376, 379 (D.Kan.1980). The same can be said of failing to make specific objections to requests for production. (Underscoring added.)

Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 304 (D.Kan.1996).

Interrogatories Nos. 6 through 9 raise different questions. They ask plaintiffs to provide the following information: identifications, salaries, and who pays the salaries of all their employees; identifying information about any complaints against plaintiffs for any misconduct or illegal activity; identifying information about any investigations of plaintiffs for any reason; identifying information about every lawsuit in which plaintiffs or any affiliate has been a party since January 1, 1990. Plaintiffs objected to each of these interrogatories upon the grounds they are overly broad and not reasonably calculated to lead to the discovery of admissible evidence. The court finds them overly broad on their face. Accordingly, it overrules the motion to compel further answers to Interrogatories Nos. 6 through 9.

Interrogatory 10 asks plaintiffs to provide identifying information for each agreement to which paragraph 29 of their complaint refers. Paragraph 29 alleges that defendant Seaboard "entered into agreements with Plaintiffs to provide advice and advisory services to Plaintiffs in connection with their purchase of wheat through Seaboard." Plaintiffs answered the interrogatory simply by referring to an affidavit and documents "to be produced." Their answer further provides incomplete information with regard to some "telephone calls and meetings." The court finds the entire response inadequate. Plaintiffs shall answer Interrogatory 10, not by reference to an affidavit or documents to be produced, but by providing all the information requested by its sub-sections a. through e., as requested.

Plaintiffs asserted general objections to the Requests for Production. The court finds those ostensible objections substantially similar to the ones already discussed, which the court has overruled. For the reasons already stated, the court overrules the purported objections and finds that plaintiffs have waived them by failing to assert them adequately or properly. The court cannot tell what, if any, objection is intended by plaintiffs to apply to any specific request. For these reasons it sustains the motion to compel plaintiffs to produce the requested documents, to the extent it has not already produced them.

*3 The court next considers the motion of plaintiffs to compel discovery. It addresses six requests for production. Request 1. asks for "Any documents supporting or relating in any way to any damages you claim you have suffered as a result of or in connection with the Forward Contracts." Defendants responded that, "This information has previously been produced to Plaintiffs in the GAFTA arbitrations between the parties pending in London." The court finds this response inadequate. Defendants do not object to the production. They do not say whether or not they have produced any documents, only that they have provided "this information." The court cannot determine how defendants provided "this information," whether in documentary or some other form. The court agrees with plaintiffs that the response does not identify the specific "information" or documents in arbitration which responds to the request. In their argument

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00335-MEF-SRW   Document 11-3   Filed 09/12/2006   Page 5 of 20

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

defendants conjecture that plaintiffs may want copies of pleadings from the arbitration and, if so, that defendants will provide them. Defendants shall produce to plaintiffs whatever responsive documents are within their possession, custody, or control. With regard to any documents they have previously produced in arbitration, they shall either identify in writing each such document which responds to the request or otherwise produce them as plaintiffs here have requested.

In their responsive memorandum defendants state they have produced all documents "in their possession, custody or control responsive to" Requests Nos. 2, 3, and 6. If so, defendants should serve supplemental responses and state specifically that they have produced all the requested documents. They should not rely simply upon their statement in response to the motion.

Requests 4 and 5 seek documents reflecting advice by defendant Seaboard to any customer or entity with regard to purchases, hedging transactions, or futures contracts for wheat. Defendants objected on the grounds the words "advised" and "advice" are undefined, overly broad, vague, and ambiguous. They added, "Subject to and without waiving the foregoing objections, Defendants state that no such documents exist." In their responsive memorandum to the motion they profess not to render "professional advice regarding purchases of wheat, wheat futures or hedging of purchases of wheat." They also have provided an affidavit of their vice president. He states, "Seaboard is *not* in the business of providing professional advice to clients regarding the purchase of commodities." He describes the volume of documents of defendant Seaboard, relative to commodities trading, to consist of fourteen vertical files of four drawers each and 991 banker's boxes. He concludes that, "To require Seaboard to go through all of the above-referenced files and copy documents that contain information which might be construed as 'advice' regarding the purchase of wheat would impose an undue burden on Seaboard."

*4 The court finds that neither the objections nor the affidavit and responses of defendants sufficient to oppose the production. They have provided nothing adequate to persuade the court that the words "advised" or "advice" are too ambiguous to require further responses. Common definitions embody the concepts of recommendations, counsel, and expressions of opinions. The requests seek documents which may have given advice, whether or not defendants were in the business of providing it. Although defendants may not be in the business of providing "professional" advice, they may nevertheless have given advice to someone about purchases, hedging transactions, or future contracts.

The affidavit of their vice president suggests the requested production would be unduly burdensome. Defendants did not object to the requests, however, on those grounds. They objected only upon grounds of ambiguity of the words "advised" and "advice." They waived any objections as to burdensomeness. Accordingly, the court sustains in part the motion to compel defendants to produce documents responsive to Requests 4 and 5. They shall also serve supplemental responses to indicate they are either producing the documents or to reiterate, without objection, that none exist.

