# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| N.A. WATER SYSTEMS, LLC, as successor by merger to USFILTER ENGINEERING & CONSTRUCTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> AUGUSTA FIBERGLASS COATINGS, INC., SNYDER INDUSTRIES, INC., <br><br> Defendants. | CIVIL ACTION NO.: 2:06-CV-335-MEF |

## AFFIDAVIT OF E. MABRY ROGERS

1.  My name is E. Mabry Rogers. I am of legal age and competent to provide this Affidavit. The Affidavit is made upon personal knowledge.

2.  On June 23, 2006, plaintiff sent AFC its Request for Production of Documents. **(Exhibit A).** Pursuant to the Parties' Report of Rule 26(f) Planning Meeting, filed on May 26, 2006 (Doc. 5), a response was due within 33 days.

3.  AFC filed responses to plaintiff's First Request for Production of Documents on August 9, 2006 **(Exhibit B)**, and it filed Objections to the RFP on August 9, 2006 as well **(Exhibit C)**.

4.  Along with its Response and Objections, AFC produced the documents themselves in its transmittal letter **(Exhibit D)** dated August 9, 2006, AFC included an index to the documents produced, and it stated that "this is a complete set of the AFC documents."

5.  On August 29, 2006, in response to a 30(b)(5) notice to AFC, AFC objected to producing items pertaining to AFC's quality control, quality assurance manuals, test manuals,

and purchase order procedures manuals for fabrication work. It also objected to any test records for the tanks which AFC sold plaintiff. For the first time, AFC disclosed the existence of documents exchanged between AFC and its insurance carrier related to the incident made the basis of this litigation (**Exhibit D**).

6. AFC elaborated on its objection to correspondence with its insurance carrier, by stating that such documents are subject to protection from discovery under the work product doctrine, as illuminated in Rule 26(b)(3). Objection was made to "all communications between AFC and any of its agents or employees, and the liability insurer of AFC and any responses thereto." *See* **Exhibit D**.

7. Plaintiff received the new objections on August 31, 2006, and immediately (on September 1, 2006) requested a meeting to confer with counsel for AFC, regarding the withheld documents. Rather than conduct the meeting to confer, AFC instead continued its objection in a lengthy email exchange. Counsel for plaintiff attempted to have meetings with AFC's counsel to confer about the objections thereafter (*see* **Affidavit Exhibit 1**), to no avail, although AFC took two steps, in response to the email exchange which occurred in lieu of an actual meeting to confer about the objections:

    a. It produced its insurance policy (which it had disclosed in its initial disclosures, but had not produced); and

    b. It produced a privilege log as to two redactions it had made on documents sent with its Initial Disclosures in the case (**Exhibit H**), and it was served on September 5, 2006.

8. The document regarding test procedures, procurement manuals, quality control and quality assurance documents, and the test on three of the five tanks which AFC sold to plaintiff are all relevant and must be produced.

9. AFC has not produced the distributorship agreement which it has with Snyder, concerning tanks of the kind which AFC sold to plaintiff. Plaintiff first learned of a distributorship agreement during the 30(b)(6) deposition of Snyder Industries, on August 31, 2006.

      10.    Under the contract between AFC and plaintiff, AFC is obligated to indemnify plaintiff as follows:

> INDEMNIFICATION – Seller shall indemnify Buyer and its customers and hold them harmless from and against any and all claims, actions, proceedings, costs, expenses, losses and liability, including all attorneys' fees and costs, arising out of or in connection with or relating to any Goods or services performed by Seller pursuant to this order, including without limitation all product liability claims and any claims involving personal injury, death or property damage. The obligations set forth in this Section shall survive the termination or fulfillment of this purchase order.

      11.    The tests, procedures, and manuals are called for in the RFP. (**Exhibit A**, Items 3, 12) They are also called for in the 30(b)(5) to AFC (**Affidavit Exhibit 2**).

