IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| N.A. WATER SYSTEMS, LLC, as successor by merger to USFILTER ENGINEERING & CONSTRUCTION, INC., ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION NO.: 2:06-CV-335-MEF |
| AUGUSTA FIBERGLASS COATINGS, INC., SNYDER INDUSTRIES, INC., ) ) ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL AUGUSTA TO PRODUCE DOCUMENTS**

Plaintiff filed suit in Montgomery County (AL) Circuit Court on March 2, 2006. The Defendants timely removed the case to this Court. Jurisdiction and venue are proper.

Under the contract between plaintiff and AFC, AFC agreed to deliver five tanks to plaintiff at the Hyundai facility in Montgomery, Alabama. One of those tanks, containing 93% sulfuric acid, had a catastrophic leak on September 14, 2006, as Hurricane Ivan bore down on the United States shoreline. Plaintiff filed this lawsuit, when it could not obtain AFC's agreement to pay the costs of cleanup and replacement.

AFC has admitted that Snyder Industries, Inc. ("Snyder") is responsible not only for the costs incurred by plaintiff, but also for additional costs allegedly incurred by AFC.

AFC, in a letter dated February 2, 2005, stated as follows:

> The total damages to our customer and Augusta Fiberglass as a direct result of the failure of your tank's flange is $153,172.20.

> We expect immediate payment of these amounts upon receipt of this letter.

**(Exhibit G)**

The parties agreed to a relatively aggressive discovery schedule, with the discovery cutoff of October 15, 2006, as to fact witnesses. (**Exhibit I**, ¶ 16) Pursuant to that schedule, plaintiff filed its request for production to AFC on June 23, 2006. (**Exhibit A**) The answer was due within 33 days, but no Response nor any Objections, were filed within the prescribed 33 days. Instead, on August 9, 2006, AFC produced a Response to the RFP (**Exhibit B**) and Objections to the RFP (**Exhibit C**). At the same time, AFC represented to plaintiff, in a letter August 9, 2006 (**Exhibit D**) that a "complete set of the AFC documents" was being produced.

Not until August 29, 2006, in an Objection (**Exhibit E**) received by plaintiff on August 31, 2006, did AFC reveal documents that had not been produced by AFC.

On September 5, 2006, AFC produced its only "Privilege Log," listing two documents (**Exhibit H**).

AFC has refused to produce any of the records of tests on the tanks it sold to plaintiff, and it has furthermore refused to produce any documents regarding its test procedures, quality assurance and quality control, its procedures for purchasing tanks from other vendors, and any tests of the tanks which it sold to plaintiff. It has also refused to produce the distributorship agreement, which was not disclosed by AFC or by Snyder, until the 30(b)(6) deposition of Snyder on August 31, 2006.

AFC should be required to produce the relevant documents in this case, which it has refused expressly to produce, and it furthermore should be required to produce documents purportedly covered by the work product doctrine or attorney-client privilege, because it has waived any right it might have had, under that doctrine or the privilege, to refuse to provide relevant documents to plaintiff.

A.    AFC HAS WAIVED ANY RIGHT IT MIGHT HAVE HAD TO RELY ON THE WORK PRODUCT DOCTRINE.

AFC has recently relied on the work product doctrine, as grounds for its refusal to provide copies of relevant documents to plaintiff. That doctrine is contained in Fed. R. Civ. P. 26(b)(3).

The person attempting to withhold relevant documents has the burden of showing it is entitled to use the doctrine in order to shield or hide evidence. *Freiermuth v. PPG Industries, Inc.*, 218 F.R.D. 694, 700 (N.D. Ala 2003). AFC cannot carry that burden.

1.    a.    AFC did not timely file any objections under Rule 34(b) to the Request for Production. That, alone, constitutes a waiver of any applicable privilege (belatedly claimed as to two redactions in this particular case) or doctrine allowing the suppression of evidence (which was claimed belatedly), by AFC. As stated, AFC's Objections were not filed until August 9, 2006, well after the final day for it to have filed its Objections (July 27, 2006). Failure to timely file any objections is a waiver of all. *Starlight International, Inc. v. Herliby*, 181 F.R.D. 494, 496-97 (D. Kan. 1998); *Perry v. Golub*, 74 F.R.D. 360, 363-64 (N.D. Ala. 1976).

b.    Moreover, when it filed its Objections, AFC did not comply with Rule 34(b) requiring AFC to state, "with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, *in which event the reasons for the objection shall be stated*." General objections do not comply with the express words of Rule 34(b), *Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 n.4 (N.D. Ill. 2001), and that is the most that can be said for AFC's Objections. The objections are general in nature and provide no clue as to the withholding of any document or documents or as to any category or item in the RFP. Moreover, it does not even mention insurance as the reason for withholding evidence. AFC's Objections -- general, vague, non-specific -- are "worthless." *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 1998 WL 231135, at *1 (D. Kan. May 1, 1998) (Westlaw citations only are attached in the "Caselaw").

