CASELAW

1. *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 1998 WL 231135 (D. Kan. May 1, 1998)

Westlaw.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)  
**(Cite as: Not Reported in F.Supp.)**

Page 1

**H**
Briefs and Other Related Documents  
Only the Westlaw citation is currently available.  
United States District Court, D. Kansas.  
COTRACOM COMMODITY TRADING CO.,  
Bendel Feed and Flour Mill, Ltd., Plaintiffs,  
v.  
SEABOARD CORPORATION, Seaboard Trading & Shipping, Ltd., Sasco Engineering Co., Defendants.  
**No. CIV. A. 97-2391-GTV.**

May 6, 1998.

Stephen M Sacks, John C Massaro, Arnold & Porter, Washington, DC, Patrick J. Stueve, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas City, MO, Roger D. Stanton, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, for Cotracom Commodity Trading AG, Bendel Feed and Flour Mill, Ltd., plaintiffs.

J. Eugene Balloun, William R. Sampson, Paul W. Rebein, Shook, Hardy & Bacon L.L.P., Overland Park, for Seaboard Corporation, Seaboard Trading & Shipping, Ltd., Sasco Engineering Co, Seaboard Sales Corp., a foreign Corporation, defendants.

MEMORANDUM AND ORDER

RUSHFELT, Magistrate J.  
*1 The court has before it Defendants' Motion to Compel Discovery from Plaintiffs (doc. 27) and Plaintiffs' Motion to Compel Discovery (doc. 31). They address alleged failures to respond adequately with interrogatories and requests for production. The motion of plaintiffs asks for sanctions and expenses, as well as further responses to discovery.

The motion of defendants asks the court to compel plaintiffs to respond further to ten interrogatories and twenty-six requests for production. The court sustains the motion as to Interrogatory No. 1. For reasons stated in this order the court does not find that the reference by plaintiffs to their "General Objections" preserves any objection against the interrogatory. The court cannot find that plaintiffs have otherwise responded with any of the information it requests.

Plaintiffs objected to Interrogatories Nos. 2 through 5. In response to No. 2 they asserted, "See Plaintiffs' General Statement and General Objections." In response to Nos. 3, 4, and 5, they further directed, "See Response to Interrogatory 2." After conceding they would produce "all non-privileged documents which refer or relate to the transactions/contracts involved in this litigation," plaintiffs then unfolded twelve paragraphs of "General Objections." These twelve paragraphs purport to state separate objections "to the extent" the interrogatories seek various things: anything protected by any "applicable privilege, protection, or immunity;" "a motion for more definite statement;" "an itemized listing of documents;" something "unnecessarily duplicative and therefore unduly burdensome and expensive to the extent they seek information contained in documents already provided or to be provided;" anything requiring "Plaintiffs to analyze documents in the files of Defendants and/or to be produced by Defendants;" "information as easily ascertainable by Defendants as by Plaintiffs from the documents produced and to be produced;" "information unrelated to the litigation;" whatever may "impose requirements in addition to or in conflict with...Federal Rules of Civil Procedure;" "trade secret or proprietary information;" whatever may " impose obligations on plaintiffs' beyond those required" in the rules; "financial worth discovery prior to having obtained any judgment or verdict."

The court finds these General Objections worthless for anything beyond delay of the discovery. Plaintiffs might just as well have said they object upon every possible ground which the law may provide, so long as it may conceivably apply to an interrogatory. These ostensible objections say nothing of consequence. They do not constitute objections. Plaintiffs have made no meaningful effort to show the application of any such theoretical objection to any interrogatory. They have simply stated them as hypothetical or contingent possibilities. Neither the court nor anyone else could reasonably determine beyond speculation what objection, if any, plaintiffs intend to assert against any specific interrogatory. They hedge each objection with noncommittal language "to the extent" it may apply. This says nothing more than plaintiffs possibly may or may not want to object to an interrogatory on any one or more of twelve different, broadly stated grounds. They have not justified the application of any "privilege, protection, or immunity." They have demonstrated nothing to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

"unduly burdensome and expensive," either by affidavit or anything else of record. They have not shown how any interrogatory may exceed or conflict with the Federal Rule of Civil Procedure. They have shown nothing to be a trade secret or proprietary information. They have failed to show any supposed irrelevancy. They have done nothing of consequence to support any objection. The court finds plaintiffs have waived whatever objections they might have asserted. It thus overrules their ostensible objections and sustains the motion to compel plaintiffs to respond to Interrogatories Nos. 2 through 5.

