**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **N.A. WATER SYSTEMS, LLC, as** )<br>**successor by merger to USFILTER** )<br>**ENGINEERING & CONSTRUCTION,** )<br>**INC.,** )<br> )<br>    **Plaintiff,** )<br> )<br>**vs.** )<br> )<br>**AUGUSTA FIBERGLASS COATINGS,** )<br>**INC., SNYDER INDUSTRIES, INC.,** )<br> )<br>    **Defendants.** ) | **CIVIL ACTION NO.: 2:06-CV-335-MEF** |

**DEFENDANT SNYDER INDUSTRIES, INC.'S**
**RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

COMES NOW Snyder Industries, Inc. (hereinafter "Snyder"), one of the

Defendants in the above-styled cause, and submits this Response to Plaintiff's

Motion to Compel.

Initially, it should be noted that the discovery deadline in this case as stated

in the Uniform Scheduling Order entered on May 30, 2006, for "all discovery" is

April 12, 2007, not October 15, 2006, as represented by the Plaintiff.  On

September 13, 2006, during two separate conversations, counsel for Snyder

advised Plaintiff's counsel that she had spoken with Judge Fuller's clerk regarding

the discovery deadline, that it had been confirmed the discovery deadline was April

12, 2006, and that Judge Fuller's office had advised defense counsel that in the

event Plaintiff's counsel needed confirmation from Judge Fuller's office as to the

discovery deadline, Plaintiff's counsel was to contact Judge Fuller's clerk.  Ex. 14.

Even after these two conversations, Plaintiff's counsel continued to file pleadings in this Court which misrepresents the date of the discovery deadline in the case.

More importantly, Rule 37(a)(2) of the Federal Rules of Civil Procedure, requires a certification from the moving party that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.  By letter dated September 8, 2006, defense counsel advised Plaintiff's counsel that the requests made in Plaintiff's counsel's letter of September 1, 2006, were being reviewed, and that it was possible that the seven hour and 352 page deposition may need to be reviewed in connection with these requests.  Ex. 14.  On Tuesday, September 12, 2006, defense counsel left a voice mail with Plaintiff's counsel, after being advised that Plaintiff's counsel was out of the office but was checking voice mail, to contact defense counsel on Wednesday, September 13, 2006.  Ex. 14.  While Plaintiff's counsel did respond to the defense counsel's voice mail on September 13, 2006, the Motion to Compel had already been prematurely filed on September 12, 2006.  Accordingly, despite the representation made in the Plaintiff's Motion, that: "We have conducted telephonic meetings to confer about the withheld documents listed in Exhibit I," that representation is incorrect and there can be no representation by the Plaintiff that counsel has in good faith conferred or attempted to confer with defense counsel regarding the documents requested in the 30(b)(6) deposition of Snyder Industries, Inc.  Thus, Plaintiff's Motion to Compel is due to

2

be denied in its entirety solely on that basis.

**I.    Procedural History.**

On June 23, 2006, the Defendant was served by U.S. Mail, Plaintiff's First Request for Production. Ex. 1. The Plaintiff's First Request for Production of Documents contained four pages of instructions and definitions. Ex. 1. The word "document" and "documents" was defined by the Plaintiff to include in excess of 80 versions of what may constitute a "document" or "documents." Ex. 1. The Plaintiff has defined "Snyder" to include seven possible categories of individuals. Ex. 1.

On July 24, 2006, Snyder timely served Objections to the Plaintiff's Requests for Production of Documents, and sent correspondence to Plaintiff's counsel advising that substantive responses would be provided within the next several weeks. Ex. 2, Ex. 3. The Defendant timely preserved its objections to every discovery requests as follows:

> The Defendant objects to each discovery request to the extent that it may be interpreted to call for the production of information or documents which are privileged or confidential including the attorney-client privilege, the attorney work product privilege, or information prepared in anticipation of litigation.

Ex. 2.

