IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **IPSCO STEEL (ALABAMA) INC.,** | * | FILED SEP 10 '03 PM 4:48 USDCALS |
| **Plaintiff,** | * | CIVIL ACTION NO. |
| vs. | * | 01-0730-CB-C |
| **KVAERNER U.S. INC.,** | * | |
| **Defendant.** | * | |

**KVAERNER'S BRIEF IN OPPOSITION TO DANIELI'S
MOTION TO COMPEL**

**Overview**

Kvaerner U.S. Inc. ("Kvaerner") produced to Danieli Corporation and Danieli & C. Officine Meccaniche S.p.A. ("Danieli") approximately 650,000 TIFF images, which Kvaerner estimates to be approximately 216,500 documents.[1] Kvaerner withheld from this production only 2,536 documents, or approximately 1.2% of the total produced. This percentage is so small because Kvaerner carefully screened the documents it withheld. Kvaerner's screening process first involved instruction regarding the rules of privilege. Kvaerner personnel pulled from production documents which initially met objective criteria indicating potential privilege. Then, Kvaerner employees reviewed these pulled documents to determine that the pulled documents met the objective criteria that indicated potential privilege. Next, the withheld documents were reviewed by Kvaerner's outside counsel and legal assistants to verify that the withheld documents

---

[1] Kvaerner's experience is that there are 3 pages per "document" (*e.g.*, a 3-page letter would be one document).

EXHIBIT 19

were in fact privileged. Kvaerner "put back" a majority of the documents that had been screened out by the objective filtering. This subjective review was time-consuming and expensive. Nevertheless, Kvaerner engaged in this subjective, second screening process, to ensure that the electronic documents being withheld met the legal definitions of attorney-client and/or work product privileges.

Although Kvaerner spent significant resources verifying the legitimacy of its withheld documents (as Kvaerner was required to do), Danieli now seeks to compel Kvaerner to produce almost every electronic document that has been withheld, and Danieli makes every conceivable argument available (and many inconceivable arguments as well). Even though Kvaerner ultimately withheld only some 1.2% of its electronic documents, Danieli challenges all but 113 documents. That is, Danieli objects and seeks to compel Kvaerner to produce 95.6% of the documents on Kvaerner's privilege log. Danieli's challenges are sweeping; Danieli leaves no stone unturned. Danieli's sweeping challenges are surprising, particularly considering that Danieli is "guilty" of the same "deficiencies" that it now charges to Kvaerner. In its own privilege logs for hard copy and electronic documents (**Exhibit "A"** hereto), Danieli did not include all information formally required by the Court (i.e., the 10 categories of factual detail established by the Court). For example, Danieli withheld documents and listed them on its privilege logs even though the logs do not indicate they were sent to an attorney, or did not contain a date, etc.

A non-exhaustive review of Danieli's privilege logs shows the deficiencies or Danieli's "breaches" of the Court Order:

2

**Danieli's Hard Copy Document Privilege Log**

DP 43  Description: Report regarding Kvaerner's Notices of Deficiency to Danieli Corp.
Author: T. Halapin

Danieli's "Breach" of the Court's Order: No recipient identified.

**Danieli's Electronic Document Privilege Log**

DPE102  Description: Danieli Corp. Internal Project Report including financial summary and engineering costs.
Privilege: Trade secret and/or proprietary pricing information; irrelevant

Danieli's "Breach" of the Court's Order: No recipient identified.

DPE127  Description: Chart of costs for IPSCO project
Privilege: Trade secret and/or proprietary pricing information; irrelevant

Danieli's "Breach" of the Court's Order: No date, author or recipient.

DPE128  Description: Chart of costs for IPSCO project
Privilege: Trade secret and/or proprietary pricing information; irrelevant

Danieli's "Breach" of the Court's Order: No date, author or recipient.

DPE129  Description: Danieli Corp. chart of payment schedule for IPSCO project.
Privilege: Trade secret and/or proprietary pricing information; irrelevant

Danieli's "Breach" of the Court's Order: No date, author or recipient.

Danieli's "breaches" are understandable (but perhaps require clarification), given the nature of electronic documents and the unavailability of all data required by the local rules. For example, some electronic documents do not have a date identified on them.

