IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

N.A. WATER SYSTEMS, LLC,           )
as successor by merger to          )
USFILTER ENGINEERING &             )
CONSTRUCTION, INC.,                )
                                   )
          Plaintiff,               )     CIVIL ACTION NO.: 2:06-CV-335-MEF
                                   )
V.                                 )
                                   )
AUGUSTA FIBERGLASS COATINGS,       )
INC. and SNYDER INDUSTRIES, INC.,  )
                                   )
          Defendants.              )

## DEFENDANT AUGUSTA FIBERGLASS COATINGS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

In compliance with the Court's Order (Doc. 14) for response to the Motion to Compel filed by plaintiff N. A. Water Systems, Inc. (hereinafter "NAWS") (Doc. 12), defendant Augusta Fiberglass Coatings, Inc. (hereinafter "AFC") submits the following:

Nature of the Case

In this action, NAWS seeks recovery of alleged damages, most of them incidental and/or consequential, for costs associated with the September 14, 2004, spillage of sulfuric acid from a storage tank located at the Hyundai Motors manufacturing plant in Montgomery, Alabama. AFC supplied the tank to NAWS pursuant to a contract entered into on August 25, 2003. Co-defendant Snyder Industries, Inc. manufactured the tank, and shipped it directly from Snyder's Marked Tree, Arkansas, facility to the Hyundai plaint in Montgomery.

The Contract to Supply the Sulfuric Acid Tank

The negotiations leading to the contract by which AFC supplied the sulfuric acid tank to NAWS were essentially a three-step process: (1) U. S. Filter (NAWS) sends out to a number of potential bidders, a "Request for Quote," ("RFQ") or bid package; (2) vendors, such as AFC, submit quotes; (3) and then the buyer (U. S. Filter [NAWS]) decides which quote to accept and sends out a purchase order. (Jerry Wolfe depo. Pp. 301 – 02)[1]

In response to receipt of NAWS' bid package, AFC submitted a quote on July 8, 2003, to supply four tanks, including "Sulfuric Acid tank # 713," which is the tank at issue. Exh. 14, Wolfe depo. AFC's bid referenced U. S. Filter's (NAWS) Project #7041-01-01, and AFC's reference number 7790(307-036)GM. See Wolfe depo., pp. 294-98. AFC's quote to U. S. Filter (NAWS) included the statement: "AFS's quotation is conditioned upon the attached commercial terms," (Wolfe depo. p. 297), which appear on the last page of Exh. 14, NAWS production number N001_00029, and state in pertinent part:

AUGUSTA FIBERGLASS
TERMS AND CONDITIONS

1.    **The prices quoted are expressly conditioned upon the terms and conditions in this document. The terms hereunder stated supersede all other terms, understandings and customs inconsistent with this document.**

\*\*\*

2.    **AFC warrants that the goods provided shall be free of defects in our design, material and workmanship for a period of one year.**

---

[1] Jerry Wolfe was tendered as the sole employee of NAWS to give testimony in response to Snyder's Notice to take the Rule 30(b)(5) and (6) deposition of NAWS on a variety of listed topics, including "[t]estimony regarding the purchase... of the product made the basis of the Plaintiff's Complaint." (Exh. 5, p.2, ¶3, Wolfe depo.). See also pp. 292-93, Wolfe depo. In an attempt to minimize confusion, this response will refer to exhibits that have been identified during depositions with the same deposition exhibit number, and will identify exhibits that have not been used during depositions with lettered exhibit references.

THE WARRANTY SET FORTH ABOVE IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED BY LAW OR TRADE USAGE. SELLER IS NOT LIABLE FOR DEFECTS OR DAMAGE DUE TO NEGLIGENCE (OTHER THAN THAT OF SELLER), ACCIDENT, ABUSE, IMPROPER INSTALLATION (OTHER THAN THAT BY SELLER) IMPROPER OPERATION, OR MAINTENANCE, OR ABNORMAL CONDITIONS.

SELLER SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES. SELLER'S WARRANTY LIABILITY IS LIMITED TO THE REPAIR OR REPLACEMENT OF THE GOODS AT THE SELLER'S DISCRETION. SELLER SHALL NOT BE RESPONSIBLE FOR COSTS IN EXCESS OF THE PURCHASE PRICE.