Were the court to consider the merits of an objection of undue burden against Requests 4 and 5, it would also note that the affidavit provides no detail about how burdensome it would be to extract from the files and banker's boxes any documents by which advice may have been given. If such documents exist, they may comprise only a small part of the total and be organized or located within a relatively small and easily accessible part of the fourteen files or 991 boxes. A business entity may retain millions of documents in various locations, yet have the ability readily and economically to locate documents either about a specific topic or from which the absence of such information may be assumed. It may already have located the requested information, if it was the subject of other litigation, arbitration, or a governmental investigation. Neither plaintiffs nor the court can rule out these possibilities from the affidavit exhibited by defendants. The conclusion of the affiant about "undue burden" carries some weight. It does not supplant the need for detail and explanation, however, about the nature of the burden in terms of time, money, and procedure which would be required to produce the requested documents or otherwise confirm that they do not exist.

The court denies the request of plaintiffs for sanctions and expenses upon their motion to compel. The court is sustaining their motion only in part. It finds sanctions, including an award of expenses, not justified.

In summary, the court sustains in part and overrules in part both Defendants' Motion to Compel Discovery from Plaintiffs (doc. 27) and Plaintiffs' Motion to Compel Discovery (doc. 31), as herein set forth. Within twenty days of the date of this Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

and Order, plaintiffs shall further answer Interrogatories 1, 2, 3, 4, 5 and 10, produce for inspection and copying by defendants documents responsive to the Requests for Production, and serve a supplemental response to the requests. Within the same period of time defendants shall produce for inspection and copying by plaintiffs the documents responsive to Requests for Production 1, 4, and 5 and serve a supplemental responses for all the requests. Each party shall produce the documents at the offices of its Kansas counsel or at such other place as the parties may agree.

*5 The court further directs counsel for plaintiffs to include the signature of Kansas counsel on all documents they file with the court. D.Kan. Rule 83.5.4(c).

IT IS SO ORDERED.

D.Kan.,1998.
Cotracom Commodity Trading Co. v. Seaboard Corp.
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)

Briefs and Other Related Documents (Back to top)

• 2:97cv02391 (Docket) (Aug. 08, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**2**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
MOLD-MASTERS LIMITED, Plaintiff,
v.
HUSKY INJECTION MOLDING SYSTEMS LTD., Defendant.
No. 01 C 1576.

Dec. 6, 2001.

Daniel A. Boehnen, Christopher M. Cavan, Joshua R. Rich, Paul S. Tully, McDonnell Boehnen Hulbert & Berghoff, Chicago, IL, for Plaintiff.
Constantine L. Trela, Jr., Lisa A. Schneider, Sidley Austin Brown & Wood, Chicago, IL, Bruce C. Haas, Marc J. Pensabene, Fitzpatrick Cella Harper & Scinto, New York, NY, for Defendant.

*MEMORANDUM OPINION AND ORDER*
ASHMAN, Magistrate J.
*1 Mold-Masters Limited filed suit against Husky Injection Molding Systems Ltd. for infringement of patent number 5,299,928 (the "928 patent"). Presently before this Court is Mold-Masters's Motion to Compel Production of Documents and Things Identified in Husky's Third Amended Privilege Log. For the following reasons, this Court grants Mold-Masters's motion in part and denies it in part.

I.

This infringement suit involving the 928 patent commenced on March 6, 2001, after Husky refused to discontinue producing and selling a certain injection molding nozzle, the purported infringing product, as per a demand by Mold-Masters, which was made in a February 23, 2001 letter. By way of history, Husky was aware of Mold-Masters's 928 patent before the February 23 letter was sent. Husky had unsuccessfully opposed Mold-Masters's European counterpart to the 928 patent in or around January 2001.

The point of contention between the parties that we confront now concerns two binders of documents that Husky has withheld from discovery pursuant to the attorney-client privilege and work-product doctrine. Based on Husky's description of these documents on its Third Amended Privilege Document Log, [FN1] Mold-Masters claims that Husky's assertion of the attorney-client privilege and work-product doctrine is improper. Based also on Husky's description of these documents on its Third Amended Privilege Document Log, Mold-Masters claims that the documents must be disclosed pursuant to this Court's September 7, 2001 order. The September 7 order related to legal opinions Husky had requested or received regarding any issue of validity, infringement, enforceability, or liability with respect to the 928 patent, or which discussed the scope of coverage or meaning of the claims of the 928 patent. The September order stated that if Husky chose to rely on any such opinion for any purpose at any time in the litigation, Husky would have to produce to Mold-Masters "all documents or portions of documents that relate to the subject matter of the opinion." (Order 9/7/01 at 2.) After entry of the order, Husky did, in fact, elect to rely on a legal opinion regarding the validity of the 928 patent.

> FN1. Husky has amended its privilege log three times in part because of its failure to sufficiently describe documents listed on the log.

At the suggestion of the parties, we have agreed to conduct an in camera review of the documents in dispute. The pertinent issues have been fully briefed.

II.

We begin our analysis with a brief discussion of the attorney-client privilege, the work-product doctrine, the privilege log requirement contained in Federal Rule of Civil Procedure 26(b)(5), and this Court's September 7 order. Then we apply these principles and rules to the appropriate documents to resolve the instant dispute.