      12.    The distributorship agreement is called for in the RFP. (**Exhibit A**, Items 9, 12)

      13.    AFC, in a letter dated February 2, 2005, stated as follows:

> The total damages to our customer and Augusta Fiberglass as a direct result of the failure of your tank's flange is $153,172.20. We expect immediate payment of these amounts upon receipt of this letter.

(**Exhibit G**)

      14.    The tank which catastrophically failed and leaked 93% sulfuric acid on September 14, 2004, bore the nameplate of Augusta Fiberglass Coatings, and it was sold to plaintiff by AFC, pursuant to purchase orders between plaintiff and AFC. Plaintiff has no contract, in this transaction, with Snyder. The purchase order between plaintiff and AFC requires each tank to be "completely assembled and tested prior to shipment."

      15.    As a result of the refusal by AFC to produce documents, and because of the withholding of numerous undescribed documents which are allegedly covered by the "work product doctrine," plaintiff postponed depositions of AFC under Rule 30(b)(6) and of AFC's President, Mr. Boyd.

16. The parties agreed fact witness depositions would conclude on October 15, 2006 (Doc. 5, ¶ 3.F.). This was adopted by the Court. (Doc. 6, § 13)

17. AFC delivered the five tanks to Alabama. AFC has availed itself of the privilege of this Court in making a cross-claim against Snyder. AFC revealed in its Answers to Interrogatories that it sent two representatives to Montgomery in September 2004 to investigate the catastrophic leak or to repair the tanks. AFC has taken the position that all parties must travel to a remote area of South Carolina in order take the 30(b)(6) deposition of AFC and of its President, Mr. Boyd. Blackville, South Carolina, is remote, has no court reporters that we can locate, and has one hotel. It is extremely burdensome and time consuming to get there.

18. Snyder has testified it cannot locate documentation showing any test of the failed tank, but it faxed the test results to AFC. Snyder has testified it did not test the fully-assembled tank prior to shipment.

19. Under the indemnification provision, AFC has a duty to mitigate the damages to plaintiff. It also has that duty under the contract (**Exhibit A** to Complaint, p. 3 of 8) because the "prevailing party" is to receive its attorney's fees and costs. Requiring two or three attorneys (perhaps each with client representatives) to travel to remote South Carolina is not consistent with mitigation.

FURTHER, AFFIANT SAYETH NOT

_____
E. Mabry Rogers

Dated this 13th day of September, 2006.

State of Alabama )
)
County of Jefferson )

Sworn to and subscribed before me this 13th Day of September, 2006.

_____
NOTARY PUBLIC
My Commission expires: NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Jan 30, 2007
BONDED THRU NOTARY PUBLIC UNDERWRITERS

1/1490963.1                4

# EXHIBIT
# 1

# Rogers, E. Mabry

| | |
|---|---|
| **From:** | Rogers, E. Mabry |
| **Sent:** | Monday, September 04, 2006 1:34 PM |
| **To:** | 'ccowen@ball-ball.com' |
| **Cc:** | Andreen, Rhonda C.; Benschoter, Amy; Smith, Becky |
| **Subject:** | N.A. Water Systems v. Augusta Fiberglass et al. |

Re: NA Water Systems vs. Augusta and others; meet and confer regarding withheld documents

Dear Jack:

This will acknowledge again your email of September 1, 2006 (6:45 pm). My earlier answer (on September 1) repeated our request for a meet and confer.

Below we address the numbered paragraphs in your email.