As the Judges of the Middle District have stated, "Simple honesty of course requires that the existence of a requested but protected document be pointed out, not simply ignored." *Guidelines to Civil Discovery Practice in the Middle District of Alabama*, § III.B.3. Nowhere in any disclosure prior to its Objection mailed on August 29, 2006, did AFC ever disclose the withholding of items some how involving its insurer. No disclosure of any such documents -- or their withholding -- was made, notwithstanding a request in RFP item 4 for "past" reports[1] that relate in any way to the tank, whether such report was performed by AFC or some other third party, request item 6, requesting documents that relate in any way to the Tank (defined as the failed tank), request item 7, regarding documents concerning observation, investigation or analysis of the Tank and its component parts, request item 8, requesting documents that relate in any way to the spill at issue in this case, request item 14, regarding meeting minutes or notes between or among employees or representatives of Augusta relating to the Tank (and relating to the Work or the Project which are more broadly defined), and request item 16, regarding statements which may have been taken or to which AFC may have had access.

Even in its August 29 Objection, AFC is evasive about what is withheld. Plaintiff cannot determine what "agents" or "employees" are involved, what communications between them have been withheld, what communications with an unnamed insurer were withheld, or what or whose "responses" have been blanketed from disclosure.

2. Not only did AFC waive any right not to disclose relevant documents by its failure to comply with Rule 34(b), it waived its right by its failure to comply with Rule 26(b)(5) which requires the production of a privilege log, "when" documents are withheld. The latest date when it can be stated that AFC withheld documents was August 9, 2006 (the date it transmitted what it described as its "complete" documents to plaintiff).[2] No log was produced. To the contrary, the transmittal letter states that the "complete set" of AFC's documents was being transmitted. Thus, while there were "blanket objections" made to the RFP, the lack of a

---

[1] The use of the word "past" reflected the parties' agreement not to seek discovery of items created after this suit was filed.

[2] Rule 34(b) may require the log within the time allowed for making objections to an RFP (30 days or 33 for service by mail). We believe the 11th Circuit has not ruled as to whether the log must be produced within the time required for the Rule 34(b) Response. *See Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.*, 230 F.R.D. 688, 695 (M.D. FL 2005). We reserve that argument, but AFC did not produce a log upon either milestone. Hence, the Court need not reach this question of first impression in this Circuit.

privilege log, the lack of specific objections to any Request item, and the affirmative statement that the complete set of documents was attached was misleading and in complete defiance of the Fed. R. Civ. P.

After considerable email discussion with counsel for plaintiff, AFC eventually produced a privilege log, but that log only discloses two redactions (**Exhibits H**), and it still does not disclose any documents that apparently are the subject of the murky objection served on August 29, 2006, in **Exhibit E**.

The failure to produce the log under these circumstances waives the privilege. *Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 n.4 (N.D. Ill. 2001).

      3.    The log produced is clearly inadequate. The most that can be said for the two item log (**Exhibit H**) is that it admits that a log is required, but it is late and inadequate. Moreover, it does not even list the "work product" documents which AFC has withheld, apparently concerning communications by, between, and among its employees and agents, including agents or representatives of an insurance carrier. Clearly, no assessment can be made of the scope of AFC's withholding here, because of the refusal of AFC to disclose anything about the documents, other than that some of them may involve in some way an insurance carrier.

Even if there had been a log, testing the existing log regarding the two redacted documents (**Exhibit H**), one finds that it does not provide much of the information that a log must provide. For example, each of the two documents is described as an email and given a date, the name, address, and employer of the author is not listed, the name of the legal counsel is not given, other recipients of the email are not listed, the purpose for which the document was created is not given, the reason it was transmitted is not provided, and there is absolutely no information regarding the degree of confidentiality to which the document has been subjected, much less any other information supporting the suppression of evidence. Hence, even had there been a log, it would have been inadequate for the undescribed documents and, in addition, it is inadequate as to the two redactions.

For the reasons cited above, AFC should be required to produce the two redactions, because no adequate showing has been made, along with all documents which it has withheld from production, under the claim of work product.