*2 The court does not suggest that general objections may never be used. Under whatever label and however asserted, an objection must serve as a meaningful response, nevertheless, if a party intends to avoid the duty otherwise to answer an interrogatory or produce requested items. He may not reserve objections and thereby postpone to a later date the duty to inform opposing parties and the court promptly what is wrong with the discovery and why requested information is not forthcoming.
General objections may occasionally serve as an efficient response. The court may consider and rule upon general objections raised against sets of interrogatories or requests for production. (Cited cases omitted.) *It generally treats merely reserved objections, however, as untimely.* (Cited case omitted.) *When parties fail to "make specific legitimate objections to particular interrogatories within the time allowed," the court may appropriately deem objections to those interrogatories waived.* See Casson Constr. Co. v. Armco Steel Corp., 91 F.R.D. 376, 379 (D.Kan.1980). The same can be said of failing to make specific objections to requests for production. (Underscoring added.)

Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 304 (D.Kan.1996).

Interrogatories Nos. 6 through 9 raise different questions. They ask plaintiffs to provide the following information: identifications, salaries, and who pays the salaries of all their employees; identifying information about any complaints against plaintiffs for any misconduct or illegal activity; identifying information about any investigations of plaintiffs for any reason; identifying information about every lawsuit in which plaintiffs or any affiliate has been a party since January 1, 1990. Plaintiffs objected to each of these interrogatories upon the grounds they are overly broad and not reasonably calculated to lead to the discovery of admissible evidence. The court finds them overly broad on their face. Accordingly, it overrules the motion to compel further answers to Interrogatories Nos. 6 through 9.

Interrogatory 10 asks plaintiffs to provide identifying information for each agreement to which paragraph 29 of their complaint refers. Paragraph 29 alleges that defendant Seaboard "entered into agreements with Plaintiffs to provide advice and advisory services to Plaintiffs in connection with their purchase of wheat through Seaboard." Plaintiffs answered the interrogatory simply by referring to an affidavit and documents "to be produced." Their answer further provides incomplete information with regard to some "telephone calls and meetings." The court finds the entire response inadequate. Plaintiffs shall answer Interrogatory 10, not by reference to an affidavit or documents to be produced, but by providing all the information requested by its sub-sections a. through e., as requested.

Plaintiffs asserted general objections to the Requests for Production. The court finds those ostensible objections substantially similar to the ones already discussed, which the court has overruled. For the reasons already stated, the court overrules the purported objections and finds that plaintiffs have waived them by failing to assert them adequately or properly. The court cannot tell what, if any, objection is intended by plaintiffs to apply to any specific request. For these reasons it sustains the motion to compel plaintiffs to produce the requested documents, to the extent it has not already produced them.

*3 The court next considers the motion of plaintiffs to compel discovery. It addresses six requests for production. Request 1. asks for "Any documents supporting or relating in any way to any damages you claim you have suffered as a result of or in connection with the Forward Contracts." Defendants responded that, "This information has previously been produced to Plaintiffs in the GAFTA arbitrations between the parties pending in London." The court finds this response inadequate. Defendants do not object to the production. They do not say whether or not they have produced any documents, only that they have provided "this information." The court cannot determine how defendants provided "this information," whether in documentary or some other form. The court agrees with plaintiffs that the response does not identify the specific "information" or documents in arbitration which responds to the request. In their argument

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

defendants conjecture that plaintiffs may want copies of pleadings from the arbitration and, if so, that defendants will provide them. Defendants shall produce to plaintiffs whatever responsive documents are within their possession, custody, or control. With regard to any documents they have previously produced in arbitration, they shall either identify in writing each such document which responds to the request or otherwise produce them as plaintiffs here have requested.

In their responsive memorandum defendants state they have produced all documents "in their possession, custody or control responsive to" Requests Nos. 2, 3, and 6. If so, defendants should serve supplemental responses and state specifically that they have produced all the requested documents. They should not rely simply upon their statement in response to the motion.