On August 9, 2006, following several e-mail communications regarding Snyder's responses to discovery requests, Snyder served its Objections and Response to Plaintiff's First Request for Production of Documents. Ex. 4, Ex. 5, Ex. 6. The Defendant noted it was not waiving previously asserted objections, and

3

also maintained its objections as follows:

> By responding to the Plaintiff's First Request for Production of Documents, the Defendant maintains its objections to all discovery requests to the extent they call for the production of information or documents which are privileged or confidential including the attorney-client privilege, the attorney work product privilege, or information prepared in anticipation of litigation, and call for the disclosure of mental impressions, conclusions, or legal theories. The Defendant maintains its objections to all discovery requests to the extent that said discovery requests may be interpreted to call for information which is overly broad and burdensome, vague or ambiguous, immaterial, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence and not properly discoverable under the *Federal Rules of Civil Procedure*. The Defendant further maintains its objection to the production of documents or internal communications which may be privileged under R 26(b)(2) FRCP.

Ex. 6.

On August 15, 2006, the Plaintiff served its Amended Notice to take the Deposition of 30(b)(5) and (6) Representative of Snyder Industries, Inc. and Requests for Production of Documents. Ex. 7. On August 22, 2006, Snyder timely objected to the Plaintiff's Amended Notice to take the deposition of 30(b)(6) representative of Snyder Industries, Inc. and requests for production of documents served on it pursuant to F.R.C.P. 30(b)(5) by objecting to both testimony sought and documents requested in the Notice. Ex. 8.

On August 22, 2006, counsel for Snyder sent a list of documents which identified documents which had not been produced to the Plaintiff and the basis for which these documents were not produced. Ex. 8.

On August 29, 2006, following a telephone conference with Plaintiff's counsel, counsel for the Defendant sent correspondence to counsel for the Plaintiff which stated in pertinent part:

The following are the documents which the Defendant maintains are communications which were generated after the claim was asserted by N.A. Water Systems seeking damages from Snyder Industries, Inc. with respect to a product manufactured by Snyder. These documents are privileged as being prepared in anticipation of litigation pursuant to Rule 26(b) as each was prepared because of the prospect of litigation (or resolution thereof) surrounding the said incident.

Ex. 9.

At no time did Plaintiff's counsel advise that additional time was necessary prior to the 30(b)(6) deposition of Snyder Industries, Inc., which took place on August 31, 2006, nor did the Plaintiff seek intervention from the Court with respect to documents which had not been produced by Snyder Industries, and the deposition of Snyder Industries. The 30(b)(6) representative of Snyder Industries, Inc. was deposed for seven hours on August 31, 2006.

On Friday, September 1, 2006, at 6:27 p.m. before the Labor Day holiday weekend, counsel for the Plaintiff sent counsel for the Defendant correspondence regarding documents requested by Plaintiff's counsel during the 30(b)(6) deposition of Snyder Industries, Inc. Ex. 10, Ex. 11.

On Friday, September 8, 2006, counsel for the Defendant wrote Plaintiff's counsel, advised of Plaintiff's counsel's misunderstanding of statements made during the deposition, and advised that Snyder's Rule 26 Disclosures would be amended in accordance with the Federal Rules of Civil Procedure, that some of the requests made in the letter of September 1, 2006 were beyond the scope of the Plaintiff's First Requests for Production and specifically advised as follows:

In response to the remainder of your requests, I will review these requests

5

with the prior Requests for Production of Documents served by your office, and, if necessary, with the pertinent sections of the deposition transcript and respond accordingly.

Ex. 12.

The undersigned counsel received two voice mails and several e-mail communications from Plaintiff's counsel on Monday, September 11, 2006.[1] The undersigned counsel responded to the voice mail and e-mail communications by calling Plaintiff's counsel's office on Tuesday, September 12, 2006. Counsel for Snyder was advised that Plaintiff's counsel was out of the office for the day, but would be checking her voice mail. Therefore, the undersigned counsel left a message for Plaintiff's counsel to contact her on Wednesday, September 13, 2006.