3

Accordingly, it is understandable that privilege logs will not list a date of the electronic documents. It is not appropriate for a producing party to make up a date. In this instance, Kvaerner either left the date field blank or filled in the date field with zeros. Danieli did the same. However, Danieli now assigns blame to Kvaerner (for this and for other technical "deficiencies"). Kvaerner has fairly complied with the requirements of preparing its privilege log, and Kvaerner will continue to correct any technical deficiencies as they become apparent (assuming the "deficiencies" can be corrected – electronic documents simply may not contain all pieces of data that might exist for hard copy documents, as Danieli's own privilege logs reflect). Moreover, all parties in this lawsuit have continued to revise their privileged logs and to submit additional information to enable the Court to make an informed decision as to the propriety of asserted privileges. Finally, Kvaerner relies on the affidavits of James Tedjeske, Greg Youchak and Peter Elliott (copies of which are attached hereto as **Exhibits B, C and D, respectively**) to further support its claims of privilege.

### Legal authority

Opportunity to supplement the record to protect claims of privilege should be liberally allowed. Although Kvaerner believes it has already complied with the requirements to prepare its privilege logs and document and to sustain its privileges, to the extent Danieli succeeds in proving a technical or other error, Kvaerner should be entitled to supplement the information already provided, particularly in light of the enormous volume of documents Kvaerner has already produced.

Courts commonly give litigants many opportunities to protect and preserve from disclosure truly privileged communications and work product. In *CSX Transportation, Inc. v. Admiral Insurance Company*, 1995 WL 855421 (M.D. Fla. 1995), the court gave the plaintiff no less than three opportunities to fix inadequate assertions of privilege. *Id.* at *2. The plaintiff first filed an inadequate privilege log listing only the Bates numbers of the documents. *Id.* at *5. In response to defendants' motion to compel and a hearing on the motion, the court ordered the plaintiff to provide an adequate privilege log. *Id.* After the plaintiff filed the second privilege log, a second motion to compel was filed and a second hearing conducted in which the court further held that the second privilege log, while providing some additional detail, was still inadequate. *Id.* *3. The court recognized that although not necessarily required to meet its burden, a party may "refer to other evidentiary submissions, such as affidavits, to support otherwise insufficient privilege logs to establish the elements of a privilege or immunity exist." *Id.* at *4. However, with its second log, the plaintiff "failed to provide any affidavits to rescue its inadequate privilege logs." *Id.* at *5. Nevertheless, the court refused to follow the "draconian course" of waiver, and found that "wholesale disclosure of the documents listed in the privilege logs could result in revelation of legitimately privileged documents." *Id.* Rather than risk the disclosure of "legitimately privileged documents," the court gave the plaintiff "one last opportunity to sufficiently establish the existence of the invoked privileges and protections." *Id.* The court suggested that the plaintiff supplement the privilege log with affidavits and other evidence supporting **its** claim of privilege. *Id.* at *6.

5

Unlike CSX, Kvaerner both filed its privilege log and presents affidavits in support of its privilege log. Kvaerner has met its burdens, but even if there remain additional concerns, Kvaerner is entitled to an opportunity to provide further clarity.

A court's failure to consider privilege logs and affidavits (even those that may be filed after a hearing on a motion to compel to rectify a procedural flaw) can be reversible error. *First Savings Bank v. First Bank System, Inc.*, 902 F. Supp. 1356 (D. Kan. 1995). In *First Savings Bank,* the defendant amended its privilege log to cure deficiencies after a hearing on a motion to compel in which the magistrate judge ruled the privilege log inadequate. *Id.* Nevertheless, the magistrate judge found waiver. *Id.* The reviewing court found that the magistrate's holding was in error. *Id.* The court found the untimely filing of a privilege log, followed by the subsequent filing of what was determined to be an incomplete privilege log still did not warrant the imposition of waiver of the privilege as a sanction. *Id.* at 1365. The court noted that "the federal rules, case law and commentators suggest . . . waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Id.* at 1361. Further, the court noted that "rigid insistence on certain logging or indexing procedures may go well beyond that, particularly in larger cases. Unless there has been a bad-faith failure to comply with a reasonable identification effort, automatically finding a waiver of the privilege would be unduly harsh." *Id.* at 1261. There has been so showing, nor even an allegation, of bad faith on Kvaerner's part. To the contrary, Kvaerner has continued to work diligently on the simultaneous tasks of (1) producing millions of pages of hard copies and electronic copies of documents; (2) inspecting millions of pages of hard

6

copies of IPSCO and Danieli documents released in piecemeal fashion; (3) fighting IPSCO's unreasonable efforts to oppose and frustrate electronic discovery; and, (4) cooperating in an aggressive deposition schedule.