\*\*\*

On July 29, 2003, AFC submitted a revised quote to U. S. Filter (NAWS) for "Sulfuric Acid Tank # 713" (Exh. 15, Wolfe depo.), which contained the same references to U. S. Filter's (NAWS) Project #7041-01-01, and AFC's reference number 77909307-036)GM, and the same statement that AFC's quotation is conditioned upon the attached commercial terms, attached to which were the same AFC Terms and Conditions.

On August 25, 2003, U.S. Filter (NAWS) sent a Purchase Order to AFC for the purchase of two high density polyethylene tanks, including the subject sulfuric acid tank, item # 713, which is the subject of NAWS' lawsuit. (Exh 17, and pp. 308-11, Wolfe depo.)

Immediately above the signature boxes on the purchase order appear the following statement:

2. This Purchase Order, along with all documents attached and incorporated herein by reference, constitutes the entire agreement between Supplier/subcontractor and US Filter with respect to the subject matter hereof. No attempt to change the terms of this purchase order, whether by

conflicting acknowledgement or otherwise, shall be binding upon US Filter unless accepted by an authorized official US Filter [*sic*] in writing....

The Purchase Order is signed "Roth, P, Agent, Procurement Equipment Buyer" who was Paul Roth, the person authorized on behalf of U. S. Filter (NAWS) to issue purchase orders, which is why  immediately above his signature on the purchase orders the words" Purchasing Authorized signature" appear. (Wolfe depo. pp. 306-08).

On the purchase order (Exh. 17), printed at U. S. Filter's direction (Wolfe depo. p. 306), also appears the following statement:

This order is in accordance with USFilter Specification 7041-01-008 and all documents included in our RFQ and Augusta Fiberglass Proposal #7790(307-036)GM.

According to the NAWS employee tendered to testify with respect to the process for requesting bids, receiving bids and issuing purchase orders by NAWS or U. S. Filter (Wolfe depo. pp. 292-93), the bid solicitation package, AFC's quote and the purchase orders are the only documents that make up the contract between AFS and U. S. filter (NAWS) to supply the sulfuric acid tank. (Wolfe depo., pp. 311-12).

By U. S. Filter's (NAWS) issuance of its purchase order for the sulfuric acid tank (Exh. 17) on its form containing language inserted at its direction stating the purchase to be in accordance with AFC's Proposal #7790(307-036)GM, which includes the limitations of liability and damages contained in AFC's Terms and Conditions, U. S. Filter (NAWS) agreed that its rights to recover from AFC for the losses claimed in this action would be limited to costs not in excess of the purchase price, and that AFC would not be liable for any incidental or consequential damages. All of NAWS' argument in support of its Motion to Compel must be examined in the light of these basic principles of contract law.

4

<u>The Manufacture, Testing and Delivery of the Tank</u>

The sulfuric acid tank was manufactured by Snyder Industries, tested by Snyder Industries, and delivered directly from Snyder's Marked Tree, Arkansas facility to U. S. Filter at the Hyundai plant in Montgomery.(Oltman depo. pp. 312-316)  Snyder billed AFC, and AFC paid for, the testing of the tank, but Snyder performed the test. (Oltman depo. pp. 323-328)

<u>The Acid Spill</u>

According to two reports prepared by NAWS, the spill occurred "while attempting to remove the tank level transmitter from the shutoff valve, to install a temporary connection to pump out the Sulfuric Tank, the leaking flange blew off." (NAWS document production no. N001_00237), and "[a]s the contractor [B.L. Harbert Const. Co.] started to remove the tank level transmitter, the leaking flange on the flange adapter blew off." (Exh. 7, Wolfe depo.).  The tank flange adapter, which was the site of the separation resulting in the spill, was assembled by Snyder and shipped with the sulfuric acid tank directly from Snyder's Bent Tree, Arkansas, facility to the Hyundai plant.

NAWS later amended its version of the spill event to assert that the flange separated not during a repair attempt, but merely when a contract employee went to the tank containment area to investigate the cause of a leak. (Wolfe depo. pp. 233-36, 241-42.)

<u>The Lawsuit</u>

On April 12, 2006, NAWS commenced this action against AFC and Snyder (Doc. 1-3), alleging that "Snyder manufactured the tank that is at issue in this lawsuit," (Doc. 1-3, p. 6 of 41) and that AFC is in the business of selling large diameter tanks, including those designed and manufactured by Snyder, (Doc. 1-3, p. 6 of 41).