The attorney-client privilege protects confidential communications between a client and his legal advisor. It developed as a consideration for the fostering of confidence and trust by the client in his legal advisor so that the legal advisor could provide effective legal advice. *Trammel v. United States,* 445

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

U.S. 40, 51 (1980); *Prevue Pet Prods., Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 415 (N.D.Ill.2001) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). The general principle of the attorney-client privilege takes the following form: "Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived." *United States v. White,* 950 F.2d 426, 430 (7th Cir.1991) (quoting 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev.1961)). Because the attorney-client privilege is in derogation of the judicial search for truth, it is strictly construed. *In re Walsh,* 623 F.2d 489, 493 (7th Cir.1980). The party asserting the attorney-client privilege bears the burden of establishing all of its elements on a document-by-document basis. *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983).

*2 The work-product doctrine not only protects communications between a client and his legal advisor, but also much that has its source outside of client communications. It developed as a consideration for the maintenance of a "certain degree of privacy" to protect the legal advisor's work so as to promote balance and fairness in the adversarial system. *Upjohn Co.,* 449 U.S. at 397-402; *Hickman v. Taylor,* 329 U.S. 495, 507-12 (1947). In codified form, the work-product doctrine states that "a party may obtain discovery of documents ... otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). The party asserting the work-product doctrine must establish all of its elements on a document-by-document basis. *Applied Telematics, Inc. v. Sprint Communications Co.,* Civ. A. No. 94-4603, 1996 WL 539595, at *4 (E.D.Pa. Sept. 18, 1996). The threshold determination in any case is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Mfg. v. National Presto Indus.,* 709 F.2d 1109, 1118-19 (7th Cir.1983) (quoting 8 Charles Alan Wright et al., Federal Practice and Procedure § 2024, at 343 (2d ed.1994)).

As to any information withheld pursuant to the attorney-client privilege or work-product doctrine, Rule 26(b)(5) requires that the withholding party make the claim of privilege or protection expressly "and describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). For each document, this description should include the date of the document, all authors and recipients of the document along with their capacities, a statement of the subject matter of the document, and an explanation of the basis for withholding the document from discovery. *SmithKline Beecham Corp. v. Apotex Corp.,* 193 F.R.D. 530, 533-34 (N.D.Ill.2000); *Weeks v. Samsung Heavy Indus.,* No. 93 C 4899, 1996 WL 341537, at *2 (N.D. Ill. June 20, 1996); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 88 (N.D.Ill.1992). If the description falls below this standard and fails to provide sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney-client privilege or work-product doctrine, then disclosure of the document is an appropriate sanction. *SmithKline Beecham Corp.,* 193 F.R.D. at 534; *Christman v. Brauvin Realty Advisors, Inc.,* 185 F.R.D. 251, 257-58 (N.D.Ill.1999); *Conagra, Inc. v. Arkwright Mut. Ins. Co.,* 32 F.Supp.2d 1015, 1017-18 (N.D.Ill.1999); *Stern Walters Partners, Inc. v. Kaminky,* No. 94 C 5705, 1996 WL 115290, at *5-6 (N.D.Ill. Mar. 13, 1996).

*3 It should hardly come as a surprise that an attachment to a document must appear as a separate entry on the privilege log. *See O'Connor v. Boeing N. Am., Inc.,* 185 F.R.D. 272, 280 (C.D.Cal.1999); *Leonen v. Johns-Manville,* 135 F.R.D. 94, 98 (D.N.J.1990); *Sneider v. Kimberly-Clark Corp.,* 91 F.R.D. 1, 4 (N.D.Ill.1980). Courts provide protection against disclosure pursuant to the attorney-client privilege and work-product doctrine on a document-by-document basis. Since a document with an attachment constitutes two separate documents, a party objecting to the disclosure of a document with an attachment must prove that both the document and the attachment individually satisfy the requirements of the applicable privilege or doctrine. *Lawless,* 709 F.2d at 487; *Applied Telematics, Inc.,* 1996 WL 539595, at *4. Merely attaching a document to a privileged or protected document does not make the attached document privileged or protected. *O'Connor,* 185 F.R.D. at 280; *Leonen,* 135 F.R.D. at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 3
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

98; <u>Sneider, 91 F.R.D. at 4</u>.

Lastly, we mention this Court's September 7 order. Because Husky has relied on a legal opinion regarding the validity of <u>the 928 patent</u>, the September order requires Husky to produce to Mold-Masters "all documents or portions of documents that relate to the subject matter of the opinion." (Order 9/7/01 at 2.) Thus, any document or portion of any document in Husky's possession that concerns, pertains to, or refers to the validity of <u>the 928 patent</u> must be disclosed, regardless of whether that document would otherwise be privileged or protected.

Against this backdrop, we turn to the documents submitted for in camera review.[FN2] Each document is analyzed separately by the document number provided by Husky. Because Husky's objections to disclosure are based on the content of each document, we rely heavily on Husky's Third Amended Privilege Document Log to assess Husky's assertion of the attorney-client privilege and work-product doctrine. In this regard, Husky's descriptions of the documents are quite unhelpful. The descriptions are general and conclusory, making it extremely difficult to assess the applicability of Husky's assertions of the attorney-client privilege and work-product doctrine.[FN3] Nevertheless, to the extent this Court can discern from the content of the documents and Husky's description of the documents that the attorney-client privilege or work-product doctrine applies, such documents may be withheld. Yet documents that are not described at all on Husky's privilege log must be disclosed. This Court has provided Husky with multiple opportunities and sufficient time to comply with <u>Rule 26(b)(5)</u>. At this stage of the game, immediate production of any document not described at all on Husky's privilege log is the necessary sanction.