1. The documents which it now appears that Augusta has withheld are requested in the Water Systems' RFP Items 2, 4 (assuming "reports" were made to the insurance carrier; we inserted the word "past" in the RFP so that reports after the commencement of the litigation would not be included), 5, 6, 7, 8, 11, and 12. Your objections, which were untimely (and which untimeliness we do not waive, and have not waived), do not call out any specific documents being withheld in response to any of these items.
    a. This is in contrast to the Initial Disclosure which at least noted two redactions, although the Disclosures provided no supporting privilege log, nor any support for the redactions. The Disclosure did, however, point out the existence of the information rather than ignore it.
    b. The August 9, 2006, letter transmitting the documents and the Objections states it is a complete set of the AFC documents. We interpreted this to mean that nothing had been withheld, as nothing is noted as withheld, or redacted.
    c. Our conclusion was reinforced by AFC's statement in your August 4 letter, accompanying the Interrogatory Answers: "I do not think we withheld any information in reliance on the objections."
    d. As is stated in the Guidelines published by the Middle District, "Simple honesty of course requires that the existence of a requested but protected document be pointed out, not simply ignored." We do not agree any of AFC's withheld documents are protected (if they ever were), but this statement by the Judges of the Middle District provides the context in which we read your August 9 letter.
    e. The attachments to the August 9 letter do not include--that we can locate--copies of the redacted documents, AF 01 and AF 02 (from the Initial Disclosure), which, in hindsight, causes additional concern about the statement in the August 9 letter that "a complete set" of AFC documents was produced. If AF 172 is the unredacted version of AF 02, then it is not, and never was privileged, unless the late Mr. Wittebort was a lawyer acting as such, and, even if it were privileged, the privilege has been waived.
    f. Again, our understanding of your production, as "complete," with nothing withheld, was also reinforced by AFC's Answer to Interrogatory 7, which requested entities against whom a claim had been made. No mention is made of an insurance carrier. In light of the statement in the August 4 letter, "nothing was withheld," we were led to believe that no information (documentary or otherwise) was withheld.
    g. Nevertheless, the 30(b)(5) and (6) tested AFC's representations about having withheld no information, because we were and are aware that insurance was disclosed in the initial disclosures.

2. Please review Interrogatory 6 and 7, requesting information about "any claim" against "any person or entity" arising out of the "Project or the Work." Project and Work are all encompassing terms, with Project being broader than Work, as set forth in the definitions.

3. You confirm in this paragraph that no privilege log was submitted, because nothing was withheld. Is that now AFC's position? As mentioned above in Paragraph numbered 1, we read AFC's August 4 letter as stating no information was withheld. In light of your objection to the deposition notice, it appears that information was, and continues to be withheld.

4. This paragraph numbered 4 does not make sense. If information is withheld, it must be listed as such. That is what the Federal Rules of Civil Procedure affirmatively require; it is what the Middle District Guidelines require. Withholding without a log violates both, and creates an impression, by "silence" that no documents are withheld. While we do not fully understand Paragraph numbered 4, we want to reaffirm that the August 9 letter, setting forth general objections, was untimely.

5. We look forward to receiving the omitted documents you state you will supply. The thrust of the dispute

about Paragraph 1 of your Objection served on August 29, however, is the quality control and quality assurance documents, test manuals, and purchase order procedures manuals for fabrication work. Those items are relevant, or may lead to admissible evidence, regarding a tank sold by AFC with AFC's nameplate. We seek information about AFC's compliance with its procedures in the sale of the tank which failed so catastrophically.

6. We think your statement in this paragraph means AFC will not recede from its objections to the 30 b 5 and 30 b 6. In order to confirm this, I have tried since mid afternoon on Friday to talk with you about your plan.

7. We have explained that the August 9 letter's representation that the "complete set" of AFC documents was attached, in the context of the August 4 letter's representation that no information was withheld misled us, whether it was intended to or not. As I read your paragraph numbered 3 above, you rely on the August 4 letter as supporting your reason for not providing a privilege log with the August 9 documents.

8. As to the withholding of documents without a log, it violates the Federal Rules of Civil Procedure. The Middle District states that "simple honesty" requires affirmative disclosure of the existence of documents. If the last paragraph of the email is erroneous, or poor in its choice of words, they are withdrawn, in favor of the words of the Middle District Judges.

9. Thank you for clarifying the "tone" comment. The point of my email to you is to get to the relevant documents promptly, efficiently, and duly regardful of the legal requirements.