B.    AFC SHOULD PRODUCE ITS QUALITY CONTROL, TESTING AND INSPECTION INFORMATION.

Plaintiff purchased five tanks from AFC. The tank which ruptured on September 14, 2004, carried the manufacturer's nameplate as "Augusta Fiberglass." The purchase order to AFC required that it test the tank and all of its components prior to shipment. (**Exhibit I**, ¶ 14)

Augusta's quality control, quality assurance, tests, and purchase order procedures manuals are all extremely relevant to this case, in part because AFC states that Snyder is liable for the damages caused by the leak. (**Exhibit G**) Hence, to the extent the purchase order procedures manual covers (or fails to cover for that matter) steps to be taken in issuing a purchase order to a sub-fabricator of an AFC tank, it provides relevant evidence, or may certainly lead to the discovery of relevant evidence. These items were requested in plaintiff's RFP. (**Exhibit A**, Items 3, 12)

AFC refuses to produce the tests, if any, it performed on the tanks it sold to plaintiff. The tests which AFC performed on those tanks are relevant, because the purchase order required that all tanks be tested, fully assembled, prior to shipment. (**Exhibit I**, ¶ 14) Furthermore, it is undisputed that the written evidence of tests of any kind for the tank that failed has not been produced in this case. Snyder's 30(b)(6) witness testified the test results were sent to AFC. However, it appears from the evidence that no test of the failed tank along with all of its components was made by AFC or Snyder. (**Exhibit I**, ¶ 18  Therefore, the testing by AFC of any of the other tanks sold to plaintiff is quite relevant to plaintiff's claims against AFC, whether AFC complied with the purchase order requirements (to test the fully-assembled tank before shipment). These items were requested in plaintiff's RFP. (**Exhibit A**, Items 3, 12)

Likewise, the distributorship agreement, which was not disclosed by either Snyder or AFC until the Snyder 30(b)(6) deposition on August 31, 2006, is relevant, and it is called for, not only in the 30(b)(5) notice to take the AFC 30(b)(6) deposition, but also in the original RFP,

which requested all documents that relate in any way to the Tank (which failed), all correspondence or communications between Snyder and AFC, relating in any way to the Project or the Work (**Exhibit A**, Request 9), and documents which relate to the claims asserted against Snyder by AFC (**Exhibit A**, Request 11). Notwithstanding these requests, the distributorship agreement has not been produced, and it is likely to provide evidence admissible at the trial of this matter, because it may reveal indemnity obligations, quality control and quality assurance obligations, and the right of Snyder to affix an AFC nameplate to a tank AFC did not fabricate.

For the above reasons, AFC should be required to produce the following documents: test procedures and manuals, procurement manuals, quality control and quality assurance manuals, purchase order procedures manuals for its fabrication work or for its purchases or for both, all documents that relate in any way to testing, shop testing, shop test procedures, or inspection of the tanks fabricated, or sold, by AFC and supplied to the Project pursuant to the Purchase Order, and the distributorship agreement (and amendments) with Snyder, including all documents or things related to these documents reasonably necessary to understand them in the context of this litigation.

C. **AFC SHOULD BE REQUIRED TO BRING ITS REPRESENTATIVES TO ALABAMA FOR DEPOSITION.**

AFC has taken the position that it need not bring its representatives to Alabama for depositions in this matter.

It is wrong, because it has availed itself of the jurisdiction of this Court in asserting its cross-claim against Snyder in this matter, and it shipped the five tanks to Montgomery, Alabama for installation. It sent two persons to Montgomery in September 2004 to investigate the accident or repair the damage. (**Exhibit I**, ¶ 17) It has an obligation to indemnify plaintiff and the prevailing party receives its attorney's fees. (**Exhibit I**, ¶¶ 10, 19) It thus has the correlative duty to mitigate damages.

Under these circumstances, it is fair and equitable that it send representatives to Alabama, in order to give depositions.

D.  CONCLUSION.

The discovery cut-off for fact witnesses is extremely close. Plaintiff needs the information sought by this Motion in order to develop the facts fully, the documents are relevant, and any privilege or protection which some of the documents may have had has been waived.

Therefore, AFC should be required to produce the documents as described in the Motion and it should be required to bring its 30(b)(6) representative and its President to Montgomery, Alabama, for depositions in this case.

Respectfully submitted,

_____
Attorney for N.A. Water Systems, LLC

OF COUNSEL:
BRADLEY ARANT ROSE & WHITE LLP
E. Mabry Rogers, Esq. (ROG005)
Rhonda Caviedes Andreen (CAV008)
Angela R. Rogers (RAI 017)
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL AUGUSTA TO PRODUCE DOCUMENTS on:

Jack Owen
Ball, Ball, Matthews & Novak, P.A.
Post Office Box 2148
Montgomery, Alabama 36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email: ccowen@ball-ball.com

Dorothy A. Powell, Esq.
Parsons, Lee & Juliano, P. C.
300 Protective Center
2801 Highway 280 South
Birmingham, AL 35223-2480
Email: dpowell@pljpc.com

by electronic filing and by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing addresses, on this ___13___ day of September, 2006.

_____
OF COUNSEL