Requests 4 and 5 seek documents reflecting advice by defendant Seaboard to any customer or entity with regard to purchases, hedging transactions, or futures contracts for wheat. Defendants objected on the grounds the words "advised" and "advice" are undefined, overly broad, vague, and ambiguous. They added, "Subject to and without waiving the foregoing objections, Defendants state that no such documents exist." In their responsive memorandum to the motion they profess not to render "professional advice regarding purchases of wheat, wheat futures or hedging of purchases of wheat." They also have provided an affidavit of their vice president. He states, "Seaboard is *not* in the business of providing professional advice to clients regarding the purchase of commodities." He describes the volume of documents of defendant Seaboard, relative to commodities trading, to consist of fourteen vertical files of four drawers each and 991 banker's boxes. He concludes that, "To require Seaboard to go through all of the above-referenced files and copy documents that contain information which might be construed as 'advice' regarding the purchase of wheat would impose an undue burden on Seaboard."

*4 The court finds that neither the objections nor the affidavit and responses of defendants sufficient to oppose the production. They have provided nothing adequate to persuade the court that the words "advised" or "advice" are too ambiguous to require further responses. Common definitions embody the concepts of recommendations, counsel, and expressions of opinions. The requests seek documents which may have given advice, whether or not defendants were in the business of providing it.

Although defendants may not be in the business of providing "professional" advice, they may nevertheless have given advice to someone about purchases, hedging transactions, or future contracts.

The affidavit of their vice president suggests the requested production would be unduly burdensome. Defendants did not object to the requests, however, on those grounds. They objected only upon grounds of ambiguity of the words "advised" and "advice." They waived any objections as to burdensomeness. Accordingly, the court sustains in part the motion to compel defendants to produce documents responsive to Requests 4 and 5. They shall also serve supplemental responses to indicate they are either producing the documents or to reiterate, without objection, that none exist.

Were the court to consider the merits of an objection of undue burden against Requests 4 and 5, it would also note that the affidavit provides no detail about how burdensome it would be to extract from the files and banker's boxes any documents by which advice may have been given. If such documents exist, they may comprise only a small part of the total and be organized or located within a relatively small and easily accessible part of the fourteen files or 991 boxes. A business entity may retain millions of documents in various locations, yet have the ability readily and economically to locate documents either about a specific topic or from which the absence of such information may be assumed. It may already have located the requested information, if it was the subject of other litigation, arbitration, or a governmental investigation. Neither plaintiffs nor the court can rule out these possibilities from the affidavit exhibited by defendants. The conclusion of the affiant about "undue burden" carries some weight. It does not supplant the need for detail and explanation, however, about the nature of the burden in terms of time, money, and procedure which would be required to produce the requested documents or otherwise confirm that they do not exist.

The court denies the request of plaintiffs for sanctions and expenses upon their motion to compel. The court is sustaining their motion only in part. It finds sanctions, including an award of expenses, not justified.

In summary, the court sustains in part and overrules in part both Defendants' Motion to Compel Discovery from Plaintiffs (doc. 27) and Plaintiffs' Motion to Compel Discovery (doc. 31), as herein set forth. Within twenty days of the date of this Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

and Order, plaintiffs shall further answer Interrogatories 1, 2, 3, 4, 5 and 10, produce for inspection and copying by defendants documents responsive to the Requests for Production, and serve a supplemental response to the requests. Within the same period of time defendants shall produce for inspection and copying by plaintiffs the documents responsive to Requests for Production 1, 4, and 5 and serve a supplemental responses for all the requests. Each party shall produce the documents at the offices of its Kansas counsel or at such other place as the parties may agree.

**\*5** The court further directs counsel for plaintiffs to include the signature of Kansas counsel on all documents they file with the court. D.Kan. Rule 83.5.4(c).

IT IS SO ORDERED.

D.Kan.,1998.
Cotracom Commodity Trading Co. v. Seaboard Corp.
Not Reported in F.Supp., 1998 WL 231135 (D.Kan.)

Briefs and Other Related Documents (Back to top)

• 2:97cv02391 (Docket) (Aug. 08, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.