Plaintiff's counsel filed a Motion to Compel with the Court on Tuesday night, September 12, 2006. The Motion contains two representations made in an affidavit filed with the Court. The first states as follows:

During the deposition of 30(b)(6) deposition [sic] of Snyder, Snyder would not allow any inquiry regarding insurance matters. . . .

See affidavit of E. Mabry Rogers filed on September 12, 2006. Defense counsel has reviewed the deposition of the 30(b)(6) representative of Snyder and fails to see any indication that Snyder refused to answer or was instructed not to answer any question regarding any insurance matter.

Additionally, the following was testified to in the affidavit: "At Snyder's 30(b)(6) deposition, Snyder's counsel stated that the report had been produced."

---

[1] Counsel for the Defendant has received the deposition transcript of Darrell Oltman. This deposition was seven hours, and the transcript is 352 pages.

Defense counsel has examined the deposition transcript of the Snyder 30(b)(6)

representative and sees no evidence in the deposition which supports such a

statement made in an affidavit.

Following the receipt of the Motion to Compel, defense counsel discussed

the subject matter of that motion with Plaintiff's counsel, and the premature filing

of the Motion to Compel. Defense counsel specifically advised Plaintiff's counsel

again, that additional documents were to be produced, and requested that

Plaintiff's counsel advise the Court that many of the items made the subject matter

of the Motion to Compel would probably be resolved. Ex. 14.

To date, Plaintiff has continued to represent to this Court that the discovery

deadline is October 15, 2006, and refused to withdraw its Motion despite the fact

that on September 20, 2006 Snyder supplemented its Requests for Production,

produced additional documents, and served Supplemental Rule 26 Disclosures. Ex.

22, Ex. 23. Both pleadings were served by hand delivery to Plaintiff's counsel, less

than two weeks after defense counsel advised Plaintiff's counsel by letter dated

September 8, 2006, that Plaintiff's counsel's requests for additional documents

was being reviewed.

II.    **Summary Of Argument.**

This is a complex products liability lawsuit which involves the spill of sulfuric

acid from a tank at the Montgomery, Alabama location of Hyundai Motor

Manufacturing Alabama, LLC which was caused by the Plaintiff's own failure to

follow clear and plain manufacturing instructions and guidelines. The Plaintiff and

7

Defendants are three sophisticated business entities, and the case has involved the production of numerous construction, engineering, sales and other documents. Snyder Industries has diligently and in good faith searched its records for documents which are responsive to the Plaintiff's Request for Production.

It should be noted that the Plaintiff's Requests for Production contained four pages of instructions and definitions. The Requests likewise contain numerous requests for "all documents," which, as stated above, according to the Plaintiff's definition, encompasses in excess of 80 different words which constitute "document" or "documents." The *Guidelines to Civil Discovery Practice in the Middle District of Alabama* provide in pertinent part:

> Lengthy and complex preambles and definitions in discovery requests are discouraged, particularly where they operate to give unexpected breadth or surprising effect to the meaning of words which are otherwise reasonably clear.

The *Guidelines to Civil Discovery Practice in the Middle District of Alabama* also provide in pertinent part: "A request for production of documents should be reasonably particularized." When reviewed in their totality with the four pages of "lengthy and complex preambles and definitions," the Plaintiff's discovery requests are not reasonably particularized. However, Snyder Industries, Inc. read and responded to the discovery requests in a "reasonable, common sense manner" as required by the *Guidelines to Civil Discovery Practice in the Middle District of Alabama.* The fact that there may be additional documents responsive to the Plaintiff's Requests, or that documents have only recently been located, does not

8

entitle the Plaintiff to an award of costs, fees and expenses, and likewise does not entitle the Plaintiff to another deposition of a 30(b)(6) representative of Snyder Industries, Inc.[2]  The Plaintiff chose to proceed with the deposition of Snyder Industries, Inc. on August 31, 2006.  It cannot now be heard to complain when the Defendant timely asserted objections to the Plaintiff's complex discovery requests, and assert that objections have been waived because the Plaintiff did not have a privilege log on the date it received Snyder's timely asserted objections.  The objections clearly were asserted in response to discovery requests which are confusing and require continuous review of the particular request in connection with unnecessary definitions of common words, including a definition of the Defendant itself.