In this district, trial judges allow parties multiple opportunities to establish the claim of privilege, even when the initial claim of privilege was procedurally flawed. In *Powers v. CSX Transportation, Inc.*, 177 F. Supp. 1276 (S.D. Ala. 2001), Judge Richard W. Vollmer, Jr. found that a party's failure to get it right in the first instance is not fatal. In *Powers*, Judge Vollmer, allowed the defendant a "second opportunity" to establish its claim of privilege by filing a privilege log and supporting affidavits after the hearing on "various motions for protective order and motions to compel." *Id.* at 1277, 1283. In *Powers*, the defendant asserted a privilege and filed a general affidavit to support the privilege. *Id.* at 1282. The court found the affidavit inadequate. Significantly, the plaintiff did not file any privilege log prior to the hearing. *Id.* The court noted that the scheduling order required the parties to file a privilege log in the first instance. *Id.* Nevertheless, the court allowed the defendant to submit a privilege log and submit the identified documents for *in camera* inspection after the hearing. *Id.* at 1283. In the current case, Kvaerner has attempted to comply with the parties' agreement and this Court's order by filing its privilege logs and supplementing with affidavits. To the extent there are remaining concerns, then as in *Powers*, this Court should give Kvaerner liberal opportunity to establish its claim of privilege, and then to the extent there yet remain concerns, the Court may consider the documents individually, in light of the supporting affidavits.

## Attorney-Client Privilege

This Court's consideration of waiver is against the backdrop of the revered policy that promotes full disclosure between an attorney and a client. The attorney-client privilege is "one of the most sacred relationships within the law." *Renfroe v. State*, 275 So. 2d 692, 697 (Ala. Crim. App. 1973). The United States Supreme Court has noted that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 499 U.S. 383, 388, 101 S. Ct. 677, 682 (1981), *citing* 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). The purpose of this doctrine is to "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* Further, "[d]ocuments within the scope of the attorney-client privilege are 'zealously protected.'" *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), *citing* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2017 (1970); see *Chore-Time Equipment, Inc. v. Big Dutchman, Inc.*, 255 F. Supp. 1020, 1021 (W.D.Mich.1966) ('[I]t generally is acknowledged that the attorney-client privilege is so sacred and so compellingly important that the courts must, within their limits, guard it jealously.'). To allow a party to be penalized by a mere technicality is inconsistent with this longstanding principle and chips away at this protection. The same policy considerations apply with equal weight and vigor to documents that are work product. As the court has noted, documents, or portions of documents, which reflect the mental impressions or other work of counsel are absolutely protected. Otherwise discoverable information if created in anticipation of

litigation is protected as work product unless the requesting party satisfies its burden of a compelling need or the impossibility of obtaining the same information elsewhere. Danieli has not met this burden.

### Work Product and Core Work Product Documents Retain Privilege

Kvaerner (as the other parties in this case) must disclose the identity of expert witnesses and make available the "data or other information considered by the [expert] witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(B). Danieli seeks to impose a different rule, demanding production of "core attorney work product." Danieli relies on a 1994 case in the Southern District of Florida (which is *not* the law in Alabama and has not been adopted by the Eleventh Circuit). The *Gonzalez-Gorrondana* case was published shortly after the 1993 amendments to the rules of procedure. Since *Gonzalez-Gorrondona*, many other courts have considered the interplay between the 1993 amendments to the federal rules and the work product doctrine. With the benefit of reflection, these courts have affirmed that disclosure of core work product to a testifying expert does not abrogate the protection of such information. Although Danieli has cited some authority for the proposition that work product documents disclosed to an expert must be produced, there are many compelling cases holding the contrary, and where (as here) the trial is scheduled to be held before a federal judge,[2] there is less reason to compel production, because the federal judge as fact finder is capable of determining the credibility and reliability of expert witnesses, particularly where sophisticated counsel

---

[2] Kvaerner maintains that this federal case should be dismissed and tried in the Circuit Court of Mobile County, Alabama, before a jury. Should Kvaerner be forced to file an answer in this federal case, Kvaerner reserves the right to demand a jury trial to the extent allowed by law.