5

NAWS alleges that AFC breached the terms and conditions of the Purchase Order by delivering a faulty and defective tank to NAWS (Doc. 1-3, p. 9 of 41); that AFC and Snyder breached the terms of an express warranty of performance with respect to the defective tank, (Doc. 1-3, p. 10 of 41); AFC breached an implied warranty of merchantability, and of fitness for a particular purpose, "by its delivery of the faulty tank to Plaintiff," (Doc. 1-3, p 11 of 41); that AFC made misrepresentations that the tank was manufactured and designed to function as an integral part of the (Hyundai) Plant (Doc. 1-3, p. 12 of 41); that AFC and Snyder were negligent or wanton "with regard the the tank supplied to the Plaintiff and used at the Plant." (Doc. 1-3, p. 13 of 41), and that Snyder is liable under the Alabama Extended Manufacturer's Liability Doctrine for its manufacture and sale of the alleged defective tank (Doc. 1-3, p 14 of 41).

NAWS makes no allegation that AFC (or Snyder) breached any contract or committed any wrongful act, except as related to the sulfuric acid tank from which the acid spill occurred.

AFC answered NAWS' Complaint denying liability, and asserted a Cross-Claim for indemnity against Snyder (Doc. 3), which Snyder answered, denying liability (Doc.7).

The Discovery

Initial Disclosures

AFC submitted its Rule 26(a)(1) Disclosures to opposing counsel on June 15, 2006, supplying all documents then available that may be used to support its claims and defenses. NAWS submitted its Rule 26 Initial Disclosures on June 15, 2006, identifying by "general description of categories" all documents that it may use to support its claims and defenses, unless solely for impeachment. Offering to make them available "pursuant to proper requests, at a mutually convenient time and place, except NAWS reserves the right to object to producing electronic documents to the extent such production is unduly burdensome and expensive."

Document Discovery

NAWS submitted a Request for Production of Documents to AFC on June 23, 2006 (Exh. A, NAWS Motion to Compel, Doc.12) (received on June 26, 2006) which included eighteen (18) definitions, including a definition for "documents" including seventy-two (72) (more or less) terms.

On August 9, 2006, AFC submitted its Response to NAWS' Request for Production (Exh. B, NAWS Motion to Compel, Doc.12), together with 286 pages of additional documents, subject to AFC's Objections filed contemporaneously therewith (Exh. C, NAWS Motion to Compel, Doc.12). These responses and productions were tardy by eleven (11) days.

With its Responses, Objection and documents, AFC counsel included a cover letter to NAWS counsel (Exh. D, NAWS Motion to Compel, Doc. 12) stating that the Response and Objections were enclosed "together with a complete set of the documents produced," which, with the documents previously produced with the Rule 26 (a) Disclosures, the author stated he believed to be a complete set of the AFC documents. No correspondence between AFC and its liability insurer, and no, or few (tendered for context) unrelated to the sulfuric acid tank at issue, were produced. The letter from AFC counsel invited NAWS counsel to call if there were any questions. No questions came.

Deposition Notices/Document Requests

On July 19, 2006, NAWS counsel issued a "Notice to take the Deposition of 30(b)(6) Representative of Augusta Fiberglass Coatings, Inc.," purportedly intending to take this deposition in Birmingham on August 31, 2006 (Exh. L, attached hereto). Since Snyder had given notice to take the deposition of NAWS' Rule 30(b)(6) representative on August 28 in Birmingham, and NAWS had given notice to take Snyder's Rule 30(b)(6) deposition on August

30 in Birmingham, later amended to August 31, it was clear that the AFC deposition would not take place on August 31. The August 28 depositions dates were discarded in light of scheduling conflicts and other issues sought to be addressed prior to depositions.

On August 4, 2006, counsel for AFC wrote to opposing counsel, suggesting that counsel confer to work out a schedule for taking the depositions of the party representatives, ansd reiterated AFC's prior notification to NAWS' counsel that AFC wants to stand on its right to have the venue of its representatives' depositions taken in South Carolina. (Exh. M, attached hereto)

NAWS' document request accompanying its Rule 30(b)(6) deposition notice to AFC contained, for the first time, the following:

> "5. All documents by and between Augusta and its insurance carrier related to the incident made the basis of this litigation."

This was the first specifically-identified request for production of communications between AFC and its insurance carrier.

On August 29, 2006, AFC submitted its Objection to Plaintiff's Second Amended Notice to take Deposition of 30(b)(6) Representative and 30(b)(5) Document Request. (Exh. E. Motion to Compel, Doc. 12)  AFC posed objections to providing testimony and documents regarding quality control procedures for fabrication work and tanks fabricated by AFC (since the tank at issue was manufactured by Snyder and not by AFC), and all documents exchanged between AFC and its insurance carrier related to the incident made the basis of this action. NAWS' response to receipt of this Objection was its counsel's commencement of the "lengthy email exchange" partially described in NAWS' Motion to Compel and Affidavit. (Doc. 12).