> FN2. As an initial matter, Husky has not submitted documents P48, P52, P79, P86, P92, P118, P123, P124, P126, P128, P135, P153, P165, P166, P167, and P169 to this Court for in camera review despite the fact that Mold-Masters raised objections to Husky's withholding of these documents from discovery. We find that all of the documents must be disclosed, assuming that the documents have not already been disclosed. Also, we note that Husky included a document titled *Husky's In Camera Explanation for Withholding Documents as Privileged* within each binder of documents submitted for in camera review. These ex parte communications have not been considered by this Court.

> FN3. For example, most document descriptions contain slight variations of the following phrase: "confidential communication made for the purpose of providing legal advice in anticipation of litigation, not regarding <u>the 928 patent</u>." (Def.'s Third Am. Privilege Doc. Log at 1-19.) Husky's privilege log does not describe the subject matter of the documents, which, especially in the case of untitled drawings, often leaves this Court guessing as to what the documents pertain.

*P3*

Husky described document P3 as a letter with attachment dated February 21, 2001, from Robert Bachman, Husky's lawyer, to Robin Arnott, a Husky employee. A handwritten note has been redacted from the letter. The handwritten note must be disclosed because Husky failed to provide any information describing the handwritten note on its privilege log.

*P21*

*4 Husky described document P21 as an e-mail dated August 23, 2000, from Arnott to Eric Spencer and Mike Gould, Husky employees. The content of the e-mail preceding the sentence beginning with "The reason" does not reveal a confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the remainder of the e-mail contains information protected under the attorney-client privilege. The content of the e-mail reveals that the e-mail was prepared in anticipation of litigation, but the information contained in the e-mail must be disclosed pursuant to the September 7 order because the information relates to the validity of <u>the 928 patent</u>.

*P26*

Husky described document P26 as an e-mail dated May 18, 2000, from Arnott to Spencer. Included with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00335-MEF-SRW   Document 11-3   Filed 09/12/2006   Page 11 of 20

Not Reported in F.Supp.2d                                                                                                      Page 4
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The content of the e-mail itself does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the e-mail was prepared in anticipation of litigation, but the information contained in the e-mail must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

*P27*

Husky described document P27 as an e-mail with handwritten notes dated May 18, 2000, from Spencer to Arnott. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. Also, Husky failed to provide any information about the handwritten notes on its privilege log. For that reason, the attached messages and handwritten notes must be disclosed. The content of the e-mail itself does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the e-mail was prepared in anticipation of litigation, but the information contained in the e-mail must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

*P38*

Husky described document P38 as a May 15, 2000 report authored by Arnott. This Court cannot tell from the content of the report or from Husky's description of the report whether the report contains information protected under the attorney-client privilege or work-product doctrine. The report is a compilation of public information; its purpose is unknown. Therefore, the report must be disclosed.

*P50*

Husky described document P50 as a November 25, 1999 report authored by Arnott. The report is an earlier draft of P38. This Court cannot tell from the content of the report or from Husky's description of the report whether the report contains information protected under the attorney-client privilege or work-product doctrine. The report is a compilation of public information; its purpose is unknown.

Therefore, the report must be disclosed.

*P64*

*5 Husky described document P64 as an e-mail dated March 19, 1999, from Ed Jenko, a Husky employee, to Arnott, Charlie Hillman, David Whiffen, Martin Baumann, and David Meyer, all Husky employees. Included with the e-mail is an attached message and a handwritten note that are not described at all on Husky's privilege log. For that reason, the attached message and handwritten note must be disclosed. The content of the e-mail itself does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail in the paragraph beginning with "Robin" reveals that the information was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. This Court cannot tell whether the rest of the e-mail is protected under the work-product doctrine; therefore, the information must be disclosed.

*P65*

Husky described document P65 as an e-mail dated March 18, 1999, from Jenko to Arnott. The content of the e-mail does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the e-mail was prepared in anticipation of litigation, but the information contained in the e-mail must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

*P72*

Husky described document P72 as a letter dated November 20, 1998, from Robert Stratton, Husky's lawyer, to Arnott, and Rick Bauer, Husky's lawyer. The content of the letter does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the information contained in the e-mail was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*P75*

Husky described document P75 as an e-mail dated March 11, 1999, from Arnott to Jenko. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. For that reason, the attached messages must be disclosed. The content of the e-mail itself reveals that the information contained up to the sentence beginning with "To file" is not protected against disclosure under the attorney-client privilege. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the rest of the e-mail contains information protected under the attorney-client privilege. The e-mail does contain information prepared in anticipation of litigation in the paragraphs up to and including the paragraph beginning with "In the meantime" as well as the sentence beginning with "Finally", but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The remainder of the e-mail is not protected under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation.

*P78*

*6 Husky described document P78 as an undated e-mail from Arnott to Jenko and Stefan Von Buren, a Husky employee. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. All of the information contained in the e-mail itself has already been disclosed so no additional rulings are necessary.

*P81*

Husky described document P81 as an e-mail dated January 19, 1999, from Arnott to Abdeslam Bouti, George Olaru, Von Buren, and Jenko, all Husky employees. The redacted information contained in the paragraphs beginning with "The situation" and "If Mold-Masters" relays legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The redacted information contained in the paragraph beginning with "Based" is not protected under the attorney-client privilege because of waiver; the information relays legal advice contained in the e-mail that has already been disclosed. The redacted information contained in the paragraph beginning with "Based" is not protected against disclosure under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product.