I look forward to seeing the applicable policy promptly.
Re: NA Water Systems vs. Augusta and others; meet and confer regarding withheld documents


E. Mabry Rogers
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2104
emr@bradleyarant.com
www.bradleyarant.com
Phone:  (205) 521-8225
Fax:  (205) 521-8800

9/13/2006

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISIONS

N.A. WATER SYSTEMS, LLC, as successor )
by merger to USFILTER ENGINEERING & )
CONSTRUCTION, INC., )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NUMBER: 2:06-CV-325-MEF
)
)
AUGUSTA FIBERGLASS COATINGS, )
INC., SNYDER INDUSTRIES, INC., )

    Defendants.

### SECOND AMENDED NOTICE TO TAKE THE DEPOSITION OF 30(b)(6) REPRESENATIVE OF AUGUSTA FIBERGLASS COATINGS, INC. AND 30(b)(5) DOCUMENT REQUEST

Please take notice that pursuant to Federal Rules of Civil Procedure 30(b)(5) and (6), on the date and at the time and place indicated below, the Plaintiff, N.A. Water Systems, LLC, will take the depositions upon oral examination of the persons named. The depositions will be taken for purposes of discovery or for use as evidence in this action pursuant to the Federal Rules of Civil Procedures. The depositions will be taken before a court reporter and/or some other officer authorized by law to administer oaths. The depositions will continue from hour to hour and day to day until completed pursuant to the Federal Rules of Civil Procedure. You are invited to attend the depositions and examine the witnesses as you see fit.

    **DEPONENT(S):**  30(b)(6) representative of Augusta Fiberglass Coatings, Inc.
    **DATE:**  Thursday, September 14, 2006
    **TIME:**  10:00 a.m.
    **PLACE:**  Augusta Fiberglass
                  86 Lake Cynthia Road
                  Blackville, SC 29817

                        Or as an alternative:

                        Winton Inn  
                        8273 Marlboro Avenue  
                        Barnwell, SC  29812

## **DEFINITIONS**

As used herein, the terms listed below are defined as follows:

      A.      The term **"Water Systems"** shall mean N. A. Water Systems, LLC, together with its officers, directors, agents, employees, representatives and consultants. These terms shall be deemed to include all predecessor corporations, including, without limitation US Filter.

      B.      The term **"Snyder"** shall mean Snyder Industries, Inc., including all current and former officers, agents, employees, representatives, consultants and attorneys of Snyder Industries, Inc.

      C.      The term **"Augusta,"** shall mean Augusta Fiberglass Coatings, Inc., including all current and former officers, agents, employees, representatives, consultants and attorneys of Augusta Fiberglass Coatings, Inc.

      D.      The words **"document"** and **"documents"** as used herein shall mean all written, recorded, electronically generated or stored, or graphic matter whatsoever and all non-identical copies thereof, including, but not limited to, papers, books, records, letters, photographs, tangible things, correspondence, communications, telegrams, cables, facsimile messages, memoranda, notes, notations, work papers, work orders, transcripts, minutes, reports, records of telephone or other conversations, statements, summaries, opinions, studies, analyses, evaluations, contracts, agreements, jottings, agendas, bulletins, notices, announcements, instructions, guidelines, video

tapes, audio tapes, charts, manuals, brochures, publications, schedules, journals, books of accounts, diaries, lists, tabulations, newsletters, drafts, proofs, galleys, or other pre-publication forms or materials, telephone lists or indexes, Rolodexes, records or invoices reflecting business operations, canceled checks, vouchers, ledger sheets, witness statements, findings of investigations, minutes of any corporate meetings, minutes of meetings of boards of directors of corporations, records of negotiations, reports of experts, reports of consultants, e-mails (with all attachments), computer disks, CAD, all records kept by electronic, photographical, or mechanical means, any notes or drafts relating to any of the foregoing, all things similar to the foregoing, of any kind or character in your possession, custody or control or known by you to exist.

E. The term **"Purchase Order"** refers to the agreement, including but not limited to, Purchase Order Number 7041-01-009 and all other documents cited, referenced or otherwise incorporated into the agreement, entered into on or about August 21, 2003, and issued by US Filter to Augusta.

F. The term **"the Tank"** refers to the 5,000 gallon capacity polyethylene tank manufactured by Snyder and sold to US Filter by Augusta, pursuant to the Purchase Order.