Snyder Industries should not be compelled to produce documents which have been clearly and plainly identified to the Plaintiff to be privileged, documents which are outside the scope of Rule 26 of the Federal Rules of Civil Procedure, documents which are not subject to discovery, and which are irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  At all times,

---

[2] If that is the case, then Snyder is also entitled to take another deposition of the 30(b)(6) representative of the Plaintiff as additional documents and a revised privilege log were produced to Snyder by letter from Plaintiff's counsel dated September 19, 2006. Ex. 24.  Moreover, although counsel has represented that the field reports from September 14, 2004 to September 19, 2004, do not exist, Ex. 16, 351-52, the 30(b)(6) representative of N.A. Water Systems specifically testified that the field operations reports were completed "every day." Ex. 25, pp. 263-260.  Plaintiff's counsel does not dispute that these documents have been requested by Snyder, and that they have not been produced.  As of the date of this filing, the documents have not been produced.

the Defendant has acted in good faith to correct any technical deficiencies, to the extent there are any such deficiencies, with respect to its discovery requests, and has acted in good faith to respond to confusing and complex discovery requests served by the Plaintiff. The Defendant's conduct in this case does not remotely warrant the draconian measures sought by the Plaintiff.

Accordingly, because the Plaintiff cannot certify to this Court that it did in good faith conferred or attempt to confer with counsel for Snyder regarding the entirety of the subject matter of the Motion to Compel in an effort to secure the disclosure prior to filing the Motion, because there was a genuine dispute about which reasonable people could differ regarding the issues made the basis of the Motion to Compel, an award of fees and costs is not appropriate in this case.

## III.    Argument.

### A.    Snyder has not waived any privileged communication.

As noted above, because of the four pages of instructions and complex definitions contained within the Plaintiff's discovery requests, Snyder asserted objections in a manner which is reasonable considering the preamble to the Plaintiff's discovery requests. As was accurately noted by Plaintiff's counsel, E. Mabry Rogers, in other litigation: "Opportunit[ies] to supplement the record to protect claims of privilege should be liberally allowed." Ex. 19, p. 4.  While Snyder believes that it has complied with the requirements to prepare its privilege log and to sustain the privileges asserted with respect to those documents, to the extent the Plaintiff is able to succeed with respect to a technical or other error, Snyder

should be allowed to supplement the information already provided.

A waiver of the privilege should not be imposed based merely upon a party's failure to assert the objection within the time provided by the Federal Rules of Civil Procedure. Pham v.. Hartford Fire Ins. Co., 193 F.R.D. 659, 662 (D.Colo.2000). Neither Rule 26(b)(5) nor Rule 34(b) of the Federal Rules of Civil Procedure mandate waiver upon a party's failure to object. To the contrary, as stated in First Savings Bank v. First Bank System, Inc., 902 F. Supp 1356, 1361 (D .Kan.1995), rev'd on other grounds, 101 F.3d 645 (10th Cir. 1996): "As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." See, e.g., In re RDM Sports Group, Inc., 277 B.R. 415, 424-25 (Bkrtcy.N.D.Ga. 2002); Ritacca v. Abbott Labs., 203 F.R.D. 332, 335 (N.D.Ill 2001); Scaturro v. Warren and Sweat Manuf. Co., 160 F.R.D. 44, 46 (M.D.Pa. 1995); Coker v. Duke & Co., 177 F.R.D. 682, 685 (M.D.Ala. 1998).

It is within the Court's discretion not to compel discovery which is patently improper. Id. at 1361. Therefore, minor procedural violations, good faith attempts at compliance, an other mitigating circumstances will militate against finding waiver. United Steel Workers of America, AFL-CIO-CLS v. Ivaco, Inc., 2002 WL 31932875 (Jan. 13, 2003).