9

will prepare their counter-testifying experts. Danieli simply does not require Kvaerner's work product to examine Kvaerner's expert witnesses, and Danieli has not met its burden to demonstrate an extraordinary need for this information. Kvaerner provides the following detailed authority and citation, to clarify just how sacred the work product doctrine is held in courts across the country:

*Krisa v. Equitable Life Assur. Soc.*, 196 F.R.D. 254, 259-60 (D.C. Pa. 2000):

> The policy reasons supporting the "bright-line" rule in favor of disclosure of materials disclosed to an expert are not compelling and ignore the policy considerations that compel protection of core work product. One court that held in favor of discovery of documents disclosed to an expert noted that "if an attorney must consult with an expert in order to formulate theories of the case or understand evidence, that attorney can consult freely with a non-testifying expert, thereby protecting any opinion from discovery." *Barna v. United States of America*, No. 95-CV-6552, 1997 WL 417847 at *3 (M.D.Ill., July 23, 1997). This approach ignores the economic burdens retaining an extra expert would place on many litigants. Such an approach would necessarily disadvantage litigants without the resources to retain testifying and non-testifying experts. The policy reason apparently given the most weight by courts in favor of the "bright-line" rule for production of materials disclosed to an expert is that an expert cannot be properly impeached without knowledge of all the relevant materials that shaped that expert's opinion. *E.g., Karn*, 168 F.R.D. at 639. In *Bogosian*, however, our Court of Appeals noted that "the marginal value on cross-examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure of documents consisting of core attorney's work product." 738 F.2d at 595. The Third Circuit recognized that even where an expert's opinion originated with the attorney, the most effective way to discredit an opposing expert is the presentation of one's own credible expert. "The risk of an attorney influencing an expert witness does not go unchecked in the adversarial system, for the reasonableness of an expert

10

opinion can be judged against the knowledge of the expert's field and is always subject to the scrutiny of other experts." *Haworth,* 162 F.R.D. at 295-296. Because the law requires expert testimony where the subject matter is outside the common knowledge of the finder of fact, the most effective and dependable manner of discrediting an opponent's expert is the presentation of a credible expert who can dispute, based upon authorities in that expert's field, the conclusions of the other party's expert.

Adopting a "bright-line" rule in favor of mandating production of attorney work product, while increasing the potential for a party to effectively cross- examine an opponent's expert, abridges the attorney work product privilege without specific authority to do so. In *Hickman,* the Supreme Court explained the rationale for the work product privilege as follows:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Hickman,* 329 U.S. at 510-11, 67 S.Ct. 385. An interpretation of Rule 26 that holds that a party must produce documents containing work product that are disclosed to its expert ignores the language of Fed.R.Civ.P. 26(b)(3), which requires the production of documents containing work product only when the requesting party shows necessity and undue hardship to obtain the substantial equivalent of such

11

documents by other means. An interpretation of Rule 26 that mandates the production of core work product disclosed to an expert would render the language in Rule 26(b)(3) superfluous.

*Moore v. R.J. Reynolds Tobacco Co.*, 194 F.R.D. 659, 664 (D.C. Iowa, 2000):

> [O]pinion work product has nearly absolute immunity from discovery, and such work product can be discovered only in very rare and extraordinary circumstances. *See Baker*, 209 F.3d 1051, 1053-54; *Murphy*, 560 F.2d at 336. Even when opinion work product is shared with an expert witness in preparation for testifying at trial, the *Murphy* courts' reasoning and a reading of Rule 26(b)(3) compel this court to conclude that, in this Circuit, such opinion work product has nearly absolute immunity from discovery. This conclusion is bolstered by the persuasive reasoning of those courts holding attorney-opinion materials considered by an expert in preparation for trial are protected from required disclosure. *See, e.g., Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 593-95 (3d Cir.1984); *Nexxus*, 188 F.R.D. at 10-11; *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 292-94 (W.D.Mich.1995). To overcome this immunity, Defendants bear the heavy burden of establishing a rare and extraordinary circumstance entitling them to obtain these materials. *See Baker*, 209 F.3d 1051, 1053-54; *Pittman*, 129 F.3d at 988; *Murphy*, 560 F.2d at 336."