In response to NAWS' Second Amended Rule 30 (b)(6) Deposition Notice and 30(b)(5) Document Request, AFC submitted its Supplemental Objections to Plaintiff's Second Amended

Notice to take   Deposition of 30(b)(6) Representative and 30(b)(5) Document Request on September 9, 2006. (Exh. N, attached). This followed the "lengthy email exchange."

The "Lengthy Email Exchange"

On Friday, September 1, 2006, NAWS' counsel sent an email to AFC's counsel (Exh. O, attached), first asking to "meet and confer" about AFC's objections, next providing NAWS' position with respect thereto, and lastly stating:

> "… Moreover, your cover letter of August 4 affirmatively represents that your client withheld no documents of any kind based on any objections.  It now appears that your client withheld documents but planned not to disclose the withholding of relevant evidence."

Discretion suggesting that a phone call in the immediate aftermath of NAWS' counsel's unfounded accusation of misconduct might well prove counterproductive, AFC's counsel responded to NAWS' email, by email (Exh. P, attached) advising that the matter would be reviewed with AFC and a response would be provided. And also taking issue with the accusations of NAWS' counsel.  This was followed by another email from NAWS' counsel, asking for a phone conversation, and providing four enumerated grounds for the accusation of misconduct. (Exh. Q, attached)  Counsel for AFC responded with an email outlining eight items in response. (Exh. R, attached).  This, in turn was followed by an email from NAWS' counsel on Monday, September 4, 2006, providing nine itemized statements, including withdrawal of earlier accusations of misconduct, and their replacement with accusations of simple dishonesty, "in favor of the words of the Middle District Judges." (Exh I, 2, Motion to Compel Doc. 12)

The Court will perhaps excuse AFC's counsel's reluctance to engage in a "meet and confer" in this atmosphere.

<u>Venue for Depositions of Augusta Fiberglass Representatives</u>

On August 16, 2006, counsel for NAWS wrote to counsel for Snyder regarding Snyder's Amended Notice to take the Rule 30(b)(6) deposition of NAWS' representative, and reciting an agreement (to which AFC was not a participant or a party) for the deposition to take place in Birmingham. In this letter, NAWs' counsel also purported to "reserve the right to object to brining anyone to testify, if Augusta Fiberglass continues to refuse to bring a deponent to Alabama." (Exh. S, attached) Also on August 16, 2006, counsel for AFC wrote to counsel for NAWS, citing authority supporting AFC's position regarding the venue for depositions of defendant corporate representatives. (Exh. T, attached) NAWS offered no response, except what may be gleaned from its Motion to Compel, affidavit of NAWS counsel and brief. Certainly this topic was not the subject of the "meet and confer" initiatives that have occurred with respect to discovery.

On August 24, 2006, NAWS submitted its Amended Notice to take the deposition of AFC's Rule 30(b)(6) representative and Rule 30(b)(5) document request, scheduling the deposition for August 31, 2006, in Blackville or Barnwell, SC. (Exh. U, attached). NAWS also issued an initial deposition notice for AFC employee Craig Winningham, also for Blackville or Barnwell, SC. (Exh. V, attached) This was followed by a Second Amended Notice to take the deposition of AFC's Rule 30(b)(6) representative, set for September 14, 2006, in Blackville or Barnwell, SC. (Exh. W, attached hereto). Counsel for AFC responded by confirming the date and place selected by counsel for NAWS for the two AFC depositions, and by offering assistance in securing a court reporter. (Exh. X, attached) A staff member of NAWS' counsel accepted the offer of assistance and a staff member of counsel for AFC located the name and phone number of Aiken (SC) Court Reporters and provided it to counsel for NAWS' staff member. Presumably

this was acceptable, as no further indication of any difficulty locating a court reporter was received, until the affidavit attached to NAWS' Motion to Compel, which might be read as expressing difficulty, although this is not clear.  When, at 5:12 p.m. on September 11, 2006, counsel for NAWS postponed the scheduled September 14, 2006, depositions, inability to obtain a court reporter was not mentioned as a reason.