*P85*

Husky described document P85 as a letter dated March 6, 2001, from Daniel Boehnen, Mold-Masters's lawyer, to Robert Schad, a Husky employee. Some handwritten notes have been redacted from the letter. No information relating to the handwritten notes is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed.

*P87*

Husky described document P87 as a letter dated February 28, 2001, from Jonathan Fischer, a Mold-Masters employee, to Schad. Some handwritten notes have been redacted from the letter. No information relating to the handwritten notes is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed.

*P89*

Husky described document P89 as a letter dated February 23, 2001, from Alan Cantor, Mold-Masters's lawyer, to Schad and Fischer. Some handwritten notes have been redacted from the letter. No information relating to the handwritten notes is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed.

*P91*

Husky described document P91 as an e-mail dated March 3, 2001, from T.J. Dhillon, a Husky employee, to Arnott and thirteen other Husky employees. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether any part of the e-mail contains information protected under the attorney-client privilege. The content of the e-mail reveals that the information contained in the e-mail was prepared in the ordinary course of business and not in anticipation of litigation; the e-mail merely

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00335-MEF-SRW    Document 11-3    Filed 09/12/2006    Page 13 of 20

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

conveys business information to sales associates. Therefore, the e-mail must be disclosed.

*P93*

*7 Husky described document P93 as an undated report authored by Bruce Haas, Husky's lawyer. This Court cannot tell from the content of the report or from Husky's description of the report whether the report contains redacted information that is protected under the attorney-client privilege. The content of the report reveals that the redacted information contained in the report was prepared in anticipation of litigation, but the redacted information contained in bullet points two and three on page six of the report must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The rest of the redacted information contained in the report is protected against disclosure under the work-product doctrine because the information was prepared in anticipation of litigation; the information does not relate to the validity of the 928 patent.

*P94*

Husky described document P94 as a letter dated February 28, 2001, from Fischer to Schad. Some handwritten notes have been redacted from the letter. No information relating to the handwritten notes is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed.

*P97*

Husky described document P97 as undated handwritten notes authored by Derek Smith, a Husky employee. This Court cannot tell from the content of the notes or from Husky's description of the notes whether the notes contain information protected under the attorney-client privilege or work-product doctrine. Consequently, the handwritten notes must be disclosed.

*P103*

Husky described document P103 as an e-mail dated January 14, 1999, from Sandra Hackenberg, a Husky employee, to Arnott and sixteen other Husky employees. Included with the e-mail is an attached document that is not described at all on Husky's privilege log. For that reason, the attached document must be disclosed. The e-mail itself has already been disclosed so no additional rulings are necessary.

*P104*

Husky described document P104 as an e-mail dated January 19, 1999, from Arnott to Jenko, Von Buren, and Olaru. This document is identical to P81. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The attached message was disclosed in P81 anyway.

The redacted information contained in the paragraphs of the e-mail beginning with "The situation" and "If Mold-Masters" relays legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The redacted information contained in the paragraph beginning with "Based" is not protected under the attorney-client privilege because of waiver; the information relays legal advice contained in the e-mail that has already been disclosed. The redacted information contained in the paragraph beginning with "Based" is not protected against disclosure under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product.

*8 The second page of P104 is a copy of the first page of P104. The same analysis applies.

*P105*

Husky described document P105 as an e-mail with attachment dated March 11, 1999, from Jenko to Arnott. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. (One of the attached messages is dated November 27, 1998, also known as P107.) Also, no information relating to the attachment is included on Husky's privilege log. Therefore, the attached messages and document must be disclosed.

This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the attorney-client privilege. The e-mail does contain information prepared in anticipation of litigation in the paragraph beginning

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 7
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

with "In the meantime" and in the sentence beginning with "Finally", but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The remainder of the redacted information contained in the e-mail is not protected under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation. If this ruling looks similar to P75, that is because P105 is identical to P75, except for the fact that parts redacted from P75 were voluntarily disclosed by Husky in P105. Why Husky imposed on this Court in this fashion is unexplained.

*P106*

Husky described document P106 as an e-mail dated December 8, 1999, from Arnott to Jenko. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. For that reason, the attached messages must be disclosed. All of the information contained in the e-mail itself has already been disclosed so no additional rulings are necessary.

*P107*

Husky described document P107 as an e-mail with attachment dated November 27, 1998, from Arnott to Jenko and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the attorney-client privilege. The content of the e-mail reveals that the redacted information was prepared in the ordinary course of business and not in anticipation of litigation; the e-mail pertains to the design of a potential product. Therefore, the e-mail must be disclosed.

*P108*

Husky described document P108 as an e-mail dated November 11, 1998, from Arnott to Jenko and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information in the paragraphs beginning with "We also" and "In summary" is protected under the attorney-client privilege. The content of the redacted paragraph beginning with "Meanwhile" relays legal advice, but the information contained in the paragraph must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The content of the redacted paragraph beginning with "If we" relays legal advice that does not pertain to the validity of the 928 patent, and therefore the information need not be disclosed. The content of the redacted paragraphs beginning with "We also" and "In summary", except for the final sentence beginning with "Can", reveals that the information contained in those paragraphs was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The sentence beginning with "Can" is not protected under the work-product doctrine because the information contained in that sentence was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the manufacture of a potential product.