G. **"Action"** means the civil action, 2:06-CV-335, commenced by Water Systems against Augusta and Snyder.

H. The term **"Project"** refers to the design and construction of the wastewater treatment system at the Hyundai Plant in Montgomery County, Alabama, including the design, procurement and installation of the tank.

I.   **"Work"** means any or all of the labor, supervision, or services performed for the Project, whether by Augusta or Snyder or others.

J.   The term **"Complaint"** refers to the complaint filed by Water Systems in the above-styled action.

Pursuant to Rule 30(b)(6), Augusta Fiberglass Coatings, Inc. is requested to designate one or more officers, directors, or managing agents or other persons who consent to testify on its behalf with respect to the following matters:

1.   The claims asserted against and defenses claimed by Augusta in this litigation and the cross-claim asserted by Augusta against Snyder.

2.   The incident made the basis of Water Systems' Complaint.

3.   The design, manufacture, testing, inspection, shipping, sale or operation of the Tank, and/or any of its component parts made the basis of Water Systems' Complaint.

4.   Augusta's quality control, quality assurance manuals, test manuals, and purchase order procedures manuals for its fabrication work or for its purchases or for both.

5.   Any and all damages alleged in this litigation.

6.   Inspections, examinations, tests, and analyses (including the results thereof), that were performed by and/or for you on the subject tank, and/or any of its component parts, made the basis of this litigation, before or after the incident made the basis of Water Systems' Complaint.

7.   Any communications with Snyder as to the design, sale, shipment, installation, testing, and use of the tank, and/or any of its component parts made the basis of this litigation.

8.   Any communications by and between Augusta, Snyder, or Water Systems in this case.

9. Any warnings or instructions concerning the Tank, and/or any of its component parts made the basis of this litigation.

10. The contracts with Water Systems.

11. The contracts with Snyder.

12. Augusta's markup on its sale of the tanks in the contract.

13. The documents requested below.

14. Augusta's Answers to Interrogatories propounded by Water Systems.

Pursuant to Rule 30(b)(5), the deponent(s) is requested that at the time and place of taking the said deposition(s), deponent(s) produce for inspection and copying the following documents:

1. All documents requested in N.A. Water Systems, LLC's Request for Production of Documents to Augusts served on June 23, 2006, to the extent the documents have not been produced to N.A. Water Systems, LLC.

2. All documents in Augusta's 30(b)(6) deponent(s) possession, custody or control that relate in any way to the Project, Work, Tank, any of the claims or cross-claims in this Action or any defenses asserted by Augusta in this Action.

3. All documents that relate in any way to the testing, shop testing, shop test procedures, or inspection of the tanks fabricated, or sold, by Augusta and supplied to the Project pursuant to the Purchase Order.

4. All documents regarding Augusta's quality assurance and quality control for products it supplies but does not manufacture.

5. All documents by and between Augusta and its insurance carrier related to the incident made the basis of this litigation.

Respectfully submitted,

_____
Attorney for N.A. Water Systems, LLC

OF COUNSEL:
BRADLEY ARANT ROSE & WHITE LLP
E. Mabry Rogers, Esq. (ROG005)
Rhonda Caviedes Andreen (CAV008)
Angela R. Rogers (RAI 017)
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing SECOND AMENDED NOTICE TO TAKE THE DEPOSITION OF 30(b)(6) REPRESENATIVE OF AUGUSTA FIBERGLASS COATINGS, INC. AND 30(b)(5) DOCUMENT REQUEST on:

Jack Owen
Ball, Ball, Matthews & Novak, P.A.
Post Office Box 2148
Montgomery, Alabama 36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: ccowen@ball-ball.com

Dorothy A. Powell, Esq.
Parsons, Lee & Juliano, P. C.
300 Protective Center
2801 Highway 280 South
Birmingham, AL 35223-2480
Email: dpowell@pljpc.com

by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing addresses, on this 25th day of August, 2006.

_____
                OF COUNSEL

1/1485310.1                                7