Again, as previously argued by Plaintiff's counsel, "Courts commonly give litigants many opportunities to protect and preserve from disclosure truly privileged communications and work product. Ex. 19, p. 5. In CSX Transportation, Inc. v.

11

Admiral Insurance Company, 1995 WL 855421 (M.D.Fla. 1995), the Court allowed

the Plaintiff three opportunities to correct technical deficiencies with respect to

documents to which a claim of privilege had been asserted. Initially, CSX, the

party asserting the privilege had, in response to a case management order, solely

provided Bates stamp numbers for documents withheld. CSX was then ordered to

provide an adequate privilege log. When the Court determined, after a hearing on a

motion to compel, that the privilege log was still deficient, in response to the

opposing party's request that all documents be turned over, the Court stated:

> the Court is reluctant to pursue such a draconian course, in spite of its
> superficial appeal. The Court is concerned about the important privileges and
> protections Plaintiff has asserted in response to Defendants' discovery
> requests. Wholesale disclosure of the documents listed in the privilege logs
> could result in revelation of legitimately privileged documents. Therefore,
> Plaintiff will be permitted one last opportunity to sufficiently establish the
> existence of the invoked privileges and protections. As discussed above, the
> supplemental privilege logs sufficiently invoke CSXT's privileges, but they do
> not adequately set forth facts showing all the elements of the claimed
> protections apply. Accordingly, Plaintiff may rely on the privilege logs it has
> already provided, but shall supply Defendants with any and all affidavits,
> deposition testimony, other sworn statements, or other evidence necessary
> to establish all factors of the asserted protections.

Id. * 5.

In Powers v. CSX Transportation, Inc., 177 F.Supp. 1276 (S.D.Ala. 2001),

the defendant failed to file a privilege log prior to a hearing on motions for

protective order and to compel, even though the scheduling order required the

parties to file a privilege log. The Court allowed the defendant a "second

opportunity" to file and serve privilege logs and affidavits in connection with its

privilege claims after a hearing on the various motions. Id. at 1277, 1283.

12

Therefore, although it is the position of Snyder Industries, Inc. that it has met its burden of supporting its claim of privilege, if the Court has any additional concerns, it is entitled to an opportunity to provide further clarification.

Furthermore, in First Savings Bank v. First Bank System, Inc., 902 F.Supp. 1356 (D. Kan. 1995), the district court held that the bank's failure to timely produce a privilege log in response to requests for production of documents in expedited discovery, and its subsequent production of an incomplete privilege log did not warrant waiver of the attorney client and work product privileges as a sanction. Accordingly, the district court set aside the magistrate judge's orders which found that the bank had not carried its burden of proving the applicable privileges and overruling the motion to reconsider.

The Court noted:

> However, it is within the Court's discretion not to compel discovery which is patently improper. Courts generally consider the reasons for the failure to respond to a discovery request and reserve the harshest sanction only for the most flagrant violations. (Citation omitted).

Id. at 1362.

In the instant action, there has been no showing of bad faith on the part of Snyder Industries, Inc. To the contrary, Snyder has continued to work diligently on responding to the Plaintiff's complex and confusing discovery requests, and by supplementing its discovery responses, and in its attempts to correct claimed deficiencies with respect to documents to which a privilege objection has been asserted.

Courts in Alabama have held that the rare and harsh sanction of waiver is not justified for a delay in producing a privilege log. In <u>United States v. Gericare Medical Supply, Inc.</u>, 2000 WL 33156442 (S.D.Ala. 2000), the defendants contended that the plaintiff's failure to provide a privilege log along with its initial discovery responses worked a waiver of any privilege. The district court noted that the Court in <u>First Savings Bank</u> had ruled that waiver was too harsh a sanction under the circumstances, and that the Advisory Committee Notes to Rule 26(b)(5) mention waiver of the privilege or protection as a sanction for failure to expressly assert the privilege, not for failure to produce a privilege log. The Court refused to find that the failure to provide a privilege log with discovery responses constitutes a waiver of a privilege.