*Estate of Chopper v. R.J. Reynolds Tobacco Co.*, 195 F.R.D. 648, 650 (D.C. Iowa, 2000):

> Ordinary work product includes raw factual information. *Id.* This work product is not discoverable unless the party can show a substantial need for the materials and cannot obtain the substantial equivalent of the materials by other means. *Id.;* see Fed.R.Civ.P 26(b)(3).
>
> Opinion work product, in contrast, contains counsel's mental impressions, conclusions, opinions and legal theories. *Baker*, 209 F.3d at 1053-1054; Fed.R.Civ.P. 26(b)(3). Examples include notes and memoranda of a party's attorney or agent from a witness interview, and the selection and compilation of documents in preparation for trial. *Id.* (citing *Petersen*, 967 F.2d at 1189 (stating mere acknowledgment of attorney's

12

> selection and compilation of business records in preparation for litigation would reveal mental impressions concerning the potential litigation); *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir.1973) (holding attorney's personal recollections, notes and memoranda from interviews are absolutely protected work product); and *Upjohn Co. v. United States*, 449 U.S. 383, 399-400, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes")). Opinion work product "enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Baker*, 209 F.3d at 1054 (citing *In re Murphy*, 560 F.2d 326, 336 (8th Cir.1977)).

*Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 642-43 (D.C.N.Y. 1997) (scope of data or material considered by expert – which must be produced – extends only to factual material and not to core attorney work product):

> Two other federal district court rulings subsequent to the 1993 Amendments to the Federal Rules on the interplay between opinion work product and expert disclosure, however, held that Rule 26(a)(2)(B) did not effect a waiver of legitimate claims of work product privilege under Rule 26(b)(3) by virtue of an expert's consideration of the privileged materials. Downplaying the significance of effective cross-examination and impeachment of expert witnesses when weighed against the "strong policy against disclosing an attorney's opinion work product," the court in *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289 (W.D.Mich.1995) held that Rule 26(a) should not be read as defeating a claim of work product privilege. *Id.* at 295 ("For the high privilege accorded attorney opinion work product not to apply would require clear and unambiguous language in a statute. No such language appears here." (citation omitted)); *accord All West Pet Supply Co. v. Hill's Pet Prods. Div.*, 152 F.R.D. 634, 638 (D.Kan.1993)(finding work product portions of documents protected despite being shared with expert witness); *see also Bogosian v. Gulf Oil Corp.*, 738 F.2d 587,

13

593-94 (3d Cir.1984) ("Even if examination into the lawyer's role [in framing an expert's opinion] is permissible, ... the marginal value in the revelation on cross-examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure of documents consisting of core attorney's work product."). The *Haworth* court further interpreted the advisory committee's notes to the 1993 amendments to Rule 26(a)(2) as clarifying only that *factual* material contained in privileged documents considered by an expert must be disclosed. *Haworth*, 162 F.R.D. at 295; *see All West Pet Supply Co.*, 152 F.R.D. at 639 n. 9.

Having reviewed the relevant case law, the text of Rule 26(a) and (b) and the associated commentary provided by the advisory committee, the Court holds that "the data or other information considered by [an expert] witness in forming [his] opinions" required to be disclosed in the expert's report mandated under Rule 26(a)(2)(B) extends only to factual materials, and not to core attorney work product considered by an expert. In so holding, the Court agrees with the *Haworth* court's view that Rule 26(a) should not be construed as vitiating the attorney work product privilege, and the laudable policies behind it, in the absence of clear and unambiguous authority under the Federal Rules of Civil Procedure. *See also Hickman v. Taylor,* 329 U.S. 495, 514, 67 S.Ct. 385, 395, 91 L.Ed. 451 (1947)("[U]ntil some rule or statute definitely prescribes otherwise, we are not justified in permitting discovery [of attorney work product] as a matter of unqualified right."). The Court notes that should an expert deny being influenced by the attorney who retained him or her for litigation, the burden will be on the expert to establish, to the satisfaction of the trier of fact, adequate and independent bases for his or her opinions. Moreover, the expert's opinion is always subject to the scrutiny of other experts. *Haworth*, 162 F.R.D. at 296. In sum, "[t]he risk of an attorney influencing an expert witness does not go unchecked in the adversarial system." *Id.* at 295. Finally, the party seeking discovery of attorney work product materials may in compelling circumstances overcome the privilege, the issue to which the Court now turns."

*Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289 (D.C. Mich. 1995):

> Accordingly, I can find nothing in any version of subdivisions (b)(3) and (b)(4), or the committee notes, that suggests core attorney work product was discoverable under subdivision (b)(4). Because there was no standard for core work product in subdivision (b)(4) that was different from the one in subdivision (b)(3), this Court concludes that the protection accorded an attorney's mental impressions and opinions by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and substantially codified in 1970 in Rule 26(b)(3), was intended to apply to discovery from experts. A number of courts are in substantial agreement. *See, e.g., Bogosian*, 738 F.2d at 594-95; *Dominguez v. Syntex Laboratories, Inc.*, 149 F.R.D. 158 (S.D.Ind.1993); *Hamel v. General Motors Corp.*, 128 F.R.D. 281, 282-83 (D.Kan.1989); *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 108 F.R.D. 283 (M.D.N.C.1985).

Kvaerner acknowledges that its testifying experts may have a duty to produce the factual data upon which they rely to formulate their opinions, at the appropriate time (assuming such is properly requested). However, Kvaerner has no legal duty to produce work product material, core work product material, or the material protect by the attorney-client privilege.

### The "Peter Elliott" Documents

Danieli seeks to impose on Kvaerner a duty greater than that required by law. Danieli acknowledges that the work product privilege protects materials which were prepared in anticipation of litigation. Danieli Brief in Support of Motion to Compel Production of Kvaerner's Non-Privileged Electronic Documents, pp 7-8. However, Danieli goes further, making the unsupported conclusion that documents prepared for a presentation to a third party are not privileged, even if the documents were not disclosed.

The facts concerning the "Peter Elliott" documents are that they were created when Kvaerner was anticipating a claim or litigation might follow the budget reconciliation meeting, but only if the good faith negotiations required by the contract were unsuccessful. The Peter Elliott documents were made in anticipation of a claim or litigation. See Affidavit of Peter Elliott, **Exhibit D** hereto. The litigation centered, in part, on the budget reconciliation and analyses of Danieli's deficient and defective equipment and work. Peter Elliott, upon and with the advice of counsel, and under the supervision of counsel, prepared many documents in anticipation of submitting or defending against a claim or litigation. Some documents prepared by Peter Elliott were ultimately disclosed to IPSCO, and these have been made available to Danieli. But other documents were not disclosed to IPSCO, and to the extent these documents were made in anticipation of a claim or litigation, they are privileged. The fact that Peter Elliott was also working on a "business" meeting does not change the nature of the documents protected by the privilege. Kvaerner has met its burden to demonstrate that the claimed documents are privileged.

## Conclusion

Danieli's Motion to Compel is heavy on allegations but light on authority. Daniel apparently hopes that if it makes enough charges, something will stick. Although Kvaerner only withheld some 1.2% of its electronic documents, Danieli essentially wants them all. Kvaerner has complied in good faith with the requirements to screen and even double check the electronic documents it has withheld from production. Kvaerner has worked with Danieli and will continue to work with Danieli to resolve any technical

discrepancies. However, Kvaerner is not required to produce documents protected by the attorney-client or work product privileges.

Mabry Rogers (ROGEE7255)
J. David Pugh (PUGHJ8590)

Address of Counsel:

Bradley Arant Rose & White L.L.P.
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000

Thomas Troy Zieman, Jr. (ZIEMT4577)
Robin B. Taylor (TAYLR2258)
Attorneys for Kvaerner U.S. Inc.

Address of Counsel:

Zieman, Speegle, Jackson & Hoffman, L.L.C.
Five Dauphin Street, Suite 301
Post Office Box 11
Mobile, Alabama 36601
Telephone:   (251) 694-1700
Facsimile    (251) 694-1998