Blackville, South Carolina, is not inaccessible to the outside world, as is suggested by the Affidavit offered in support of NAWS' Motion to Compel.  It is 45.9 miles from Augusta, Georgia (see Exh. Y, attached), which offers commercial air service.  Augusta offers a variety of lodging alternatives (see Exh. Z, attached), including those for the most discriminating traveler. (see Exh. AA attached)  Aiken, South Carolina, also offers a variety of lodging alternatives (see Exh. BB, attached), competitively priced (see Exh.CC, attached), less than 35 miles from Blackville (see Exh. DD, attached).

The burdens attendant to travel to Blackville, South Carolina, for the depositions of AFC personnel are overstated by NAWS, at best.

Discussion

If the Court is inclined to apply only the mechanics of procedural default to resolve the issues raised by NAWS' Motion to Compel, it is empowered, but not required, to rule in favor of NAWS with respect to the document issues in the Motion to Compel. Perry v. Golub, 74 F.R.D. 360, 363 (S.D. Ala. 1976).[2]  While acknowledging the availability of a finding of waiver for failure to comply with  discovery responses, courts have also acknowledged the harshness of a waiver sanction, and reserved it for only those cases of unjustified delay, and not for  "minor procedural violations." Williams v. Sprint/ United Management Co., (unpub. op.) 2006 WL

---

[2] Few cases from the federal district courts of Alabama have cited this decision.

2631938, p.7 (D. Kan. 2006), citing <u>First Savings Bank v. First Bank System</u>, 902 F. Supp. 1356, 1360 *et seq.* (D. Kan. 1995), which collects cases on this point. <u>Unites States v. Gericare Medical Supply, Inc.</u>, (unpub. op.) 2000 WL 33156442 (S. D. Ala. 2000), describes judicially-imposed waiver as a "rare and harsh sanction." (p. 6) The Court is not required to compel production of documents even if a timely objection has not been made, "when the request far exceeds the bounds of fair discovery...." <u>Slauenwhite v. Bekum Maschinenfabriken, GMBH,</u>  35 F.R.Serv.2d 975 (D. Mass. 1985). The inquiry seems to be whether the time default unduly delays the orderly conduct of discovery, and whether the discovery sought falls within the bounds of fair inquiry. See, for example, <u>Applied Systems, Inc. v. Northern Ins. Co. of N. Y.,</u> (unpub. op.) 1997 WL 639235 (N.D. Ill. 1995).

If, however, the Court is inclined to examine the merits of the overreaching document requests of NAWS, then denial of its Motion to Compel is due to be entered with respect to the document request issues. Rule 26, Fed. R.Civ.P., authorizes discovery of matters, not privileged, "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." As is clear not only from the pleadings in this action, but also from the testimony adduced to date, this action concerns a sulfuric acid tank manufactured by Snyder Industries, and delivered directly to U. S. Filter (NAWS) in Montgomery. The cause of its failure and release of sulfuric acid is fair inquiry. The records of Augusta Fiberglass Coatings, which did not manufacture this tank, concerning its quality control methods and its fabrication and supply of other tanks, even to NAWS, about which there is no complaint, are patently irrelevant to the issues raised by the pleadings, and NAWS' feeble attempt to argue that discovery is reasonably calculated to lead to the discovery of relevant evidence fails even a cursory inquiry.

Within its 72 (or more) item definition of "documents" and the exponential permutations thereof, the opportunity to overlook a request claimed to seek discovery of communications between a defendant and its liability insurer, no request plainly marked as such, is readily apparent and, given the improper and unusual nature of such a request, should be excused. Indeed, the specific addition of a request for such documents in NAWS' Rule 30(b)(5) document request accompanying its deposition notice to AFC is an admission of the lack of a prior request for such information.

Rule 26(b)(3), Fed. R. Civ.P., protects against discovery documents otherwise discoverable prepared in anticipation of litigation or for trial, with specific reference to the party's insurer, without a showing of substantial need and inability to secure the substantial equivalent by other means without substantial hardship. When an insured party reports to its liability insurer the fact of an accident from which another party, such as NAWS here, makes substantially simultaneous demands for indemnity, litigation is clearly anticipated from the outset. Cf., Grand Union Company v. Patrick, 247 So.2d 474 (Fla. App. 1971), and Staton v. Allied Chain Link Fence Co., 418 So.2d 404 (Fla. App. 1982) ("The principle under which such reports by an insured to its insurer are privileged is that they are considered relevant to defense of the action and in effect are communications between attorney and client, being information which is to benefit the defense of the cause by counsel, passing through the insurer to counsel. See Annotation 22 A.L.R.2d 659, 660-662.")