*P109*

\*9 Husky described document P109 as an e-mail dated October 1, 1998, from Arnott to Whiffen, Olaru, Jenko, and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted portion of the e-mail is protected under the attorney-client privilege. The content of the redacted information contained in the sentence beginning with "What" reveals that the information was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The content of the redacted information contained in the sentence beginning with "Please" reveals that the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. Therefore, the e-mail must be disclosed.

*P110*

Husky described document P110 as an e-mail with attachment dated October 1, 1998, from Hackenberg to Arnott and eleven other Husky employees. No information relating to the attachment is included on Husky's privilege log. For that reason, the attachment must be disclosed. The e-mail itself contains no privileged or protected information.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 8

*P111*

Husky described document P111 as an undated facsimile from Arnott to Whiffen. No information relating to the faxed documents is included on Husky's privilege log. For that reason, the faxed documents must be disclosed.

*P112*

Husky described document P112 as a letter dated July 8, 1997, from Olaru to Whiffen, Bouti, and Peter Hall, all Husky employees. This Court cannot tell from the content of the letter or from Husky's description of the letter whether the redacted portion of the letter is protected under the attorney-client privilege or work-product doctrine. Therefore, the letter must be disclosed.

*P114*

Husky described document P114 as an e-mail dated March 11, 1999, from Arnott to Jenko. Included with the e-mail are attached messages and documents. Neither the attached messages nor the attached documents are described at all on Husky's privilege log. For that reason, the attached messages and documents must be disclosed. The content of the e-mail itself reveals that the information contained up to the sentence beginning with "To file" is not protected against disclosure under the attorney-client privilege. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the rest of the e-mail contains information protected under the attorney-client privilege. The e-mail does contain information that was prepared in anticipation of litigation in the paragraphs up to and including the paragraph beginning with "In the meantime" as well as the sentence beginning with "Finally", but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The remainder of the e-mail is not protected under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation. Incidentally, P114 is identical to P75.

*P115*

*10 Husky described document P115 as an April 28, 1997 report authored by Bouti. The content of the report reveals that the information contained in the report is not protected under the attorney-client privilege or work-product doctrine; the report merely contains information relating to the design of a potential product. Therefore, the report must be disclosed.

*P116*

Husky described document P116 as an e-mail dated August 6, 1997, from Olaru to Martin Osterode and four other Husky employees. The content of the e-mail reveals that the redacted information contained in the e-mail is not protected under the attorney-client privilege or work-product doctrine; the information deals with a possible business arrangement between Kona and Husky. Therefore, the e-mail must be disclosed.

*P119*

Husky described document P119 as a letter with attachment dated July 8, 1997, from Olaru to Whiffen, Bouti, and Hall. This Court cannot tell from the content of the letter or from Husky's description of the letter whether the redacted portion of the letter contains information protected under the attorney-client privilege or work-product doctrine. P119 is identical to P112.

*P121*

Husky described document P121 as a March 21, 1997 report with attachment authored by Bouti. Included with the report are two attached documents that are not described at all on Husky's privilege log. For that reason, the attached documents must be disclosed. The content of the report itself reveals that the information contained in the report is not protected against disclosure under the attorney-client privilege or work-product doctrine; the report contains business information regarding the design of a potential product. Therefore, the report must be disclosed.

*P125*

Husky described document P125 as a letter dated February 24, 1997, from Olaru to Whiffen and Rajan Puri, a Husky employee. The redacted information contained in the paragraph beginning with "The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 9

preliminary" relays legal advice unrelated to the validity of the 928 patent so the information need not be disclosed. This Court cannot tell from the content of the letter or from Husky's description of the letter whether the redacted information contained in the remaining paragraphs is protected under the attorney-client privilege. The content of the letter reveals that the redacted information contained in the remaining paragraphs was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product.

### P129

Husky described document P129 as a facsimile with attachment dated October 16, 1998, from Arnott to Whiffen. The attachments are not described at all on Husky's privilege log. For that reason, the attachments must be disclosed. The facsimile cover sheet has already been disclosed so no additional rulings are necessary.

### P130

Husky described document P130 as a May 12, 1997 report authored by Harold Godwin, a Husky employee. The content of the report reveals that the information contained in the report is not protected against disclosure under the attorney-client privilege or work-product doctrine; the information pertains to the design of a potential product. Therefore, the report must be disclosed.

### P133

*11 Husky described document P133 as a facsimile dated November 22, 1999, from Arnott to Bachman. The content of the facsimile reveals that the redacted information contains a confidential communication that was made for the purpose of obtaining legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

### P136

Husky described document P136 as an e-mail dated November 16, 1999, from Arnott to Ralph Gauss and five other Husky employees. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. For that reason, the attached messages must be disclosed. The content of the e-mail itself does not reveal any confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the work-product doctrine. Therefore, the e-mail must be disclosed.

### P140

Husky described document P140 as an undated e-mail from Arnott to Gauss and three other Husky employees. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. For that reason, the attached messages must be disclosed. The content of the e-mail itself does not reveal any confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the work-product doctrine. Therefore, the e-mail must be disclosed.