In the instant action, Snyder has provided a privilege log, and has produced a 30(b)(6) witness for deposition, **after** it produced two privilege logs in the case. The Plaintiff chose to proceed with the deposition, and had the opportunity to question the deponent at length regarding the assertion of the privilege. The Plaintiff also had the opportunity to refuse to go forward with the deposition pending any confusion it allegedly had over whether any documents were in fact privileged. The Plaintiff chose to proceed with the deposition, and cannot now be heard to complain when the deposition did not go favorably for the Plaintiff.

**B.    Privilege Log.**

To the extent there is any confusion regarding the first and second privilege logs, it is merely because several documents regarding insurance matters were

14

inadvertently placed on the privilege log simply because these documents were not

being produced.  These documents are irrelevant, immaterial and not reasonably

calculated to lead to the discovery of admissible evidence.  This was made clear by

the following statement in the August 22, 2006 letter:

> Also withheld are communications by and between Snyder Industries, Inc.
> and its insurance company and/or the third party administrator for the
> insurance company and/or its insurance agent, which are irrelevant,
> immaterial, not likely to lead to the discovery of admissible evidence and not
> discoverable under the Federal Rules of Civil Procedure.

Ex. 9.

> This was likewise reiterated by the following in the August 29, 2006 letter:

> To the extent any other documents have been withheld from production
> which may be responsive to any requests for production, such documents
> have been withheld based on objections which have previously been
> asserted, and as they are irrelevant, immaterial and not reasonably calculated
> to lead to the discovery of admissible evidence.

Ex. 10.

The fact that some documents were inadvertently placed on a privilege log,

which should not have been on a privilege log does not make them discoverable in

this action, and the Defendant maintains its objections to the production of said

documents based on relevancy and materiality grounds.

With respect to matters which have been provided to the insurance company

which provides insurance to Snyder Industries, Inc., the claims adjusting service for

the insurance carrier, and documents received from or sent to Snyder's insurance

broker, as stated in United States v. Gericare Medical Supply, Inc., 2000 WL

33156442 (S.D.Ala. 2000):

15

> The work product rule applies to documents prepared in anticipation of litigation 'by or for another party' or 'by or for the other party's representative ( including the other party's attorney, consultant, surety, indemnitor, **insurer or agent**).' Fed.R.Civ.P. 26(b)(3).

Id. * 1. Because Snyder's insurer, the claims adjusting service for that insurance company, and its own insurance agent fall within the privilege contemplated by the work product rule, Snyder should not be compelled to produce any documents sent to or received from any of these categories of persons.

Additionally, the Plaintiff contends that several redacted documents were not included on Snyder's privilege log. This contention is incorrect. The two redacted documents are listed as Items 11 and 13 on Exhibit 10 and Exhibit 21.

All documents were created after a claim for damages had been asserted against Snyder by other parties to this litigation. Ex. 26, Ex. 27. The evidence before the Court is that litigation was contemplated by Snyder prior September 20, 2004, and which is consistent with the claim for damages being asserted against Snyder in connection with a product which was alleged to be defective which was asserted in writing on September 16, 2004. The privilege logs prepared and provided to the parties clearly set out specific facts which suffice to establish the work product privilege.

### C.    Documents requested in the deposition of Snyder.

The Defendant will respond to the Plaintiff's assertion in the order in which they are made on pages 8-10 of the Plaintiff's pleading filed with the Court.

1.    The report or notes made by Snyder's employee (his name is Cullen

16

Estes) on or about September 20, 2004, about his investigation of the incident and the tank that leaked.