NAWS' requests for these plainly non-discoverable (or non-discoverable without a showing not made) items, is sufficiently apparent to warrant the conclusion that its insistence upon production by way of this Motion to Compel is indicative of an intent not to litigate, but to harass.

The disguise of requests for plainly irrelevant documents within discovery requests that fail the provisions of Discovery Guideline I C of this Court should not be rewarded with an Order compelling production of plainly non-discoverable information, regardless of any tardiness of response and objection.

### Venue for Augusta Fiberglass Coatings Depositions

For the first time, in its Motion to Compel (Doc. 12), NAWS seeks an Order compelling AFC to produce not only its Rule 30(b)(6) representative, but also the president of the company, John Boyd, for depositions in Montgomery. There is probably no clearer example of the ham-fisted discovery philosophy displayed by NAWS in this action than this. Having repeatedly given notice, and other indications, of its acknowledgement of AFC's right to present its personnel for deposition in the state and county of its corporate offices, including deposition notices for such, not only for the Rule 30(b)(6) witness, but also for AFC employee Craig Winningham and AFC president John Boyd, and with no suggestion of its intent, NAWS has included in its Motion to Compel the request that the Court order AFC's witnesses (including its president) to present themselves in Montgomery for depositions NAWS.

In addition to the laughable contention that the remoteness of Blackville, South Carolina, poses an undue travel burden on the plaintiff, argument in support of this extraordinary request consists of the assertions that AFC delivered five tanks to Alabama, sent two employees to Alabama to investigate the cause of the subject leak "or to repair the tanks," and that it has asserted a cross-claim against Snyder in this action. The first three factors are strong evidence in favor of this court's personal jurisdiction over AFC, which AFC has never challenged. The

fourth is the inevitable, and reasonable, result of NAWS having sued not only AFC, but also Snyder, in Alabama for damages related to a leak in a tank fitting that Snyder manufactured.

Snyder's counsel did not issue the deposition notice for AFC's personnel – NAWS did. AFC seeks no affirmative relief against NAWS.

> "...It is well-settled that '(t)he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business,' especially when, as in this case, the corporation is the defendant. 8 C. Wright & A. Miller, Federal Practice & Procedure § 2112 at 410 (1970); *see also* 4 J. Moore & J. Lucas, Moore's Federal Practice ¶ 26.70(1.-- 4 (3d ed. 1976)...."
> -- Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)

See also, Baine v. General Motors Corp., 141 F.R.D. 332 (M.D. Ala. 1991), and Payton v. Sears Roebuck & Co., 148 F.R.D. 667, 669 (N.D. Ga. 1993):

> "... This general rule is based on the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. *Farquhar* [ *v. Shelden*], 116 F.R.D. [70] at 72 [(E.D. Mich. 1987)]. Thus, courts have held that plaintiffs normally cannot complain if they must take discovery at great distances from the forum. *Id.*"

A ruling in favor of AFC denying NAWS' patently frivolous Motion to Compel AFC to produce its Rule 30(b)(6) corporate representative, and its president, for depositions in Montgomery is warranted, as NAWS made no effort to support this extraordinary request with any authority whatsoever, and in fact had acknowledged AFC's right to insist on the venue for its corporate representative's deposition in the location of the corporate defendant by (at least apparently) scheduling them for deposition in South Carolina.

In evaluating the relief, if any, to be granted NAWS on its Motion to Compel, due consideration of the foregoing should be made. In light of the circumstances presented by the facts and events outlined above, Augusta Fiberglass Coatings, Inc. urges denial of the plaintiff's Motion to Compel in all respects.

JACK OWEN  (ASB-4805-N66C)
Attorney for Defendant
Augusta Fiberglass Coatings, Inc.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334) 387-7680
(334) 387-3222 (Fax)
Email:  ccowen@ball-ball.com

## CERTIFICATE OF SERVICE

I certify that the foregoing document has been served upon the following by placing copy of same in the United States Mail, first class, postage prepaid and properly addressed this date:

September 25, 2006.

OF COUNSEL

E. Mabry Rogers, Esq.
Bradley, Arant, Rose & White, LLP
One Federal Place
1819 Fifth Avenue, N.
Birmingham, AL 35203
Email:  randreen@bradleyarant.com
           mrogers@bradleyarant.com

Dorothy A. Powell, Esq.
Parsons, Lee & Juliano, P. C.
300 Protective Center
2801 Highway 280 South
Birmingham, AL  35223-2480
Email: dpowell@pljpc.com

16