### P142

Husky described document P142 as a letter dated October 22, 1999, from Bachman to Arnott. Included with the letter are attachments that are not described at all on Husky's privilege log. For that reason, the attachments must be disclosed. The content of the letter is not protected against disclosure under the attorney-client privilege because the information contained in the letter does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the letter is protected against disclosure under the work-product doctrine because the information was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

### P144

Husky described document P144 as a letter dated October 18, 1999, from Arnott to Gauss and two other Husky employees. Included with the letter are attachments that are not described at all on Husky's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00335-MEF-SRW    Document 11-3    Filed 09/12/2006    Page 17 of 20

Not Reported in F.Supp.2d                                                                                         Page 10
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

privilege log. For that reason, the attachments must be disclosed. The redacted information contained in the paragraphs beginning with "I have" and "If you" is not protected under the attorney-client privilege because the information does not reveal a confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell from the content of the letter or from Husky's description of the letter whether the redacted information contained in the paragraph beginning with "Our strategy" is protected under the attorney-client privilege. The content of the letter reveals that the redacted information contained in the paragraph beginning with "Our strategy" was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The content of the letter also reveals that the redacted information contained in the paragraphs beginning with "I have" and "If you plan" was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design and sale of a potential product.

### P146

*12 Husky described document P146 as an e-mail dated January 19, 1999, from Arnott to Bouti, Von Buren, Jenko, and Olaru. The redacted information contained in the paragraphs beginning with "The situation" and "If Mold-Masters" relays legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The redacted information contained in the paragraph beginning with "Based" is not protected under the attorney-client privilege because of waiver; the information relays legal advice contained in the e-mail that has already been disclosed. The redacted information contained in the paragraph beginning with "Based" is not protected against disclosure under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. Incidentally, P146 is identical to P81.

### P147

Husky described document P147 as an e-mail dated January 18, 1999, from Bouti to Arnott, Jenko, Von Buren, and Alex Teng, all Husky employees. The content of the redacted portion of the e-mail does not contain a confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the work-product doctrine. Therefore, the e-mail must be disclosed.

### P148

Husky described document P148 as an e-mail dated November 11, 1998, from Jenko to Arnott. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The content of the e-mail does not contain a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the e-mail was prepared in the ordinary course of business and not in anticipation of litigation; the e-mail pertains to the design of a potential product. Therefore, the e-mail must be disclosed.

### P152

Husky described document P152 as an e-mail dated May 22, 1997, from Whiffen to Bouti and Olaru. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The information contained in the e-mail has already been disclosed so no additional rulings are necessary.

### P154

Husky described document P154 as an e-mail with attachment dated October 1, 1998, from Arnott to Whiffen, Olaru, Jenko, and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted portion of the e-mail is protected under the attorney-client privilege. The content of the redacted information contained in the sentence beginning with "What" reveals that the information was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The content of the redacted information contained in the sentence beginning with "Please" reveals that the information was prepared in the ordinary course of business and not in anticipation of

Not Reported in F.Supp.2d                                                                                                         Page 11
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

litigation; the information pertains to the design of a potential product. If this ruling sounds similar to P109, that is because P154 is identical to P109.

### P156

*13 Husky described document P156 as an e-mail dated January 19, 1999, from Arnott to Jenko, Von Buren, Bouti, and Olaru. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The redacted information contained in the paragraphs of the e-mail beginning with "The situation" and "If Mold-Masters" relays legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The redacted information contained in the paragraph beginning with "Based" is not protected under the attorney-client privilege because of waiver; the information relays legal advice contained in the e-mail that has already been disclosed. The redacted information contained in the paragraph beginning with "Based" is not protected against disclosure under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. Incidentally, P156 is identical to P81.

### P157

Husky described document P157 as an e-mail with attachment dated November 27, 1998, from Arnott to Jenko and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted portion of the e-mail is protected under the attorney-client privilege. The content of the e-mail reveals that the redacted information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. P157 is identical to P107.

### P159

Husky described document P159 as a February 11, 1997 report authored by Olaru. This Court cannot tell from the content of the report or from Husky's description of the report whether the report is protected under the attorney-client privilege or work-product doctrine. Therefore, the report must be disclosed.

### P161

Husky described document P161 as a January 7, 1999 report authored by Olaru. The report contains handwritten notes that are not described at all on Husky's privilege log. For that reason, the handwritten notes must be disclosed. The content of the report itself reveals that the information contained in the report is not protected against disclosure under the attorney-client privilege or work-product doctrine; the report merely provides an update on issues relating to Husky's products or potential products. Therefore, the report must be disclosed.

### P170

Husky described document P170 as a facsimile from Arnott to Whiffen. Included with the facsimile cover sheet are attached documents that are not described at all on Husky's privilege log. For that reason, the attached documents must be disclosed. The information contained in the facsimile has already been disclosed so no additional rulings are necessary.

### P216

*14 Husky described document P216 as a design drawing and patent with handwritten notes dated July 16, 1996, from the file of Jenko. No information pertaining to the handwritten notes (e.g., who wrote the notes) is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed. This Court cannot tell from the content of the drawing or patent or from Husky's description of the drawing or patent whether any part of the drawing or patent is protected under the attorney-client privilege or work-product doctrine. Therefore, the drawing and patent must be disclosed.