**Defendant's Response:**    By letter dated September 8, 2006, defense counsel advised Plaintiff's counsel that the representation made in Plaintiff's counsel's letter of September 1, 2006 was incorrect. Ex. 13. No statement was made by defense counsel in the deposition of Snyder's 30(b)(6) representative that the report had been produced. The pertinent pages of the deposition are attached to the Defendant's Notice of Filing as Exhibit 16, (pp. 65-68, 78-79. Plaintiff's counsel's error regarding this exchange has been pointed out to Plaintiff's counsel on two occasions, however, the affidavit remains pending before the Court. Ex. 13, Ex. 14. Documents which indicated the date on which Mr. Estes went to the Plaintiff have been produced to the Plaintiff. Ex. 17.

2.    Transmittal sheet (or email) by Snyder sending the results of the shop test by Snyder of the tank at issue to August Fiberglass, Core-B or any other entity or individual.

**Defendant's Response:**    The Defendant has not been able to locate a transmittal sheet or e-mail. However, the hydrotest has been produced.

3.    Mr. Oltman's copy of the document marked as Exhibit 33 to his deposition.

**Defendant's Response:**    This document has been produced.

4.    The MRP information related to the failed tank and any of its component parts.

17

**Defendant's Response:**    These documents have been produced.

5.    All other electronic information stored in Snyder's tracking system regarding the failed tank and any of its component parts.

**Defendant's Response:**    As has been provided in Snyder's answers to interrogatories, there is no retention policy with respect to e-mail communications. Snyder has been unable to locate any valid electronic data.  Additionally, in the deposition of the Snyder representative, Snyder does not keep a record of electronic documents.  Ex. 16, pp, 120.

6.    Mr. Oltman's copy of the CED report.

**Defendant's Response:**    The Defendant has produced a copy of the CED report.  Mr. Oltman testified that he did not make any "comments, markings, anything on it."  Ex. 16, p. 268.  Accordingly, as the Defendant has complied with the Plaintiff's discovery requests which do not include identical copies, this request is moot.  See definition of "document" and "documents" in Plaintiff's First Request for Production to Defendant Snyder Industries, Inc.

7.    The Snyder-AFC distributorship agreement.

**Defendant's Response:**    There is no Request for Production for any distributorship agreement.  However, even assuming there was a formal request, there was no written agreement at the time of the sale of the tank made the basis of this litigation.

8.    Mr. Oltman's written (electronic or paper) documents regarding his study and determinations regarding the glue used on the Snyder-fabricated flange

18

adapter.

**Defendant's Response:**    Mr. Oltman testified that he simply determined that there was one glue that "does everything."  Therefore, instead of using different glues for CPVC and for PBC, there was "a recommendation of purchasing that we could consolidate."  Ex. 16, pp. 243-47.  The Plaintiff has not requested any such documents as of the date of this filing in a Request for Production served on Snyder.

9.    All Snyder drawings regarding the failed tank or any of its components, including but not limited to prior versions of any and all final drawings.

**Defendant's Response:**    These documents have been produced by both Snyder and Augusta Fiberglass.  Ex. 15, Ex. 18.

10.    All Snyder insurance policies applicable or possibly applicable to the incident.

**Defendant's Response:**    The Defendant does not know what is meant by "possibly applicable."  The Defendant has produced a copy of the primary policy of insurance issued to Snyder Industries, Inc.(premiums and data for gross receipts redacted).

11.    Snyder's internal hydrotest procedure.

**Defendant's Response:**    Documents regarding the hydrotest have been produced.

12.    Snyder's Inspection Guidelines as referenced by Mr. Russ McDonald.

19

**Defendant's Response:**    The Guidelines for Use and Installation were shipped with the tank and have been in the possession of the Plaintiff since the date it received the tank.  They were also produced with the Defendant's Rule 26 disclosures in June of 2006, and in response to the Plaintiff's Requests for Production.  The Defendant has also produced additional documents responsive to this particular request.