### P218

Husky described document P218 as a February 28, 2001 report with handwritten notes authored by Baumann. This Court cannot tell from the content of the report or handwritten notes or from Husky's description of the report or handwritten notes whether any part of the report or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the report and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 12

handwritten notes must be disclosed.

*P219*

Husky described document P219 as a February 28, 2001 report authored by Baumann. This Court cannot tell from the content of the report or from Husky's description of the report whether any part of the report is protected under the attorney-client privilege or work-product doctrine. Therefore, the report must be disclosed.

*P220*

Husky described document P220 as undated drawings with handwritten notes from the file of Arnott. This Court cannot tell from the content of the drawings or handwritten notes or from Husky's description of the drawings or handwritten notes whether any part of the drawings or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the drawings and handwritten notes must be disclosed.

*P223*

Husky described document P223 as an undated report authored by Arnott. The report consists solely of approximately twenty-seven separate documents that are not described at all on Husky's privilege log. For that reason, the entire document must be disclosed.

*P224*

Husky described document P224 as a June 3, 1997 report with handwritten notes from the file of Olaru. This Court cannot tell from the content of the report or handwritten notes or from Husky's description of the report or handwritten notes whether any part of the report or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the report and handwritten notes must be disclosed.

*P225*

Husky described document P225 as a June 3, 1997 report with handwritten notes from the file of Olaru. This Court cannot tell from the content of the report or handwritten notes or from Husky's description of the report or handwritten notes whether any part of the report or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the report and handwritten notes must be disclosed.

*P226*

*15 Husky described document P226 as a June 3, 1997 report with handwritten notes from the file of Olaru. This Court cannot tell from the content of the report or handwritten notes or from Husky's description of the report or handwritten notes whether any part of the report or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the report and handwritten notes must be disclosed.

*P228*

Husky described document P228 as undated handwritten notes from the file of Arnott. This Court cannot tell from the content of the handwritten notes or from Husky's description of the handwritten notes whether any part of the notes is protected under the attorney-client privilege. The content of the handwritten notes reveals that the information contained in the notes was prepared in anticipation of litigation; the information relates to the instant suit, but not to the validity of the 928 patent.

*P229*

Husky described document P229 as handwritten notes dated February 28, 2001, from the file of Arnott. This Court cannot tell from the content of the handwritten notes or from Husky's description of the handwritten notes whether any part of the notes is protected under the attorney-client privilege. The content of the handwritten notes reveals that the information contained in the notes was prepared in anticipation of litigation; the information relates to the instant suit, but not to the validity of the 928 patent.

*P230*

Husky described document P230 as a March 5, 2001 document authored by Arnott. This Court cannot tell from the content of the document or from Husky's description of the document whether any part of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

document is protected under the attorney-client privilege. The content of the document reveals that the information contained in the document was prepared in anticipation of litigation; the information relates to the instant suit, but not to the validity of the 928 patent.

*P234*

Husky described document P234 as handwritten notes dated May 17, 1997, authored by Godwin and Bouti. The content of the notes does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the notes also reveals that the information contained in the notes was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. Therefore, the notes must be disclosed.

*P236*

Husky described document P236 as an undated draft application from the file of Bouti. This Court cannot tell from the content of the application or from Husky's description of the application whether any part of the application is protected under the attorney-client privilege. Therefore, the draft application must be disclosed.

IV.

For the reasons stated, this Court grants Mold-Masters's motion in part and denies it in part. Husky must produce documents to Mold-Masters as stated above.

N.D.Ill.,2001.
Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd.
Not Reported in F.Supp.2d, 2001 WL 1558303 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2002 WL 32450606 (Trial Motion, Memorandum and Affidavit) Agreed Motion for an Extension of All Pretrial Deadlines Pending Negotiation of Final Settlement Agreement (Jan. 25, 2002) Original Image of this Document (PDF)
• 2002 WL 32450594 (Trial Motion, Memorandum and Affidavit) Mold-Masters's Memorandum of Law in Opposition to Husky's Second Motion for Reconsideration (Jan. 7, 2002) Original Image of this Document with Appendix (PDF)
• 2002 WL 32677502 (Trial Motion, Memorandum and Affidavit) Mold-Masters's Memorandum of Law in Opposition to Husky's Second Motion for Reconsideration (Jan. 7, 2002) Original Image of this Document with Appendix (PDF)
• 2001 WL 34483635 (Trial Motion, Memorandum and Affidavit) Defendant Husky's Motion to Defer Consideration of Its Objections to Magistrate Judge Ashman's December 5, 2001 Order (Dec. 20, 2001) Original Image of this Document (PDF)
• 2001 WL 34483637 (Trial Motion, Memorandum and Affidavit) Husky's Motion for Reconsideration of Order Compelling Production of Privileged Documents (Dec. 18, 2001) Original Image of this Document with Appendix (PDF)
• 2001 WL 34483632 (Trial Motion, Memorandum and Affidavit) Husky's Motion for Relief under the Protective Order Regarding the Deposition of Jobst Gellert (Dec. 7, 2001) Original Image of this Document (PDF)
• 2001 WL 34666892 (Trial Pleading) Complaint for Patent Infringement (Mar. 6, 2001) Original Image of this Document (PDF)
• 1:01CV01576 (Docket) (Mar. 06, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.