13.    Shop packer for the tank and its component parts.

**Defendant's Response:**    These documents have been produced.

14.    Bill of material for the tank.

**Defendant's Response:**    This document has been produced.

15.    Final inspection criteria for the tank.

**Defendant's Response:**    Document(s) have been produced.

**D.    Work Product.**

It does not appear from the Motion to Compel that there is any serious contention that the documents sought by the Plaintiff do in fact constitute work product.[3]  Rather, the Plaintiff simply contends that these documents are due to be produced because any privilege which attaches to the documents has been waived.  As noted above, in the event the Court does conclude that the privilege logs provided to the parties in this litigation are inadequate, the Defendant respectfully

---

[3] The Plaintiff's Motion simply states "even if the work product doctrine applies, . . ." (Plaintiff's Motion, p. 2, para. 11).  The Plaintiff has not made any showing that it has substantial need of the materials in preparation for the Plaintiff's case and is unable without undue hardship to obtain substantial equivalent of the materials by other means as required by Rule 26(b)(3).

requests additional time to correct any technical deficiencies. However, because

the privilege logs and objections are adequate, and because the Plaintiff has not

borne its burden of showing that the materials should nonetheless be available to it

based on substantial need and undue hardship, the work product doctrine applies to

the materials which have been withheld by Snyder Industries, Inc., and the

Plaintiff's Motion is due to be denied in its entirety.

The work product doctrine, first established by the Supreme Court in

Hickman v. Taylor, 329 U.S. 495 (1947), and now codified in Rule 26(b)(3) of the

Federal Rules of Civil Procedure, provides qualified protection to "documents and

tangible things ⋯ prepared in anticipation of litigation or for trial" by or for a party,

or by or for a party's representative. Fed.R.Civ.P. 26(b)(3). Rule 26(b)(3) provides

in part:

> (3) Trial Preparation: Materials⋯⋯ [A] party may obtain discovery of
> documents and tangible things otherwise discoverable under subdivision
> (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for
> another party or by or for that other party's representative (including the
> other party's attorney, consultant, surety, indemnitor, insurer, or agent) only
> upon a showing that the party seeking discovery has substantial need of the
> materials in the preparation of the party's case and that the party is unable
> without undue hardship to obtain the substantial equivalent of the materials
> by other means. In ordering discovery of such materials when the required
> showing has been made, the court shall protect against disclosure of the
> mental impressions, conclusions, opinions, or legal theories of an attorney or
> other representative of a party concerning the litigation.

The work product doctrine was created to "prevent exploitation of a party's

efforts in preparing for litigation." Admiral Insurance Co. v. United States District

Court, 881 F.2d 1486, 1492 (9th Cir. 1989). One court has held that "litigation

21

need not necessarily be imminent ⋯ as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." United States v. Davis, 636 F.2d 1028 (5th Cir.),[4] cert. denied, 454 U.S. 862 (1981).

In the instant action, it is clear that the documents that have been withheld by Snyder based on the work product doctrine would not have been generated but for the pendency or imminence of litigation. Snyder Industries, Inc. was contemplating litigation prior to September 20, 2004, as that is the date on which Snyder Industries sent a representative to the Hyundai plant. Ex. 16, p. 241. Litigation was being contemplated as "noise was being made about who was going to pay or who is going to replace or who is going to pay for all of this." Ex. 16, p. 241. All documents listed on the privilege log were created after a claim had been asserted against Snyder for a product which was alleged to be defective. These documents are clearly within the privilege encompassed by the work product doctrine.

WHEREFORE, PREMISES CONSIDERED, Snyder Industries, Inc. respectfully requests that this Court enter an Order denying the Plaintiff's Motion to Compel in its entirety.

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

\s\ Mark W. Lee
MARK W. LEE


\s\ Dorothy A. Powell
DOROTHY A. POWELL


**OF COUNSEL:**

PARSONS, LEE & JULIANO, P.C.
2801 Highway 280 South
300 Protective Center
Post Office Box 530630 (35253)
Birmingham, AL 35223-2480
(205) 326-6600

## CERTIFICATE OF SERVICE

    I hereby certify that on this the 25th day of September, 2006, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Mr. E. Mabry Rogers, Ms. Rhonda Caviedes Andreen and Mr. Jack Owen

/s/  Dorothy A. Powell
OF COUNSEL